# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALIZA ATIK and WINNIE LAU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELCH FOODS, INC., A COOPERATIVE, and THE PROMOTION IN MOTION COMPANIES, INC.,<br><br>Defendants. | Case No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Aliza Atik and Winnie Lau ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Welch Foods, Inc., a Cooperative ("Welch Foods"), which does business using its trademarked name "Welch's," and The Promotion in Motion Companies, Inc. ("Promotion in Motion") (collectively, "Defendants"), demanding a trial by jury, and allege as follows:

## NATURE OF THE CASE

1.     This is a proposed class action seeking redress for Defendants' deceptive[1] practices in misrepresenting the fruit content and the nutritional and health qualities of Welch's fruit snacks[2] (the "Fruit Snacks" or "Products").

---

[1] The terms "deceptive," "deceive," "deceptively," and "deception" encompass other descriptive terms, including various forms of the words: mislead, misrepresent, untrue, unfair, false, disparage, and unlawful.

[2] The Products at issue are Welch's Mixed Fruit Fruit Snacks, Island Fruits Fruit Snacks, Reduced Sugar Mixed Fruit Fruit Snacks, Berries 'n Cherries Fruit Snacks, Concord Grape Fruit Snacks, White Grape Raspberry Fruit Snacks, Strawberry Fruit Snacks, Tangy Fruits Fruit Snacks, Fruit Punch Fruit Snacks, White Grape Peach Fruit Snacks, Apple Orchard Medley Fruit Snacks, Strawberry Fruit 'n Yogurt Snacks, Blueberry Fruit 'n Yogurt Snacks, Strawberry Creamy PB&J Fruit Snacks, Strawberry Crunchy PB&J Fruit Snacks, Grape Creamy PB&J Fruit Snacks, and Grape Crunchy PB&J Fruit Snacks. Claims against Defendant Promotion in Motion are limited to the Fruit Snacks Products.

2.      From six years prior to the date of this filing to the present (the "Class Period"), Defendants have engaged in a deceptive marketing campaign to convince consumers that Welch's Fruit Snacks contained significant amounts of the actual fruits shown in the marketing[3] and on the labeling[4] of the Products, were nutritious and healthful to consume, and were more healthful than similar products.

3.      For example, in a May 19, 2009 press release announcing the launch of the Island Fruits variety of the Fruit Snacks, Michael Rosenberg, President and CEO of Promotion in Motion, claimed, "Like all Welch's® Fruit Snacks, new Island Fruits is made with Real Fruit and Fruit Juices . . . . It's a better alternative to lots of other snacks as it also contains 100% of the daily value of Vitamin C, 25% of the daily value of Vitamins A and E and is fat free. We find that Mom is putting one pack of Welch's® Fruit Snacks *Island Fruits* in her kid's lunchbox— and keeping one pack for herself."[5] Indeed, Defendants label and market the Fruit Snacks as "Made With REAL Fruit" and prominently depict a cornucopia of characterizing fruits on the front of each package.

4.      However, Defendants' Fruit Snacks contain only minimal amounts of the vibrantly depicted fruits, and are no more healthful than candy. In fact, two of the first three ingredients in the Fruits Snacks are added sweeteners. On average, sugar makes up 40% of each serving of the regular Fruit Snacks, 50% of each serving of the Fruit 'n Yogurt Snacks, and more than half of each serving of the PB & J Snacks. The Products are mostly a combination of corn syrup, sugar, modified corn starch, juice from concentrate, artificial flavors, and dyes. Moreover, the fruits

---

[3] Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Product labels, viral marketing, incentives, and websites.

[4] The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.

[5] Press Release, Promotion in Motion Inc., Promotion in Motion Expands Line of Mom-Approved Fruit Snacks (May 19, 2009), http://www.promotioninmotion.com/wp-content/uploads/2009/05/Welchs_Goes_Tropical.pdf (last visited Sept. 3, 2015).

CLASS ACTION COMPLAINT

that Defendants depict in the marketing and labeling of the Fruit Snacks are not the most pre-dominant fruit in the Products.

5.      Thus, although Defendants market their Fruit Snacks as healthful and nutritious, these Products are devoid of the health benefits Plaintiffs and other reasonable consumers asso-ciate with consuming real fruit.

6.      The amount of fruit in the Fruit Snacks has a material bearing on price and con-sumer acceptance. Through the marketing, labeling, and overall appearance of the Fruit Snacks, Defendants create the false impression that the fruit named and depicted on the labeling is pre-sent in an amount greater than is actually the case. Thus, Defendants are required to display the true percentage of fruit in the Product name on the front label, pursuant to 21 C.F.R. § 102.5. De-fendants violate this requirement.

7.      Because the Defendants fail to reveal the basic nature and characterizing ingredi-ents of the Fruit Snacks—specifically, the true fruit content—Defendants' Fruit Snacks are not only deceptive, they are also misbranded under Sections 403(a) and 403(q) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a) and (q). The Products cannot be legally manufac-tured, advertised, distributed, or sold in the U.S. as they are currently labeled. *See* 21 U.S.C. § 331.

8.      New York law forbids the misbranding of food in language largely identical to that found in the FDCA. Specifically, New York's Agriculture and Markets Law provides that a food is misbranded if "its labeling is false or misleading." N.Y. Agric. & Mkts. Law § 201. Thus, the Fruit Snacks are misbranded under New York law.

9.      The Fruit Snacks are also misbranded under California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), Cal. Health & Safety Code §§ 109875-111915. The Sherman Law expressly incorporates the food labeling requirements set forth in the FDCA, *see* Cal. Health & Safety Code § 110100(a), and provides that any food is misbranded if its nutri-tional labels do not conform to FDCA requirements. *See id.* § 110665; *see also* § 110670.

10.     The Sherman Law further provides that a product is misbranded if its labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any mis-

branded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765; or to receive in commerce any food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

11.    Defendants have been able to charge a price premium for the Products by deceiving consumers, like Plaintiffs, by representing that the Fruit Snacks (a) contain significant amounts of the named and depicted fruits, (b) are nutritious and healthful to consume, and (c) are more healthful than similar products.

12.    Defendants' deceptions played a substantial part in influencing Plaintiffs' decisions to purchase the Fruit Snacks. Plaintiffs relied upon Defendants' "Made With REAL Fruit" claims prominently displayed on the front of the Products' packages. If Plaintiffs had known the true fruit content, as well as the true nutritional and health qualities of the Fruit Snacks they purchased, they would not have purchased the Fruit Snacks.

13.    Defendants' deceptive statements regarding the Fruit Snacks violate state and federal law, as detailed herein. As such, Plaintiffs assert claims on their behalf and on behalf of all purchasers of the Fruit Snacks for Defendants' breach of express warranty; breach of implied warranty; unjust enrichment; and violations of New York General Business Law § 349; New York General Business Law § 350; California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*

## PARTIES

**Plaintiffs**

14.    Plaintiff Aliza Atik ("Plaintiff Atik" or "Ms. Atik") is a citizen of New York. During the Class Period, Plaintiff Atik purchased Defendants' Fruit Snacks for herself and her family. Prior to her purchase, Plaintiff Atik saw and relied on Defendants' marketing and labeling representing that the Fruit Snacks were made with significant amounts of the named and depicted fruit and were healthful.

15.     Plaintiff Atik wished to purchase healthy snacks for her family. When Plaintiff Atik saw Defendants' misrepresentations prior to and at the time of purchase, she relied on Defendants' representations and claims that the Fruit Snacks contained significant amounts of the actual fruit Defendants emphasized in the marketing and on the labeling of the Products, were nutritious and healthful, and were more healthful than similar products.

16.     Approximately once a month, Plaintiff Atik purchased several varieties of the Fruit Snacks, including the Mixed Fruit and Strawberry varieties. Plaintiff Atik purchased the Fruit Snacks from different retailers in New York, including a Super Stop & Shop located in Little Neck, New York, and a Waldbaum's located in Flushing, New York. Plaintiff Atik suffered injury because she relied on Defendants' misrepresentations and would not have purchased the Fruit Snacks for herself and her family had Defendants not made certain misrepresentations in the Products' marketing and labeling. In the future, if Ms. Atik knew that the Product marketing and labeling was truthful and not deceptive, she would continue to purchase the Products. At present, however, Ms. Atik cannot be confident that the labeling and labeling of the Products is, and will be, truthful and non-deceptive.

17.     Plaintiff Winnie Lau ("Plaintiff Lau" or "Ms. Lau") is a citizen of California. During the Class Period, Plaintiff Lau purchased Defendants' Fruit Snacks for herself and her family. Prior to her purchase, Plaintiff Lau saw and relied on Defendants' marketing and labeling representing that the Fruit Snacks were made with significant amounts of the named and depicted fruit and were healthful.

18.     Plaintiff Lau wished to purchase healthy snacks for her family. When Plaintiff Lau saw Defendants' misrepresentations prior to and at the time of purchase, she relied on Defendants' representations and claims that the Fruit Snacks contained significant amounts of the actual fruit Defendants emphasized in the marketing and on the labeling of the Products, were nutritious and healthful, and were more healthful than similar products.

19.     Approximately once a week, Plaintiff Lau purchased several varieties of the Fruit Snacks, including the Mixed Fruit, Strawberry, White Grape Raspberry, and Concord Grape varieties. Plaintiff Lau purchased the Fruit Snacks from different retailers in California, including a

Target located in Walnut Creek, California, a Safeway located in Pleasant Hill, California, as well as from an AMC movie theater, and from various vending machines. Plaintiff Lau suffered injury because she relied on Defendants' misrepresentations and would not have purchased the Fruit Snacks for herself and her family had Defendants not made misrepresentations in the Products' marketing and labeling. In the future, if Ms. Lau knew that the Product labels were truthful and not deceptive, she would continue to purchase the Products. At present, however, Ms. Lau cannot be confident that the marketing and labeling of the Products is, and will be, truthful and non-deceptive.

**Defendants**

20.     Defendant Welch Foods is a corporation organized under the laws of Michigan. Its principal executive office is located at 300 Baker Avenue, Suite 101, Concord, Massachusetts 01742.

21.     Defendant Promotion in Motion is a corporation organized under the laws of New Jersey. Its principal place of business is located at 25 Commerce Drive, Allendale, New Jersey 07401. Promotion in Motion is a nationally and internationally prominent maker of fruit snacks, fruit rolls, and private label confections and food products, with both domestic and international operations. Promotion in Motion's other proprietary or licensed brands include SUN MAID® Milk Chocolate Raisins, FISHER® Milk Chocolate Peanuts, NASCAR® Speed Strips™, SOUR JACKS® Sour Candies, NUCLEAR SQWORMS® Sour Neon Gummi Worms, BUDDY BEARS® and ORIGINAL GUMMY FACTORY® Gummi Candies, and TOGGI® Fine Chocolate Wafers. Promotion in Motion licenses the trademarked name "Welch's" from Defendant Welch Foods.

22.     Promotion in Motion produces, markets, and distributes the Fruit Snacks under the authority of Welch Foods. At all relevant times, Defendants acted in concert, and marketed, packaged, and sold the Fruit Snacks to consumers throughout the United States.

JURISDICTION AND VENUE

23.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005),

under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege there are at least 100 members in the proposed Class (as defined below), the total claims of the proposed Class members are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, and a member of the proposed Class is a citizen of a State different from the State of citizenship of Defendants.

24.     This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: Plaintiff Atik's claims arise out of Defendants' conduct within the State of New York.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this District, Plaintiff Atik purchased the Fruit Snacks in this District, and Plaintiff Atik resides in this District.

## GENERAL ALLEGATIONS

26.     Consumers increasingly and consciously seek out healthy foods and snacks— placing value on healthy fruit-based snacks that contain less added sugar. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease, and attaining health and wellness for themselves and their children and families.

27.     In addition, scientific data shows that it is difficult to meet nutrient needs while staying within calorie requirements if you consume more than 10 percent of your daily calories from added sugar.[6] Parents seek healthier options by seeking to purchase snack products with less sugar. And scientific evidence indicates that excess sugar contributes to numerous chronic health problems such as heart disease and type 2 diabetes.[7]

---

[6] Susan Mayne, *Putting Added Sugars Into Context for Consumers*, FDA Voice, Food and Drug Admin., http://blogs.fda.gov/fdavoice/index.php/2015/07/putting-added-sugars-into-context-for-consumers/ (last visited Sept. 3, 2015).

[7] American Heart Ass'n, Understanding Childhood Obesity, *available at* http://www.heart.org

28.     Consumers also seek to avoid artificial food dyes (which have been shown to ex-acerbate symptoms of ADHD[8]), and preservatives such as citric acid. Given the consumer-driven demand for products without artificial colors, particularly in children's foods, manufacturers like General Mills have announced that they will reformulate their products to remove them.[9] Defendants' Products, by contrast, contain artificial colors such as Red 40 and Blue 1.

29.     Defendants' deceptive practices capitalize on consumers' desire to purchase healthier snacks, and snacks that contain more fruit and less added sugar.

30.     Welch Foods boasts that it is a "revered, trusted American icon, decade after dec-ade," and acknowledges that consumers expect "high quality" from Welch's.[10] Moreover, Welch Foods promises that it "approach[es] [its] work with integrity and honesty, which helps [it] earn [its] consumers' trust."[11] Welch Foods promises consumers that even though "[w]e're best known for 100% Grape Juice and Jellies . . .  you'll find our name—and the same exceptional quality—on fresh produce, freezer pops and more."[12]

31.     The trademarked name "Welch's" is one of the most respected and well-known names in the world when it comes to 100% fruit juice and grapes. Plaintiffs and other reasonable

_____

/idc/groups/heart-public/@wcm/@fc/documents/downloadable/ucm_428180.pdf.

[8] *See, e.g.*, David Schab, *Do Artificial Food Colors Promote Hyperactivity in Children with Hy-peractive Syndromes? A Meta-Analysis of Double-Blind Placebo-Controlled Trials*, 25 J. Devel-opmental & Behavioral Pediatrics 423-34 (Dec. 2004).

[9] *No More Artificial Colors for Trix or Reese's Puffs*, N.Y. Times (June 23, 2015), *available at* http://www.nytimes.com/2015/06/23/business/no-more-artificial-colors-for-trix-or-reeses-puffs.html.

[10] Welch Foods 2013 Annual Report, at 2, 15, *available at* http://www.welchs.com/docs/default-source/Annual-Reports/welchs_ar13_final_lowres2-front.pdf.

[11] Welch Foods' website, Careers, http://www.welchs.com/about-us/careers/why-choose-welch's (last visited Sept. 3, 2015).

[12] Welch Foods' website, Products, Food and Snacks, http://www.welchs.com/products/food-and-snacks (last visited Sept. 3, 2015).

consumers trust the Welch's name when it comes to expecting healthy, fruit-based snacks for their children.

32.     Indeed, Defendants emphasize this reputation on the labeling of their Fruit Snacks.  See Illustration 1 below.

**Illustration 1**
**Welch's Fruit Snacks, Mixed Fruit**



33.     Because of Welch's reputation, Defendants are able to capitalize on Plaintiffs' and other consumers' attempts to feed their children healthful, nutritious, and fruit-based foods, by deceiving Plaintiffs and other reasonable consumers about the nutritional and health qualities of the Fruit Snacks.

**Defendants' Deceptive Marketing of the Fruit Snacks**

34.     Defendants market the Fruit Snacks as healthful and nutritious, claiming the Fruit Snacks are "wholesome," and are of a "quality that can only be Welch's."[13]

35.     Defendants emphasize the claim that the Fruit Snacks are "Made With REAL Fruit," and pair this claim with images of the characterizing fruit. See Illustration 2 below.

**Illustration 2**
**Welch's Fruit Snacks, Mixed Fruit**



36.     For example, the labeling of Defendants' Berries 'n Cherries Fruit Snacks prominently displays pictures of strawberries, blueberries, raspberries, and cherries, along with a picture of these berries next to the large "Made With REAL Fruit" claim. See Illustration 3 below.

---

[13] Welch Foods' website, Products, Fruit Snacks, http://www.welchs.com/products/food-and-snacks/fruit-snacks (last visited Sept. 3, 2015).

**Illustration 3**
**Welch's Fruit Snacks, Berries 'N Cherries**



**Ingredients**:

Juice from Concentrate (Apple, Grape, Pear, Peach, and Pineapple**),
Corn Syrup**, **Sugar**, **Modified Corn Starch**, Fruit Purees (**Strawber-
ry, Raspberry, Blackberry, Blueberry, and Cherry**), Gelatin, Citric
Acid, Lactic Acid, Natural and Artificial Flavors, **Ascorbic Acid** (Vit-
amin C), **Alpha Tocopheryl Acetate** (Vitamin E), **Vitamin A Palmi-
tate**, Sodium Citrate, Coconut Oil, Caranuba Wax, **Red 40 and Blue 1**

37.     Indeed, Defendants repeat the same deceptive fruit claims throughout their mar-
keting campaign. For example, Defendants' marketing is replete with claims like "Made With
REAL Fruit," "We put the fruit in fruit snacks," and prominent graphics of fresh fruit of the type
named in each Fruit Snacks variety.

38.     Defendants further represent that the Fruit Snacks are healthful and contain
"100% Vitamin C," "25% Vitamins A & E," and "no preservatives." See Illustration 4 below.

**Illustration 4**
**Welch's Fruit Snacks, Strawberry**





39.    Plaintiffs and other reasonable consumers rely on Defendants' material representations when they purchase the Fruit Snacks—believing that the Fruit Snacks are healthful and made with significant amounts of the fruit depicted in the marketing and labeling of the Fruit Snacks.

40.    Defendants violated the trust of Plaintiffs and class members because the Fruit Snacks are not the fruit-packed healthy snacks that their marketing and labeling represent them to be.

**The Fruit Snacks Do Not Contain Significant Amounts of the Fruits Depicted, and Are Not Healthful**

41.    Defendants' claims about the fruit content and the nutritional qualities and health-fulness of the Fruit Snacks are deceptive. Although the marketing and labeling of the Fruit Snacks depict certain fruits, those fruits are not the predominant ingredient or even the most prominent fruit in the Products. Instead, the Fruit Snacks contain significant amounts of sweeteners and added sugars, as well as artificial flavors and artificial colors.

42.    For example, the marketing and labeling for the Berries 'n Cherries Fruit Snacks prominently feature depictions of Berries and Cherries, but the Products mostly contain apple juice from concentrate, grape juice from concentrate, pear juice from concentrate, peach juice from concentrate, and pineapple juice from concentrate. The Berries 'n Cherries Product, like the other Fruit Snacks Products, contains far more added sugar than fruit puree. Berry- and cherry-like ingredients in the ingredient lists appear only after corn syrup, sugar, and modified corn-starch. The Product also does not provide any dietary fiber, a key substance found in fruit that is essential for good health.

43.    In short, Defendants' Fruit Snacks contain very little of the fruit Defendants de-pict in the Products' marketing and labeling. And Defendants represent to Plaintiffs and other consumers that the Fruit Snacks are healthful despite the fact that the Fruits Snacks are made in large part with apple and pear juices, which are similar to empty-calorie sugar syrup, along with corn syrup, sugar, and modified cornstarch. The products also contain at least two forms of add-ed sugar. On the ingredients list, which lists ingredients in descending order of predominance by weight,[14] fruit purees come long after all of these unhealthful and non-nutritious ingredients. The fruit purees contain no dietary fiber, a key disease-preventing and health-promoting component of real fruit. Sugar constitutes more than one third of each Fruit Snacks pouch.[15]

---

[14] 21 C.F.R. § 101.4.

[15] The Nutrition Facts of the Berries 'n Cherries Fruit Snacks indicate that each 25.5g pouch con-tains 80 calories and 11 grams of sugar.  The 11 grams of sugar includes sugar from the apple and pear juices, corn syrup, sugar, and smaller amounts of fruit purees. *See* Illustration 4.

44.     Furthermore, Defendants' claims that the Fruit Snacks contain "100% Vitamin C" and "25% Vitamins A & E" violate the Food and Drug Administration's ("FDA") Fortification Policy.[16] The FDA prohibits fortification of "sugars[] or snack foods" that "could result in deceptive or misleading claims for certain foods."[17]

45.     If Defendants had not illegally fortified the Fruit Snacks with vitamins A, C, and E,[18] they could not claim that these sugary snacks were a nutritious, vitamin-rich food.

46.     In addition, Defendants' marketing and labeling deceive Plaintiffs and other reasonable consumers and cause them to believe that these vitamins are present in the Fruit Snacks due to the Products' fruit content. Unfortunately for consumers, the synthetic vitamins Defendants add to the Fruit Snacks do not provide the same health benefits as vitamins obtained by eating fruit.[19] This is one of the reasons the 2015 Dietary Guidelines recommends obtaining nutrients from food and not vitamins, and advocates "achieving healthy dietary patterns through healthy food and beverage choices rather than with nutrient or dietary supplements except as needed."[20]

47.     Despite the limited ingredients derived from actual fruit, Defendants market the Fruit Snacks as though they do contain the named and depicted fruit in substantial amounts.

---

[16] "The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify . . . sugars; or snack foods such as candies . . . ." 21 C.F.R. § 104.20(a).

[17] *Id.*

[18] The Berries 'n Cherries ingredients list includes "ascorbic acid (vitamin C), alpha tocopherol acetate (vitamin E), vitamin A palmitate."

[19] *See, e.g.*, Rui Hai Liu, *Health Benefits of Fruits and Vegetables are from Additive and Synergistic Combinations of Phytochemicals*, 78 Am. J. Clin. Nutr. 517S, 517S–520S, at 518S (2003); Inst. of Medicine, Food and Nutrition Board, Dietary Reference Intakes for Vitamin C, Vitamin E, Selenium, and Carotenoids, Nat'l Academy Press (2000).

[20] http://www.health.gov/dietaryguidelines/2015-scientific-report/PDFs/04-Integration.pdf (last visited Sept. 3, 2015).

48. The practice of deceptively marketing fruit snacks as containing substantial amounts of fruit when they do not is well-recognized, and the Center for Science in the Public Interest has been outspoken in its criticism:

> Food companies aggressively market phony fruit snacks to toddlers, children, and their parents, pushing them as healthy options and substitutes for real fruit. Unfortunately for parents and kids, phony fruit snacks don't always contain the fruits advertised on the front of the box and never in the quantities suggested. Instead, companies use relatively cheap, nutritionally void, and highly processed pear, apple, and white grape juices, making phony fruit snacks much closer to gummy bears than actual fruit.
>
> . . .
>
> The Dietary Guidelines Advisory Committee concluded that "nutrient intake should come primarily from foods" and that "the more scientists learn about nutrition and the human body, the more they realize the importance of eating foods in their most intact forms without added solid fats, sugars, starches, or sodium." Another good reason to stay away from phony fruit snacks, which are mainly sugar and small amounts of fruit that has been dehydrated, pureed, concentrated, heated, and otherwise processed until it is shelf stable and largely unrecognizable, requiring colors, flavors, and vitamins to be added back in.[21]

49. Defendants are able to sell the Fruit Snacks to consumers by deceiving consumers about the healthfulness and content of the Fruit Snacks and distinguishing the Fruit Snacks from competitors' products. Defendants are motivated to deceive consumers for no other reason than to charge a price premium and to take away market share from competing companies to further increase their own profits.

50. In short, Defendant's Fruit Snacks are promoted as a healthful snack alternative for parents to purchase for their kids. Defendants convey to parents that their Fruit Snacks are a healthful snack product, when in fact the Fruit Snacks contain added sugars and artificial colors, lack significant amounts of real fruit, contain no dietary fiber, and contain a significant amount of vitamins only due to improper fortification. Thus, stating that the Fruit Snacks are "wholesome," "Made With REAL Fruit," and representing that they are beneficial to consumers' health is misleading and deceptive.

---

[21] CSPI website, Nutrition Policy, Fruit Fraud, http://cspinet.org/nutritionpolicy/fruitfraud.html (last visited Sept. 3, 2015).

**The Fruit Snacks are Misbranded**

51.     Under FDCA section 403, a food is "misbranded" if "its labeling is false or mis-
leading." *See* 21 U.S.C. §§ 343(a).

52.     The amount of fruit in the Fruit Snacks has a material bearing on price and con-
sumer acceptance. Moreover, Defendants' marketing and labeling of the Fruit Snacks—including
the imagery of certain fruits—creates the erroneous impression that the fruit depicted in the
Products' marketing and labeling is present in an amount greater than is actually the case. Thus,
Defendants are required to display the true percentage of fruits in the product name on the front
label, pursuant to 21 C.F.R. § 102.5. Defendants violate this requirement.

53.     Because the Defendants fail to reveal the basic nature and characterizing proper-
ties of the Fruit Snacks (specifically, the true fruit content) Defendants' Fruit Snacks are not only
sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug &
Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised,
distributed, or sold in the U.S. as they are currently labeled.  *See* 21 U.S.C. § 331.

54.     Moreover, New York law forbids the misbranding of food in language largely
identical to that found in the FDCA. Specifically, New York's Agriculture and Markets Law
provides that a food is misbranded if "its labeling is false or misleading." N.Y. Agric. & Mkts.
Law § 201. Thus the Fruit Snacks are misbranded under New York law.

55.     Similarly, the Fruit Snacks are misbranded under California's Sherman Law, Cal.
Health & Safety Code §§ 109875-111915. The Sherman Law expressly incorporates the food
labeling requirements set forth in the FDCA, *see* Cal. Health & Safety Code § 110100(a), and
provides that any food is misbranded if its nutritional labeling does not conform to FDCA re-
quirements. *See id.* § 110665; *see also id.* § 110670.

56.     The Sherman Law further provides that a product is misbranded if its labeling is
"false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any mis-
branded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is
misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765: or to receive in commerce any
food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

57.     By misrepresenting the basic nature and characterizing properties of the Fruit Snacks, Defendants violate these federal and state regulations and mislead Plaintiffs and consumers alike.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons in the United States who purchased Defendants' Products during the Class Period (the "Class"). Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest.

59.     Plaintiff Atik also seeks to represent a subclass of all Class members who purchased the Fruit Snacks in the state of New York (the "New York Subclass").

60.     Plaintiff Lau also seeks to represent a subclass of all Class members who purchased the Fruit Snacks in the state of California (the "California Subclass").

61.     At this time, Plaintiffs do not know the exact number of Class members, but—given the nature of the claims and the number of retail stores selling Defendants' Products—Plaintiffs believe that Class members are so numerous that joinder of all members of the Class is impracticable.

62.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

a)  Whether Defendants marketed, packaged, or sold the Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations, including statements or representations concerning the nutritional and health qualities of its Products;

b)  Whether Defendants omitted or misrepresented material facts in connection with the sales of its Products;

c) Whether Defendants participated in and pursued the common course of conduct complained of herein;

d) Whether Defendants' marketing, labeling, or selling of the Products as healthful and nutritious constitutes an unfair or deceptive consumer sales practice;

e) Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

f) Whether Defendants' actions as described above violate New York General Business Law § 349, *et seq*.;

g) Whether Defendants' actions as described above violate the New York General Business Law § 350, *et seq*.;

h) Whether Defendants' actions as described above violate the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.;

i) Whether Defendants' actions as described above violate the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

j) Whether Defendants' actions as described above violate the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*;

k) Whether Defendants should be enjoined from continuing the above-described practices;

l) Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

m) Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

63.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased Defendants' Products at a premium price in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

64.     Plaintiffs will adequately protect the interests of the Class and have retained counsel who are experienced in litigating complex class actions. Plaintiffs have no interests that conflict with those of the Class.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

66.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

67.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even though certain Class members might not be parties to such actions.

68.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Breach of Express Warranty

69.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

70.     Plaintiffs bring this Cause of Action individually and on behalf of the members of the Class.

71.     Defendants expressly warrant in their marketing, labeling, and promotion of the Fruit Snacks that the Fruit Snacks are "Made With REAL Fruit," nutritious, and healthful to consume. These statements are untrue as detailed above. These promises of fruit content specifically relate to the goods being purchased and became the basis of the bargain.

72.     Plaintiffs and members of the Class purchased the Fruit Snacks based upon the above said express warranties made in Defendants' marketing and labeling of the Fruit Snacks. Defendants breached their express warranty by selling Fruit Snacks that did not conform to the warranties they made.

73.     Plaintiffs and the Class were injured as a direct and proximate result of Defendants' breach and deserve to be compensated for the damages they suffered. If Plaintiffs and the Class had known the true facts concerning the fruit content of the Fruit Snacks, they would not have purchased Fruit Snacks.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty

74.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

75.     Plaintiffs bring this Cause of Action individually and on behalf of the members of the Class.

76.     As the manufacturers, marketers, distributors, or sellers of the Fruit Snacks, Defendants impliedly warrant that the Fruit Snacks are merchantable and fit for their intended purpose and conform to the promises or affirmations of fact made in the Products' promotions, marketing, labeling, and labels, in that they were healthful and nutritious snack options for consumers and their families and children, and contained significant amounts of the fruit Defendants named and depicted.

77.     Defendants breached the warranty implied in the bargain for the sale of the Fruit Snacks, in that the Fruit Snacks are not the fruit-packed healthy snacks that their marketing and labeling make them appear to be, and thus they do not conform to Defendants' warranties. As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

78.    In reliance on Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased the Fruit Snacks for use as fruit-packed healthy snacks.

79.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because (a) they would not have purchased the Fruit Snacks had they known that the Products did not contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, and were not nutritious and healthful to consume, and were not more healthful than similar products; (b) they paid a price premium for the Fruit Snacks based on Defendants' false and misleading statements; and (c) the Fruit Snacks did not have the characteristics and benefits promised because the Fruit Snacks contained added sugars and artificial colors, lacked significant amounts of real fruit, and contained no dietary fiber.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**

80.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

81.    Plaintiffs bring this cause of action individually and on behalf of members of the Class.

82.    Plaintiffs and members of the Class conferred benefits on Defendants by purchasing the Fruit Snacks.

83.    Defendants have knowledge of such benefits.

84.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class and Subclass members' purchases of the Fruit Snacks. Retention of those moneys under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represent that the Fruit Snacks contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, are nutritious and healthful to consume, and are more healthful than similar products when, in fact, the Fruit Snacks contain added sugars,

lack significant amounts of real fruit, contain no dietary fiber, and only contain a significant amount of vitamins due to improper fortification.

85.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for their unjust enrichment, as ordered by the Court.

## FOURTH CAUSE OF ACTION
### Deceptive Acts or Practices,
### In Violation of New York General Business Law § 349, *et seq.*

86.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

87.     Plaintiff Atik brings this Cause of Action individually and on behalf of the members of the New York Subclass against Defendants.

88.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misrepresenting the characteristics, ingredients, and benefits of the Fruit Snacks.

89.     The foregoing deceptive acts and practices were directed at consumers.

90.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, and benefits of the Fruit Snacks to induce consumers to purchase the Fruit Snacks.

91.     Plaintiff Atik and members of the New York Subclass were injured because: (a) they would not have purchased the Fruit Snacks had they known that the Products did not contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, and were not nutritious and healthful to consume, and were not more healthful than similar products; (b) they paid a price premium for the Fruit Snacks based on Defendants' false and misleading statements; and (c) the Fruit Snacks did not have the characteristics and benefits promised because the Fruit Snacks contained added sugars, lacked significant amounts of real fruit, and contained no dietary fiber. As a result, Plaintiff Atik and the New York Subclass have been damaged because they purchased more of Defendants' Products than they would have or paid more than they would have for Defendants' Fruit Snacks had they known the statements on

Defendants' Fruit Snacks conveying that they were made from fruit and being healthful are contrary to the actual ingredients of the Fruit Snacks.

92.    On behalf of herself and other members of the New York Subclass, Plaintiff Atik seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**False Advertising,**
**In Violation of New York General Business Law § 350,** *et seq.*

93.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

94.    Plaintiff Atik brings this Cause of Action individually and on behalf of the members of the New York Subclass against Defendants.

95.    Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of Section 350 of the New York General Business Law.

96.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, were and are directed to consumers.

97.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

98.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, have resulted in consumer injury or harm to the public interest.

99.    Plaintiff Atik and members of the New York Subclass have been injured because: (a) they would not have purchased the Fruit Snacks had they known that the Products in fact contained added sugars and artificial dyes, lacked significant amounts of real fruit, contained no dietary fiber, and contributed to decreasing overall health; (b) they paid a price premium for the Fruit Snacks based on Defendant's false and misleading statements; and (c) the Fruit Snacks did

not have the characteristics and benefits promised because the Fruit Snacks contained added sugars, lacked significant amounts of real fruit, and contained no dietary fiber. As a result, Plaintiff Atik and the New York Subclass have been damaged because they purchased more of Defendants' Products than they would have or paid more than they would have for Defendants' Fruit Snacks had they known the statements on Defendants' Fruit Snacks conveying that they were made from fruit and were healthful are contrary to the actual ingredients of the Fruit Snacks.

100.    As a result of Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, Plaintiffs have suffered and continue to suffer economic injury.

101.    Plaintiff Atik and members of the New York Subclass suffered an ascertainable loss caused by Defendants' Misrepresentations because they purchased more of Defendants' Products than they would have or paid more than they would have for Defendants' Fruit Snacks had they known the truth about the product.

102.    On behalf of herself and other members of the Class and New York Subclass, Plaintiff Atik seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION
### Unfair and Deceptive Acts and Practices,
### In Violation of the California Consumers Legal Remedies Act § 1750, *et seq.*

103.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

104.    Plaintiff Lau brings this cause of action individually and on behalf of the California Subclass pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

105.    Plaintiff Lau and members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

106.    Plaintiff Lau, members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

107.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

108.    As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Lau and the California Subclass certain qualities of its Products.

109.    As a result of engaging in such conduct, Defendants have violated California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9).

110.    Pursuant to California Civil Code §§ 1780(a)(2) and (a)(5), Plaintiff Lau seeks an order of this Court that includes, but is not limited to, an order requiring Defendants to remove language and graphics on Defendants' marketing and labeling representing the Fruit Snacks as made with fruit and being healthful and nutritious.

111.    Plaintiff Lau and members of the California Subclass may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

112.    The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff Lau and members of the California Subclass.

113.    Plaintiff Lau does not seek monetary damages pursuant to the CLRA.

### SEVENTH CAUSE OF ACTION
### Unlawful Business Acts and Practices,
### In Violation of California Business and Professions Code, § 17200, *et seq.*

114.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

115.    Plaintiff Lau brings this cause of action individually and on behalf of the California Subclass.

116.    Such acts of Defendants, as described above, constitute unlawful business acts and practices.

117.   In this regard, Defendants' manufacturing, marketing, advertising, labeling, distributing, and selling of its Products violates California's Sherman Law, Cal. Health & Saf. Code § 109875, *et seq*.

118.   In relevant part, the Sherman Law declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food. Cal. Health & Saf. Code §§ 110660, 110765.

119.   The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Saf. Code § 109995. Defendants are corporations and, therefore, a "person" within the meaning of the Sherman Law.

120.   The business practices alleged above are unlawful under the CLRA, Cal. Civ. Code § 1750, *et seq*., which forbids deceptive advertising.

121.   The business practices alleged above are unlawful under California Business and Professions Code § 17200, *et seq*. by virtue of violating § 17500, *et seq*., which forbids untrue advertising and misleading advertising.

122.   As a result of the business practices described above, Plaintiff Lau and the California Subclass, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

123.   The above-described unlawful business acts and practices of Defendants present a threat and reasonable likelihood of deception to Plaintiff Lau and members of the California Subclass in that Defendants have systematically perpetrated and continue to perpetrate such acts or practices upon members of the California Subclass by means of misleading manufacturing, marketing, advertising, labeling, distributing, and selling of the Products.

CLASS ACTION COMPLAINT

**EIGHTH CAUSE OF ACTION**
**Fraudulent Business Acts and Practices,**
**In Violation of California Business and Professions Code § 17200, *et seq.***

124.    Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

125.    Plaintiff Lau brings this cause of action individually and on behalf of the California Subclass.

126.    Such acts of Defendants as described above constitute fraudulent business practices under California Business and Professions Code § 17200, *et seq.*

127.    As more fully described above, Defendants' misleading marketing, advertising, and labeling of the Products is likely to deceive reasonable California consumers. Indeed, Plaintiff Lau and other members of the California Subclass were unquestionably deceived regarding the characteristics of Defendants' Products, as Defendants' marketing, advertising, and labeling of the Products misrepresents or omits the true ingredients and nutritional content of the Products. Defendants' portrayal of the Products as made with fruit and being healthful and nutritious is misleading and deceptive because the Products contain added sugars, lack significant amounts of real fruit, contain no dietary fiber, and contribute to decreasing overall health.

128.    This fraud and deception caused Plaintiff Lau and members of the California Subclass to purchase more of Defendants' Products than they would have or to pay more than they would have for Defendants' Products had they known that the statements on Defendants' Products conveying that they were made from fruit and were healthful are contrary to the actual ingredients of the Products.

129.    As a result of the business acts and practices described above, Plaintiff Lau and the California Subclass, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for Defendants' Products as a result of the wrongful conduct of Defendants.

**NINTH CAUSE OF ACTION**
**Misleading and Deceptive Advertising**
**In Violation of California Business and Professions Code, § 17500, *et seq.***

130.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

131.     Plaintiff Lau brings this cause of action individually and on behalf of the California Subclass for violations of California Business and Professions Code § 17500, *et seq*. for misleading and deceptive advertising against Defendants.

132.     At all material times, Defendants engaged in a scheme of offering the Products for sale to Plaintiff Lau and other members of the California Subclass by way of, *inter alia*, commercial marketing and advertising, the Internet, product labeling, and other promotional materials. Defendants' portrayal of its Products as being made from fruit and as being healthful and nutritious is misleading and deceptive because the Products contain high amounts of sugars and calories, lack significant amounts of real fruit, and contribute to decreasing overall health. Said advertisements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq*. in that such promotional materials were intended as inducements to purchase Defendants' Products and are statements disseminated by Defendants to Plaintiff Lau and the California Subclass and were intended to reach members of the California Subclass. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

133.     In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California—via commercial marketing and advertising, the Internet, Product labeling, and other promotional materials—statements that misleadingly and deceptively represent the Products as being made all or mostly of the fruit represented, and being healthful and nutritious. Consumers, including Plaintiff Lau, necessarily and reasonably relied on these materials concerning Defendants' Products. Consumers, including Plaintiff Lau and the Class Members, were among the intended targets of such representations.

134.     The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff Lau

and members of the Class, were and are likely to deceive reasonable consumers, including Plaintiff and other members of the Class, by obfuscating the real ingredients of the Products, and making misleading claims about the Products, all in violation of the "misleading prong" of California Business and Professions Code § 17500.

135.    As a result of the above violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff Lau and the other members of the California Subclass.  Plaintiff Lau and the California Subclass, pursuant to California Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

**PRAYER FOR RELIEF**

Plaintiffs, on their own behalf and on behalf of the Class, New York Subclass and California Subclass, pray for the following relief:

A.    For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the Class members;

B.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.    For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: September 18, 2015                  Respectfully submitted,

**THE RICHMAN LAW GROUP**

*/s/ Kim E. Richman*
Kim E. Richman
*krichman@richmanlawgroup.com*
195 Plymouth Street
Brooklyn, NY 11201
(212) 687-8291 (t)
(212) 687-8292 (f)

**STANLEY LAW GROUP**
Stephen Gardner
Amanda Howell
*steve@consumerhelper.com*
*ahowell@stanleylawgroup.com*
6116 N. Central Expressway
Suite 1500
Dallas, TX 75206
(214) 443-4300 (t)
(214) 443-0358 (f)

*Attorneys for Plaintiffs and the Proposed Class*