UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

ALIZA ATIK and WINNIE LAU, on behalf of
themselves and all others similarly situated,

Plaintiffs,

- against -

WELCH FOODS, INC., A COOPERATIVE, and
THE PROMOTION IN MOTION COMPANIES,
INC.,

Defendants.

------------------------------------------------------------ x

Case No. 15 CV 5405 (MKB) (VMS)

Judge Margo K. Brodie

**ECF Case**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) & (6)

VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

PLAINTIFFS' ALLEGATIONS .......................................................................................... 2

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFFS LACK ARTICLE III STANDING TO SEEK
        INJUNCTIVE RELIEF ........................................................................................... 4

II.     PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT CLAIMS
        REGARDING FRUIT SNACKS VARIETIES THEY HAVE NOT
        PURCHASED ......................................................................................................... 7

III.    THE COMPLAINT SHOULD BE DISMISSED OR STAYED
        PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE ............................. 9

IV.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED TO THE EXTENT
        THEY SEEK TO INCLUDE PURCHASES EARLIER THAN THE
        APPLICABLE STATUTES OF LIMITATION ........................................................ 12

V.      PLAINTIFFS' NEW YORK AND CALIFORNIA CONSUMER
        PROTECTION CLAIMS SHOULD BE DISMISSED BECAUSE
        PLAINTIFFS FAIL TO ALLEGE ANY REPRESENTATIONS THAT
        ARE LIKELY TO DECEIVE A REASONABLE CONSUMER .................................. 13

        A.      The *Made With Real Fruit* Label is Not Likely to Deceive an Objectively
                Reasonable Consumer ................................................................................. 14

        B.      The Word *Wholesome* is Not Likely to Deceive a Reasonable Consumer .......... 17

        C.      The Phrase *quality that can only be Welch's* is Not Likely to Deceive a
                Reasonable Consumer ................................................................................. 19

        D.      The Phrases *100% Vitamin C*, *25% Vitamins A & E*, and *no preservatives* Are Not
                Likely to Deceive a Reasonable Consumer ....................................................... 20

VI.     PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM FAILS
        UNDER BOTH NEW YORK AND CALIFORNIA LAW ............................................. 22

i

**TABLE OF CONTENTS**
**(CONT'D)**

**Page**

VII.   PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIM FAILS
UNDER BOTH NEW YORK AND CALIFORNIA LAW ............................................... 24

VIII.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS UNDER BOTH
NEW YORK AND CALIFORNIA LAW ........................................................................ 25

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238 (2d Cir. 1986) ............................................. 25

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ....................................................................................................... 11, 24

*Albert v. Blue Diamond Growers*, No. 15-CV-4087 (VM)  (S.D.N.Y. Oct. 21, 2015) ............................................................................................................................. 6, 7

*All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862 (7th Cir. 1999) ...................................... 19

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011)...................................... 4

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608 (2d Dep't 2002) ................................................................................................................................ 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ............................................................................... 4

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992).......................... 4

*August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616 (7th Cir. 1995)............................................... 20

*Belfiore v. Procter & Gamble Co.*,  --- F.R.D. ---, No. 14-CV-4090, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015)......................................................................................... 12

*Bem v. Stryker Corp.*, No. C-15-2485 MMC, 2015 WL 6089819 (N.D. Cal. Oct. 16, 2015) ................................................................................................................................... 23

*Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310 (E.D.N.Y. 2001) ........................................... 23

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015)............................... 21, 22

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010)............................... 18, 19

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................................... 5

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) .......................................... 25

*Cox v. Gruma Corp.*, No. 12-CV-6502 YGR, 2013 WL 3828800 (N.D. Cal. July 11, 2013) ................................................................................................................................. 12

*Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340 (2d Cir. 1998) ............................................ 5

*DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014).................................. 7, 8, 9

iii

<u>TABLE OF AUTHORITIES</u>
<u>(CONT'D)</u>

<u>Page(s)</u>

*Dodge v. Cnty. of Orange*, 103 F. App'x 688 (2d Cir. 2004) ........................................................ 5

*Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL
    2344134 (E.D.N.Y. May 14, 2015) ................................................................................ 6, 7

*Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339 (E.D.N.Y. 2015) ........................................ 12

*Figy v. Frito-Law N.A., Inc.*, 67 F. Supp. 3d 1075 (N.D. Cal. 2014) ................................... 21, 22

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) .................................................... 17, 19

*Garcia v. Sony Computer Entm't Am.*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ......................... 22

*Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150 (2d Cir. 2006) .................. 18

*Gomez-Jimenez v. New York Law Sch.*, 103 A.D.3d 13 (1st Dep't 2012) ................................... 22

*Hairston v. S. Beach Beverage Co., Inc.,* No. 12–CV–1429, 2012 WL 1893818
    (C.D. Cal. May 18, 2012) ............................................................................................ 17, 19

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL
    4647512 (E.D.N.Y. Aug. 29, 2013) .............................................................................. 17, 19

*Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523 (E.D.N.Y. 2012) ................................ 24

*Jones by Jones v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 695 F. Supp. 700
    (E.D.N.Y. 1988) ................................................................................................................. 23

*Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27,
    2013) ..................................................................................................................................... 7

*Lam v. Gen. Mills, Inc.,* 859 F. Supp. 2d 1097 (N.D. Cal. 2012) ......................................... 15, 21

*Leonard v. Abbot Labs., Inc.*, No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199
    (E.D.N.Y. Mar. 5, 2012) .................................................................................................... 19

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) .......................................................... 4

*Mathirampuzha v. Potter,* 548 F.3d 70 (2d Cir. 2008) ............................................................ 10

*Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57 (2d Cir. 2011) ................... 4

*Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318 (2014) ................................................. 25

*Nicosia v. Amazon, Inc.*, 84 F. Supp. 3d 142 (E.D.N.Y. 2015) ............................................... 6, 7

*POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014) .............................................. 10

<u>**TABLE OF AUTHORITIES**</u>
<u>**(CONT'D)**</u>

<u>**Page(s)**</u>

*Private Jet Servs. Grp., Inc. v. Sky King, Inc.*, No. CIV. 05-CV-98-JD, 2006 WL
   2864057 (D.N.H. Oct. 4, 2006) ....................................................... 19, 20

*Pungitore v. Barbera*, 506 F. App'x 40 (2d Cir. 2012) ................................... 5

*Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 WL 5504011 (C.D.
   Cal. Oct. 25, 2012) ............................................................... 16, 17, 21

*Schneiderman v. Orbital Pub. Grp., Inc.*, No. 451187/15, --- N.Y.S.3d ---, 2015
   WL 7738630 (Sup. Ct., N.Y. Cnty. Nov. 30, 2015) .................................... 12

*Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022
   (E.D.N.Y. Sept. 14, 2015) .......................................................... 24, 25

*Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal.
   Mar. 11, 2014) ........................................................................ 24

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL
   5579872 (E.D.N.Y. Sept. 22, 2015) ............................................. 13, 17, 25

*Storms v. United States*, No. 13-CV-811 MKB, 2015 WL 1196592 (E.D.N.Y. Mar.
   15, 2015) .............................................................................. 5, 6

*Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014) ................ 6

*Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1,
   1999) ................................................................................. 20

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59 (1956) ................................. 10

*Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853 (2d Cir. 1918) ...................... 20

*Williams v. Gerber*, 552 F.3d 934 (9th Cir. 2008) ..................................... 15

*Woods v. Maytag Co.*, No. 10-CV-0559 ADS WDW, 2010 WL 4314313 (E.D.N.Y.
   Nov. 2, 2010) ......................................................................... 13

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ............................................... 3, 4, 13

Cal. Bus. & Prof. Code § 17208 .................................................... 13

Cal. Bus. & Prof. Code § 17500 ..................................................... 4

Cal. Civ. Code § 1750 .............................................................. 3

Cal. Civ. Code § 1783 ............................................................. 12

<u>**TABLE OF AUTHORITIES**</u>
<u>**(CONT'D)**</u>

<u>**Page(s)**</u>

Cal. Civ. Code § 1791.3 ................................................................................................. 23

Cal. Civ. Code § 338(a) ................................................................................................. 12

Cal. Comm. Code § 2313 ............................................................................................... 23

N.Y. Gen. Bus. Law § 349 ......................................................................................... 3, 12

N.Y. Gen. Bus. Law § 350 ......................................................................................... 3, 12

N.Y. U.C.C. Law § 2-313(a) .......................................................................................... 22

**RULES**

21 C.F.R. § 101.14 ......................................................................................................... 11

21 C.F.R. § 101.65 ................................................................................................... 11, 12

21 C.F.R. § 102.5 .................................................................................................... 10, 11

21 C.F.R. § 104.20 ......................................................................................................... 11

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 4, 25

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 4, 25

## INTRODUCTION

Plaintiffs' claims arise out of the labeling of Welch's Fruit Snacks ("Fruit Snacks").  For several reasons, each claim fails as a matter of law.

*First*, Plaintiffs' claims conflict with Article III's standing requirements.  Plaintiffs seek injunctive relief, but cannot allege any future injury, as they plainly state that they will not continue buying Fruit Snacks unless the label is changed (and of course, even if Plaintiffs did purchase Fruit Snacks in the future, they could not claim to have been deceived).  Plaintiffs also seek to assert claims regarding no fewer than *thirteen* Fruit Snacks varieties that Plaintiffs did not purchase.  Plaintiffs lack standing to assert these claims, particularly with respect to the varieties that are materially different from the products that Plaintiffs themselves purchased.

*Second*, the issues raised by Plaintiffs implicate policy concerns regarding the proper labeling of food products.  As such, the primary jurisdiction doctrine mandates that such claims should be adjudicated by the agency tasked with making such policy determinations—the FDA.

*Third*, Plaintiffs' claims are time-barred to the extent they seek to include purchases that extend beyond the applicable statutes of limitation.

*Fourth*, Plaintiffs' New York and California consumer protection claims fail because Plaintiffs do not allege any representations that are likely to deceive a reasonable consumer.

*Fifth*, Plaintiffs' common law claims cannot survive the pleading stage.  The breach of express warranty, breach of implied warranty and unjust enrichment claims fail for the same reason as the consumer protection claims—Plaintiffs' failure to allege an actionable misrepresentation. In addition, the implied warranty claim fails due to the absence of vertical privity, and the unjust enrichment claim fails under New York law because it is duplicative.

In sum, all of Plaintiffs' claims are either (i) precluded for lack of standing, (ii) barred pursuant to the primary jurisdiction doctrine, or (iii) without merit as a matter of law (or some combination of the three).  Accordingly, the Court should dismiss the Complaint in its entirety.

## PLAINTIFFS' ALLEGATIONS

Defendants market, package, and sell Fruit Snacks, a line of snack food products that come in a number of different varieties and flavors.[1]  Defendants have advertised and marketed Fruit Snacks using the following representations: (i) the words "Made With Real Fruit" and images of one or more fruits corresponding to the particular variety of Fruit Snacks, appearing on the front of Fruit Snacks packaging (collectively, the "Made With Real Fruit Label"), Compl. ¶ 35 & Illus. 2, 3; (ii) the word "wholesome," appearing in copy on the side of Fruit Snacks packaging, Compl. ¶¶ 32-34 & Illus. 1; (iii) the phrase "quality that can only be Welch's," appearing on Welch's website, Compl. ¶ 34 & n. 13; and (iv) the phrases "100% Vitamin C," "25% Vitamins A & E," and "no preservatives," appearing on the front of Fruit Snacks packaging (collectively, the "Vitamin Phrases," and together with the Made With Real Fruit Label, the word "wholesome," and the phrase "quality that can only be Welch's," the "Fruit Snacks Representations"), Compl. ¶ 38 & Illus. 2.

Plaintiff Atik is a New York resident who purchased the "Mixed Fruit" and "Strawberry" varieties of Fruit Snacks in various retail locations around New York.  *Id.* ¶¶ 14-16.  Prior to and at the time of these purchases, Atik saw the Fruit Snacks Representations, and based on those representations believed that (i) Fruit Snacks contained significant amounts of the fruits depicted on the packaging; and (ii) Fruit Snacks were nutritious and healthful.  *Id.* ¶ 15.  Atik relied on the Fruit Snacks Representations in deciding to purchase Fruit Snacks.  *Id.* ¶¶ 15-16.  Atik would

---

[1] Fruit Snacks are manufactured, marketed and distributed by The Promotion in Motion Companies, Inc. ("PIM"), which has a license to use trademarks owned by Welch Foods, Inc. ("Welch") in connection with Fruit Snacks.

-2-

not have purchased Fruit Snacks had she not seen the Fruit Snacks Representations, which Atik now believes are deceptive and misleading.  *Id.* ¶ 16.  Once Atik came to believe that the Fruit Snacks Representations were deceptive and untruthful, she stopped purchasing Fruit Snacks.  *Id.*

Plaintiff Lau is a California resident who purchased the "Mixed Fruit," "Strawberry," "White Grape Raspberry," and "Concord Grape" varieties of Fruit Snacks at various retail locations around California.  *Id.* ¶¶ 17-19.  Prior to and at the time of these purchases, Lau saw the Fruit Snacks Representations, and based on those representations believed that (i) Fruit Snacks contained significant amounts of the fruits depicted on the packaging; and (ii) Fruit Snacks were nutritious and healthful.  *Id.* ¶ 18.  Lau relied on the Fruit Snacks Representations in deciding to purchase Fruit Snacks.  *Id.* ¶¶ 17-18.  Lau would not have purchased Fruit Snacks had she not seen the Fruit Snacks Representations, which Lau now believes are deceptive and misleading.  *Id.* ¶ 19.  Once Lau came to believe that the Fruit Snacks Representations were deceptive and untruthful, she stopped purchasing Fruit Snacks.  *Id.*

Based on these allegations, Plaintiffs assert nine causes of action against Defendants on behalf of themselves and a putative class of nationwide, California and/or New York consumers of Fruit Snacks: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) unjust enrichment; (4) violation of New York's General Business Law § 349 *et seq.* (the "GBL 349 Claim"); (5) violation of New York's General Business Law § 350 *et seq.* (the "GBL 350 Claim", and together with the GBL 349 Claim, the "NY Consumer Protection Claims"); (6) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA Claim"); (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL 17200 Claim"); (8) violation of the UCL (the "UCL Fraud Claim"); (9) violation of California's False Advertising Law, Cal. Bus. & Prof.

-3-

Code § 17500 *et seq.* (the "FAL Claim", and together with the CLRA Claim, the UCL 17200

Claim and the UCL Fraud Claim, the "CA Consumer Protection Claims").  Compl. ¶¶ 69-135.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  For a plaintiff to survive a motion to dismiss

pursuant to Rule 12(b)(1), she must allege facts "that affirmatively and plausibly suggest that

[she] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.

2011).  "In deciding such a motion, the Court may consider materials beyond the pleadings,"

*Makarova*, 201 F.3d at 113, but must also "accept as true all material factual allegations in the

complaint." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

On a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept as true all

allegations in the complaint and draw all reasonable inferences in favor of the non-moving

party." *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011)

(quotations and citation omitted).  In order to survive the motion, "[t]he plaintiff's complaint

must . . . 'contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  Thus, "while a

complaint need not contain 'detailed factual allegations,' it requires 'more than an unadorned,

the defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF

In addition to monetary damages, Plaintiffs seek injunctive relief.  *See* Compl. ¶¶ 92, 102,

110, 122, 129, 135.  Plaintiffs, however, lack standing to seek injunctive relief.  In order for a

plaintiff to have Article III standing, she must demonstrate that "(1) [she] suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).  In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court held that for a plaintiff to have standing to seek prospective injunctive relief, alleging past injury does not suffice; the plaintiff must demonstrate "that he will be wronged again in a similar way . . . ." *Id.* at 103. Pursuant to *Lyons*, the Second Circuit has held that "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E.*, 156 F.3d at 344.

Thus, "[w]hile past wrongs may be evidence bearing on whether there is a real and immediate threat of repeated injury, such evidence does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Storms v. United States*, No. 13-CV-811 MKB, 2015 WL 1196592, at *26 (E.D.N.Y. Mar. 15, 2015) (quoting *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (quotation marks and ellipsis omitted)).  Moreover, the necessity of showing a likelihood of continuing or future injury applies even where, as here, the plaintiff is purporting to assert claims on behalf of a class. *See Dodge v. Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004) ("[T]he named plaintiffs in this action must themselves have standing to seek injunctive relief.").

Plaintiffs allege they were injured by purchasing Fruit Snacks in reliance upon Defendants' alleged misrepresentations.  Compl. ¶¶ 16, 19.  However, Plaintiffs also allege that they stopped purchasing Fruit Snacks, and would only resume their purchases if they "knew that [Fruit Snacks] marketing and labeling was truthful and not deceptive." Compl. ¶¶ 16, 19.  This allegation fails to create standing under *Lyons*.  First, to the extent that Plaintiffs do purchase

-5-

Fruit Snacks where the "marketing and labeling was truthful and not deceptive," such a purchase would not constitute an injury to Plaintiffs.  Second, if Plaintiffs were to purchase Fruit Snacks bearing the same alleged misrepresentations that are currently in place, such purchases would not constitute an injury because "Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them."  *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015).

This Court recently addressed an analogous scenario in *Elkind*, where the plaintiffs asserted consumer protection claims on behalf of a class, and asked for "an order enjoining [defendant] from selling the Products" with the allegedly deceptive representations.  2015 WL 2344134, at *3.  The plaintiffs in *Elkind* also alleged injury only due to past purchases.  *Id.*  The Court held that this was insufficient to confer standing to sue for injunctive relief, because "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *Id.*  The Court also held that the possibility that the plaintiffs would purchase the product at issue again in the future was likewise insufficient, because "Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them."  *Id.* (citing *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014) & *Nicosia v. Amazon, Inc.*, 84 F. Supp. 3d 142, 155-58 (E.D.N.Y. 2015)).

The same reasoning applies here.  Because Plaintiffs have failed to allege a likelihood of continuing or future injury, they do not have standing to seek injunctive relief.  *See, e.g.*, *Storms*, 2015 1196592, at *27; *Albert v. Blue Diamond Growers*, No. 15-CV-4087 (VM) at 12-13 (S.D.N.Y. Oct. 21, 2015) (order denying preliminary injunction and holding that "plaintiffs do not have standing to seek injunctive relief because they have not alleged that they will purchase

defendants' almond milk labeled product in the future").  Because Plaintiffs lack standing to seek injunctive relief for themselves, they also cannot seek such relief on behalf of the classes whom they purport to represent.  *See, e.g.*, *Nicosia*, 84 F. Supp. 3d at 155-58; *Elkind*, 2015 WL 2344134, at *3; *Albert*, No. 15-CV-4087 (VM) at 12-13.

## II.    PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT CLAIMS REGARDING FRUIT SNACKS VARIETIES THEY HAVE NOT PURCHASED

Plaintiffs purport to assert claims regarding not only the Fruit Snacks varieties that they allege to have purchased themselves—namely, Mixed Fruit, Strawberry, White Grape Raspberry and Concord Grape (the "Purchased Varieties"), *see* Compl. ¶¶ 16, 19—but also regarding numerous other varieties of Fruit Snacks that Plaintiffs do not allege to have purchased (the "Non-Purchased Varieties").  *See* Compl. n. 2.[2]

In order for a plaintiff to have standing to assert consumer protection claims on behalf of putative class members regarding products that the plaintiff did not purchase, she must allege that there are "sufficient similarities" between the product that plaintiff did purchase and the other products that she seeks to include in her claims.  *Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013).  If the complaint fails to include an allegation of sufficient similarity, the plaintiff lacks standing to assert claims regarding the non-purchased items, and dismissal of those claims is warranted.  *See DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014).

Here, Plaintiffs assert their claims over no fewer than *thirteen additional varieties of Fruit Snacks* beyond those varieties that Plaintiffs allege to have purchased.  Yet, Plaintiffs do

---

[2] The Non-Purchased varieties of Fruit Snacks over which Plaintiffs purport to assert their claims are: Island Fruits, Reduced Sugar Mixed Fruit, Berries 'n Cherries, Tangy Fruits, Fruit Punch, White Grape Peach, Apple Orchard Medley, Strawberry Fruit 'n Yogurt, Blueberry Fruit 'n Yogurt, Strawberry Creamy PB&J, Strawberry Crunchy PB&J, Grape Creamy PB&J, and Grape Crunchy PB&J.  *See* Compl. n.2.

not, and cannot, allege that these Non-Purchased Varieties are "sufficiently similar" to the Purchased Varieties that Plaintiffs themselves bought.  Accordingly, the Court should dismiss for lack of standing Plaintiffs' claims regarding the thirteen Non-Purchased Varieties of Fruit Snacks.  *DiMuro*, 572 F. App'x at 29.

Moreover, assuming, *arguendo*, the Complaint can be read to contain an implied allegation of sufficient similarity, it could *at most* be imputed to the Non-Purchased Varieties that are *similar in nature to the Purchased Varieties*—namely: Island Fruits, Reduced Sugar Mixed Fruit, Berries 'n Cherries, Tangy Fruits, Fruit Punch, White Grape Peach, and Apple Orchard Medley.  The other six Non-Purchased Varieties are materially different from the products that Plaintiffs purchased.  As such, it would be an affront to Article III's standing requirement to permit Plaintiffs' claims to encompass these materially distinct products.

For example, the **Strawberry Fruit 'n Yogurt** and **Blueberry Fruit 'n Yogurt** varieties of Fruit Snacks (the "Yogurt Fruit Snacks") are sold in packaging bearing the label "**Made With REAL Fruit : Surrounded By Creamy Yogurt**," which is accompanied by an image not only of the characterizing fruit (*i.e.*, either a strawberry or blueberry), but also of a cross-section of one of the Fruit Snacks pieces, revealing that the fruit-based center is liberally coated with yogurt.[3]  The packaging additionally portrays the image of the characterizing fruit floating in a pool of thick yogurt.  *See supra* n. 2.  This packaging is materially different from that depicted in

---

[3] Images of the packaging of the Strawberry Fruit 'n Yogurt and Blueberry Fruit 'n Yogurt varieties of Fruit Snacks are attached as Exhibit A to the Affirmation of Daniel Silverman in Support of Defendants' Motion to Dismiss the Complaint ("Silverman Aff.").  The Court may consider these images (as well as those of the other Fruit Snacks varieties referenced in the Complaint) in ruling on the instant motion because "Plaintiffs made the ingredients a component of their . . . complaint."  *DiMuro*, 572 F. App'x at 29 n.1.

the Complaint—a distinction that is particularly relevant in the context of alleged misrepresentations regarding healthfulness.[4]

Similarly, the packaging of Fruit Snacks varieties **Strawberry Creamy PB&J**, **Strawberry Crunchy PB&J**, **Grape Creamy PB&J**, and **Grape Crunchy PB&J** (the "Peanut Butter Fruit Snacks") each bear a label stating "**Made with Real Fruit and Creamy Peanut Butter**," juxtaposed with an image showing a cross section of a Fruit Snacks piece that reveals a fruit-based center surrounded by a generous peanut butter coating.[5]  The packaging also shows the image of the characterizing fruit next to an enormous bowl that is overflowing with peanut butter.  *See supra* n. 4.  As with the Yogurt Fruit Snacks, the Peanut Butter Fruit Snacks are not only materially different from the varieties purchased by Plaintiffs, but are different in a manner that is particularly germane to the issues raised by Plaintiffs' claims.[6]

Accordingly, the Court should dismiss for lack of Article III standing Plaintiffs' claims regarding all thirteen of the Non-Purchased Varieties.  In the alternative, the Court should, at a minimum, dismiss Plaintiffs' claims regarding the two Yogurt Fruit Snacks varieties and the four Peanut Butter Fruit Snacks varieties.  *See DiMuro*, 572 F. App'x at 29.

## III.   THE COMPLAINT SHOULD BE DISMISSED OR STAYED PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE

This case should be dismissed or stayed pursuant to the doctrine of primary jurisdiction ("PJD").  The PJD "comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an

---

[4] *See* Silverman Aff., Ex. B (side-by-side comparison of packaging for Strawberry Fruit Snacks and Strawberry Fruit 'n Yogurt Fruit Snacks varieties).
[5] See Silverman Aff. Ex. C (images of the packaging of the Strawberry Creamy PB&J, Strawberry Crunchy PB&J, Grape Creamy PB&J, and Grape Crunchy PB&J varieties of Fruit Snacks).
[6] *See* Silverman Aff., Ex. D (side-by-side comparison of packaging for Strawberry Fruit Snacks and Strawberry Creamy PB&J Fruit Snacks).

administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Mathirampuzha v. Potter,* 548 F.3d 70, 83 (2d Cir. 2008) (quoting *United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 64 (1956)).

At its core, this case is not about determining whether a particular representation made by Defendants is false or misleading—an exercise that, Defendants acknowledge, is well within the purview of this Court. Rather, despite Plaintiffs' efforts to cloak their allegations in the garb of consumer protection claims, the allegations asserted herein actually implicate issues of public policy that fall squarely within the special competence and expertise of the FDA. As the Supreme Court has recognized, "[e]nforcement of the FDCA and the detailed prescriptions of its implementing regulations is largely committed to the FDA," since "the FDCA and its regulations provide the United States with nearly exclusive enforcement authority." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2235, 2238 (2014). Consequently, private parties such as Plaintiffs may not usurp that authority by bringing what effectively amounts to an "enforcement suit[]," *id.* at 2235, *i.e.*, an attempt to enforce the FDA's rules in the manner plaintiff sees fit.

For instance, Plaintiffs' claim regarding the Made With Real Fruit Label is not about whether or not the words "made with real fruit" are deceptive *per se*. In reality, that claim raises the question of whether the packaging of a product like Fruit Snacks should be required to display the percentage of fruits contained within on its front label. The true nature of the Made With Real Fruit claim is evidenced by paragraph 52 of the Complaint, wherein Plaintiffs allege that Fruit Snacks are misbranded because they do not "display the true percentage of fruits in the product name on the front label," and cite as authority 21 C.F.R. § 102.5, which provides:

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may

-10-

otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

In essence, therefore, Plaintiffs' claim regarding the Made With Real Fruit Label is merely a contention that the provisions of 21 C.F.R. § 102.5 should apply to Fruit Snacks packaging. This Court should leave this determination to the sound discretion of the FDA, the entity that has been charged by Congress with developing, promulgating and determining the application of this rule.

The same is true with respect to Plaintiffs' claim regarding the Vitamin Phrases. This claim is not really about whether the Vitamin Phrases are misleading—after all, the images supplied by Plaintiffs in the Complaint demonstrate that the Vitamin Phrases are a fully accurate rendering of the vitamin content of Fruit Snacks. *Compare* Compl. Illus. 2 (showing Vitamin Phrases) *with* Compl. Illus. 4 (showing Nutrition Facts label). Rather, Plaintiffs' claim regarding the use of the Vitamin Phrases implicates the policy question of whether it is appropriate to list a product's vitamin content on its packaging even when the vitamins are present as a result of fortification. Paragraph 50 of the Complaint demonstrates that this is Plaintiffs' true concern, as it alleges that Fruit Snacks' packaging is deceptive because, *inter alia*, the product "contain[s] a significant amount of vitamins only due to improper fortification." However, as this Court noted in *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010), the FDA has promulgated detailed regulations regarding references to vitamin content on food labels. *Id.* at *10 (discussing 21 C.F.R. §§ 101.14, 101.65 & 104.20). Plaintiffs would have these regulations applied so as to prohibit the use of the Vitamin Phrases on a product such as Fruit Snacks. Again, this decision should be left to the FDA.

Plaintiffs' claims regarding the use of the word "wholesome" and the phrase "quality that can only be Welch's" are subject to the same analysis. Plaintiffs contend that these terms— which, according to Plaintiffs, send a message to consumers that Fruit Snacks are "healthful and

-11-

nutritious," Compl. ¶ 14—should be governed by the same rules and regulations that the FDA

has imposed regarding the use of the word "healthy" on food packaging.  *See, e.g.*, 21 C.F.R.

101.65(d).  This determination should again be left to the FDA.

Since the causes of action asserted in the Complaint implicate policy issues that fall

within the purview of the FDA, this Court should dismiss or stay the case in favor of a

determination by the FDA.  *See, e.g., Belfiore v. Procter & Gamble Co.*,  --- F.R.D. ---, No. 14-

CV-4090, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) *reconsideration denied*, No. 14-CV-1142,

2015 WL 6448696 (E.D.N.Y. Oct. 22, 2015) (applying primary jurisdiction to stay claims

regarding the use of the term "flushable" on the packaging for moist towelettes based on primary

jurisdiction of the FTC); *Cox v. Gruma Corp.*, No. 12-CV-6502 YGR, 2013 WL 3828800, at *1-

2 (N.D. Cal. July 11, 2013) (staying claims regarding the use of the word "natural" on packaging

for genetically-modified food products pursuant to PJD because FDCA and the NLEA

"unquestionably and squarely give . . . authority to the FDA" to make such a determination).

**IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED TO THE EXTENT THEY
         SEEK TO INCLUDE PURCHASES EARLIER THAN THE APPLICABLE
         <u>STATUTES OF LIMITATION</u>**

Plaintiffs purport to assert their claims on Fruit Snacks purchases made during the six

years prior to the date of the Complaint.  Compl. ¶ 2.  However, the claims asserted by Plaintiffs

are all subject to statutes of limitation shorter than six years.  The claims under GBL 349 Claim,

GBL 350 Claim, FAL Claim, CLRA Claim, and the claim for unjust enrichment are all subject to

three-year statutes of limitation.  *See Schneiderman v. Orbital Pub. Grp., Inc.*, No. 451187/15, --

- N.Y.S.3d ---, 2015 WL 7738630, at *10 (Sup. Ct., N.Y. Cnty. Nov. 30, 2015) [GBL 349 &

350]; Cal. Civ. Code § 338(a) [FAL]; Cal. Civ. Code § 1783 [CLRA]; *Ethelberth v. Choice Sec.

Co.*, 91 F. Supp. 3d 339, 364 (E.D.N.Y. 2015) (unjust enrichment).  The breach of express and

implied warranty claims, the UCL 17200 Claim and the UCL Fraud Claim are subject to four-year statutes of limitation. *Woods v. Maytag Co.*, No. 10-CV-0559 ADS WDW, 2010 WL 4314313, at *2 (E.D.N.Y. Nov. 2, 2010) [breach of express & implied warranty claims]; Cal. Bus. & Prof. Code § 17208 [UCL 17200 & Fraud]. Thus, the Court should dismiss Plaintiffs' claims to the extent that they purport to extend past their respective statutes of limitation.

V.   **PLAINTIFFS' NEW YORK AND CALIFORNIA CONSUMER PROTECTION CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE ANY REPRESENTATIONS THAT ARE LIKELY TO DECEIVE A REASONABLE CONSUMER**

To state a claim under the consumer protection statutes of either New York or California, "a plaintiff must establish that a reasonable consumer would likely be misled by the alleged misrepresentation or omission." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *14 (E.D.N.Y. Sept. 22, 2015). Plaintiffs identify several allegedly deceptive representations to support their NY and CA Consumer Protection Claims: (i) the Made With Real Fruit Label is deceptive because it suggests that Fruit Snacks "are made with significant amounts" of the depicted fruits, whereas "those fruits are not the predominant ingredient or even the most prominent fruit in [Fruit Snacks]," Compl. ¶¶ 35, 39, 41; (ii) the word "wholesome" is deceptive because it suggests that Fruit Snacks are "healthful and nutritious," Compl. ¶ 34; (iii) the phrase "quality that can only be Welch's" is deceptive because it suggests that Fruit Snacks are "healthful and nutritious," Compl. ¶ 34; and (iv) the phrases "100% Vitamin C," "25% Vitamins A & E," and "no preservatives" are deceptive because they suggest "that Fruit Snacks are healthful," Compl. ¶ 38, and also cause consumers "to believe that these vitamins are present in the Fruit Snacks due to the Products' fruit content," whereas in fact the vitamins' presence in Fruit Snacks is the result of fortification. Compl. ¶¶ 44-46. As set forth below, none of these are likely to mislead or deceive a reasonable consumer.

-13-

**A. The "Made With Real Fruit" Label is Not Likely to Deceive an Objectively Reasonable Consumer**

Plaintiffs allege that the Made with Real Fruit Label is deceptive because it suggests that Fruit Snacks are "made with **significant** amounts of the fruit depicted," and as a result are "healthful," whereas in actuality Fruit Snacks contain "**very little**" of the depicted fruits and are not healthful.  Compl. ¶¶ 35-43 (emphases added).  In fact, Fruit Snacks do contain a "significant amount" of real fruit.  As evidenced by the "Nutrition Facts" labels, imaged in the Complaint, fruit (in juice form) is the very first ingredient listed, and Fruit Snacks also contain fruit in puree form.  Compl. Illus. 3 & 4.  As an initial matter, therefore, Plaintiffs are entirely warranted in presuming that the Made With Real Fruit Label indicates that fruit is a primary component of Fruit Snacks—because that is in fact the case.

Plaintiffs, however, are not content with Fruit Snacks containing a significant amount of real fruit.  Rather, they complain that they were deceived because Fruit Snacks do not contain a significant amount of *the particular fruit(s) pictured on the packaging* (the "Pictured Fruit"). This position, however, is founded on an unreasonable premise: simply because the package of a food product bears images of a certain fruit, it does not mean that the consumer is entitled to assume that the product contains a significant amount of that particular fruit—absent an express representation to that effect.  Here, Plaintiffs allege no such express representation, and indeed cannot, because Fruit Snacks packaging does not make any claims regarding the amount of the Pictured Fruit that is present in the product.

It is certainly fair and reasonable for a consumer to assume that the juxtaposition of the words "Made with Real Fruit" and the image of the Pictured Fruit means that the Pictured Fruit is contained in the product, and indeed, this is the case with Fruit Snacks.  *See* Compl. Illus. 3 (showing that Berries 'n Cherries Fruit Snacks packaging bears images of strawberries,

-14-

raspberries, blackberries, blueberries and cherries, and further showing that all of those fruits are listed as ingredients); Compl. Illus. 4 (showing that Strawberry Fruit Snacks packaging bears images of strawberries, and further showing that strawberries are listed as an ingredient).[7]

It is equally *unreasonable*, however, for a consumer to presume that the mere presence of an image of a particular fruit necessarily means that such fruit is a significant component of the product.  Merely representing that a product contains a certain thing is not equivalent to representing that the product contains any **particular amount** of that thing.  For instance, in *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608 (2d Dep't 2002), the plaintiff asserted NY Consumer Protection Claims based on the label of an inkjet printer box which stated that "ink cartridges were included with purchase." *Id.* at 609.  The plaintiff claimed that the inkjet box label was deceptive because "it concealed the fact the [included ink] cartridges were only one-half filled with ink." *Id.*  The court rejected that argument, noting that the printer box "indicated only that ink cartridges were included with the purchase . . . [but] **did not provide any description with respect to the amount of ink contained in the cartridge**." *Id.* (emphasis added).  The court therefore held that "[t]he defendant did not engage in a deceptive act by representing that the cartridges were included with the purchase of each printer without disclosing that they were [half-filled] cartridges." *Id.* at 610.  As in *Strishak*, the Made With Real Fruit Label merely indicates that the product contains certain fruits, but "d[oes] not provide any description with respect to the **amount** . . . ." *Strishak*, 300 A.D.2d at 610 (emphasis added).  Just as the *Strishak* court rejected as unreasonable the plaintiff's claims that

---

[7] The fact that the Made With Real Fruit Label is 100% truthful distinguishes this case from scenarios where the label at issue contains an affirmatively false representation.  *See, e.g.*, *Williams v. Gerber*, 552 F.3d 934, 939 (9th Cir. 2008) (packaging of "fruit juice snacks" product depicted fruits not actually contained in the product); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) (packaging claimed that product was "made with real strawberries" but product did not contain any strawberries).

he was deceived regarding the amount of ink contained in the cartridge, it would be unreasonable

for Plaintiffs to argue that the Made With Real Fruit Label deceived them as to the amount of

Pictured Fruit contained in Fruit Snacks.

Similarly instructive, with facts on all-fours with this case, is *Red v. Kraft Foods, Inc.*,

No. CV 10-1028-GW(AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), where the plaintiff

asserted CA Consumer Protection Claims on the basis of the label on a cracker package that

displayed the words "made with real vegetables" alongside pictures of vegetables.  *Id.* at \*2.  The

plaintiff in *Red* alleged that this label was deceptive because it suggested that the crackers were a

healthful food and "contained a **significant** amount of vegetables," whereas in reality, vegetables

were not a primary ingredient in the crackers.  *Id.* at \*3 (emphasis added).  The court rejected

that claim as a matter of law, holding that "[t]he fact remains that the product is a box of

crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not

composed of primarily fresh vegetables," *id.* at \*3 (emphasis added), and therefore "it strains

credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers

is healthful or contains huge amounts of vegetables simply because there are pictures of

vegetables and the true phrase 'Made with Real Vegetables' on the box." *Id.* at \*4.

Credulity is similarly strained by Plaintiffs' allegations here regarding the Made With

Real Fruit Label.  While all Pictured Fruits are indeed contained within the product, the

packaging contains no representation as to the **amount** of real fruit contained in Fruit Snacks.

Thus it is unreasonable for a consumer to simply assume that the Pictured Fruit is contained

therein in significant quantities.  *See Strishak*, 300 A.D.2d at 609-10.  Moreover, any reasonable

consumer who views Fruit Snacks while considering a purchase "will be familiar with the fact of

life" that such a product is not composed primarily of fresh fruit and therefore is not necessarily

-16-

healthful.  *See Red*, 2012 WL 5504011, at *2-3.  Plaintiffs' NY and CA Consumer Protection Claims should therefore be dismissed.

### B.  The Word "Wholesome" is Not Likely to Deceive a Reasonable Consumer

Plaintiffs allege that the use of the word "wholesome" on Fruit Snacks packaging is deceptive because it suggests that Fruits Snacks are "healthful and nutritious."  Compl. ¶ 34 and Illus. 1.  Again, in order to sustain a NY or CA Consumer Protection Claim, the representation at issue must be likely to deceive an objectively reasonable consumer.  *Stoltz*, 2015 WL 5579872, at *14.  Moreover, "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment."  *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).  Thus, in order for the Court to evaluate the viability of Plaintiffs' "wholesome" claims, it should not analyze that word in a vacuum, but rather, "in resolving the reasonable consumer inquiry, [. . .] must consider the entire context of the label."  *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013); *see also Hairston v. S. Beach Beverage Co., Inc.*, No. 12–CV–1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) ("Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim.").

The word "wholesome" appears within copy located on the side of the Fruit Snacks package.  Compl. Illus. 1.  As seen in Illustration 1 in the Complaint, the full text of the copy (the "Fruit Snacks Copy") reads as follows:

**The Welch's® name has been built on the highest quality fruit proudly grown on family farms.  In this tradition of wholesome goodness come Welch's® Fruit Snacks, made with real fruit and fruit juices**.  Welch's® Fruit Snacks are

> sure to delight your family.  Please try all of our delicious Welch's® Fruit Snacks
> varieties, and thank you for the trust you place in Welch's®.

Compl., Illus. 1 (emphasis added).  Reading the term "wholesome" in its proper context, it is

evident that "wholesome" is not a description of the Fruit Snacks product, but rather modifies the

phrase "this tradition."

This distinction becomes readily apparent when the usage of "wholesome" in the Fruit

Snacks Copy is contrasted with the manner in which that same term is used in other cases

involving consumer protection claims.  For instance, in *Chacanaca v. Quaker Oats Co.*, 752 F.

Supp. 2d 1111 (N.D. Cal. 2010), the plaintiff asserted CA Consumer Protection claims on the

basis of, *inter alia*, the defendant's use of the word "wholesome" on the packaging of the product

at issue in that case—namely, granola bars.  *See id.* at 1114.  The court denied defendant's

motion to dismiss, holding that the use of the word "wholesome" "arguably could mislead a

reasonable customer."  *Id.* at 1126.  In *Chacanaca*, the copy on the product packaging that

contained the word "wholesome" (the "Quaker Granola Copy") reads as follows:

> Quaker Chewy Granola Bars with Protein have all the delicious Quaker Chewy
> taste your family loves along with 5 grams of protein to help fuel their busy day.
> **Made with the goodness of whole grain Quaker oats and yummy ingredients
> like peanut butter or chocolate chips, they're a great-tasting, wholesome way
> to help keep your family going**.

Amended Consolidated Complaint at 23, *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111

(N.D. Cal. 2010) (No. C 10-0502 RS) (the "Chacanaca Complaint") (emphasis added).[8]  Based

on the surrounding context, it is clear that in the Quaker Granola Copy, the word "wholesome"

---

[8] A copy of the Chacanaca Complaint is attached to the Affirmation of Daniel Silverman in Support of Defendants'
Motion to Dismiss the Complaint at Exhibit E.  The Court may take judicial notice of the contents of the Chacanaca
Complaint for purposes of evaluating the instant motion.  *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New
York,* 458 F.3d 150, 157 (2d Cir.2006) ("A court may take judicial notice of a document filed in another court not
for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related
filings.") (citation omitted).  The Chacanaca Complaint is not being offered here to prove the truth of its allegations,
but rather simply to provide context necessary to understand the relevance of *Chacanaca* to the instant case.

*describes the product itself*.  This is in marked contrast to the manner in which the word

"wholesome" is utilized in the Fruit Snacks Copy, where it *describes not the product, but rather*

*the "tradition" of the company under whose brand the product is being marketed*.  Thus, while it

was certainly reasonable for the court in *Chacanaca* to find that the use of the word

"wholesome" constituted a potentially-actionable representation, such a finding would be

inappropriate here, where the context surrounding the word "wholesome" in the Fruit Snacks

Copy reveals that no reasonable consumer could understand the word "wholesome" to describe

the Fruit Snacks product.  *See Fink*, 714 F.3d at 742; *Frito-Lay*, 2013 WL 4647512, at \*16;

*Hairston*, 2012 WL 1893818, at \*4.

     **C.  The Phrase "quality that can only be Welch's" is Not Likely to Deceive a**
          **Reasonable Consumer**

     Plaintiffs contend that the inclusion of the phrase "*quality that can only be Welch's*" on

the Fruit Snacks packaging is deceptive because the phrase suggests that Fruit Snacks are

"healthful and nutritious."  Compl. ¶ 34.  However, such generalized statements about the quality

of a service or product have been repeatedly characterized as "meaningless sales patter," *i.e.*,

"empty superlatives on which no reasonable person would rely."  *All-Tech Telecom, Inc. v.*

*Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999).  For instance, in *Leonard v. Abbot Labs., Inc.*,

No. 10-CV-4676 (ADS)(WDW), 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012), this Court held that

"[g]eneral statements about compliance with safety and quality standards are non-actionable

puffery where . . . they fail to identify specific requirements or standards."  *Id.* at \*22.  Likewise,

in *Private Jet Servs. Grp., Inc. v. Sky King, Inc.*, No. CIV. 05-CV-98-JD, 2006 WL 2864057

(D.N.H. Oct. 4, 2006), the court held that "general representations . . . about the high quality of

[defendant's] services and equipment" were not actionable as the basis for consumer protection

claims, because they "are too vague to suggest a particular standard or quality and instead are merely . . . self-laudatory opinions." *Id.* at *5.

Also instructive is *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999), where the plaintiff asserted consumer protection claims based upon the defendant's statement that "nutritionally, you can't buy a better food than Gerber." *Id.* at *8. The *Tylka* court noted that "[a] comparison to a mystery rival is just puffery; it is not falsifiable and therefore is not informative." *Id.* (quoting *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995)) (quotation marks omitted). As the court explained, statements impliedly comparing one company to an industry "fall within the supermarket sales pitch; they address such a large market that they bespeak caution, and should put the reasonable consumer on alert that the comments are meaningless sales patter." *Id.* Here, Plaintiffs identified a phrase— "quality that can only be Welch's"—that impliedly compares the quality of Welch's products to the quality of products produced by its competitors. This "comparison to a mystery rival is just puffery," *Tylka*, 1999 WL 495126, at *8, and not actionable. As Judge Learned Hand wrote nearly a century ago, "[t]here are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity." *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918). The phrase "quality that can only be Welch's" is precisely the "kind[] of talk" of which Judge Hand wrote.

### D. The Phrases "100% Vitamin C," "25% Vitamins A & E," and "no preservatives" Are Not Likely to Deceive a Reasonable Consumer

Plaintiffs contend that the use of the Vitamin Phrases on Fruit Snacks packaging is deceptive because the Vitamin Phrases suggest "that Fruit Snacks are healthful," Compl. ¶ 38, and also cause consumers "to believe that these vitamins are present in the Fruit Snacks due to the Products' fruit content," whereas in fact the vitamins' presence in Fruit Snacks is the result of

-20-

fortification.  Compl. ¶¶ 44-46.  The logic underpinning Plaintiffs' argument is fatally flawed.  A reasonable consumer has no basis to assume based on the Vitamin Phrases that Fruit Snacks is a generally healthful food, or that the vitamins within Fruit Snacks are the result of significant fruit content rather than fortification.

Courts have routinely rejected such unsubstantiated and fallacious reasoning as diametrically inconsistent with the "reasonable consumer" standard that must be met in order to state a claim under either New York or California's consumer protection laws.  For instance, in *Figy v. Frito-Law N.A., Inc.*, 67 F. Supp. 3d 1075 (N.D. Cal. 2014), the plaintiff argued that the words "fat free" on pretzel packaging deceived consumers into thinking that the pretzels were a healthy food.  The Court rejected this contention and dismissed the consumer protection claims based on the "fat free" label, holding that "it is implausible that a reasonable consumer would interpret an objectively true statement like 'FAT FREE' as also communicating that the product . . . is otherwise healthful."  *Id.* at 1091; *see also Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103-04 (N.D. Cal. 2012) (holding that label stating that product was "gluten free" was not likely deceive a reasonable consumer into believing the product is "otherwise healthful"); *Red*, 2012 WL 5504011, at *2-3 (holding that "made with real vegetables label" was not likely to deceive reasonable consumer into believing the product was healthful).

Likewise, in *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), the plaintiff alleged that an advertisement for a supplement stating that it "works with any sensible diet and exercise program" deceived consumers into believing that the supplement was entirely safe to use.[9]  This Court dismissed the plaintiff's consumer protection claim, because the

---

[9] *See* First Amended Class Action Complaint at ¶¶ 65, 102, *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015) (Case No. 2:13-CV-07169-SJF-ARL) (the "Brady Complaint"), attached to the Silverman Affirmation as Exhibit F.  The Court is permitted to consider the content of the Brady Complaint.  *See supra* n.7.

challenged advertising "does not represent that the product is safe and cannot, therefore, amount to a material misrepresentation as a matter of law." *Brady*, 101 F. Supp. 3d at 236-37.

Here, Plaintiffs allege that the Vitamin Phrases deceived them into thinking that Fruit Snacks are healthful and that the vitamins contained in Fruit Snacks are the result of the product's fruit content, rather than fortification.  However, as in *Brady*, Plaintiffs can point to no representations on Fruit Snacks packaging addressing those issues.  The packaging truthfully reports Fruit Snacks' vitamin content.  In the absence of any express representations about healthfulness or the origins of the vitamin content, the Vitamin Phrases "cannot, therefore, amount to a material misrepresentation as a matter of law." *Brady*, 101 F. Supp. 3d at 236-37; *see also Figy*, 67 F. Supp. 3d at 1091.

Since Plaintiffs have failed to allege any actionable misrepresentations or deceptive conduct, the Court should dismiss Plaintiffs' NY and CA Consumer Protection Claims for failure to state a claim.  *See, e.g.*, *Gomez-Jimenez v. New York Law Sch.*, 103 A.D.3d 13, 17 (1st Dep't 2012) (affirming dismissal of NY Consumer Protection Claims because "defendant's disclosures were not materially deceptive or misleading"); *Garcia v. Sony Computer Entm't Am.*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. 2012) (holding that courts should dismiss CA Consumer Protection Claims when plaintiffs "cannot first identify a plausible misrepresentation").

## VI.  PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM FAILS UNDER BOTH NEW YORK AND CALIFORNIA LAW

Under both New York and California law, in order to state a claim for breach of express warranty, a plaintiff must allege, *inter alia*, that (i) there was an affirmation of fact creating an express warranty; and (ii) the affirmation was in fact false, thereby breaching the warranty.  *See* N.Y. U.C.C. Law § 2-313(a) & *DiBartolo v. Abbot Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y.

2012) [New York]; Cal. Comm. Code § 2313; Cal. Civ. Code § 1791.3 & *Weinstat v. Dentsply Int'l*, 180 Cal. App. 4th 1213, 1227 (2010) [California].

As set forth above, Plaintiffs identify four alleged misrepresentations in the Complaint: (i) the Made With Real Fruit Label; (ii) "wholesome"; (iii) "quality that could only be Welch's"; and (iv) the Vitamin Phrases.  None of these can support a breach of express warranty claim.

With respect to both the Made With Real Fruit Label and the Vitamin Phrases, Plaintiffs do not—and cannot—allege that either are false.  Indeed, the illustrations that Plaintiffs provide in the Complaint show that they are fully accurate and factual.  *See* Compl. Illus. 2, 3 & 4 (showing Fruit Snacks contain the Pictured Fruits and vitamins, and are preservative-free).

Regarding the "wholesome" representation, as explained in § IV(B), the word "wholesome" as it is used on Fruit Snacks packaging does not constitute an affirmation regarding Fruit Snacks, and therefore cannot give rise to an express warranty concerning the product.  *See Jones by Jones v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 695 F. Supp. 700, 709 (E.D.N.Y. 1988) ("Under New York law, a plaintiff alleging breach of express warranty must show, *inter alia,* that the seller made an affirmation of fact or promise regarding the product.") (citation and quotation marks omitted); *Bem v. Stryker Corp.*, No. C-15-2485 MMC, 2015 WL 6089819, at *2 (N.D. Cal. Oct. 16, 2015) ("To plead a claim for breach of express warranty [under California law], a plaintiff must allege facts showing how the product does not conform to the seller's affirmation, description, sample, or model.") (citation and quotation marks omitted).

Finally, with respect to the phrase "quality that could only be Welch's," as explained in § IV(C), this phrase is merely "sales patter" that is not sufficiently definitive to create an express warranty.  *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 324 (E.D.N.Y. 2001) (dismissing claim for breach of express warranty under New York law because plaintiff purported to base the

-23-

claim on defendant's "generalized, exaggerated statement of opinion" upon which "a reasonable person would not rely . . . as a statement of [defendant's] obligations");  *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *5 (N.D. Cal. Mar. 11, 2014) (dismissing breach of express warranty claim under California law because it was based upon "[v]ague statements regarding reliability, dependability, and safety [that] are not actionable express warranties").  Since none of the alleged misrepresentations identified in the Complaint can serve as the basis for a breach of express warranty claim, the Court should dismiss that claim.

## VII.   PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIM FAILS UNDER BOTH NEW YORK AND CALIFORNIA LAW

To state a claim for breach of implied warranty under New York or California law, a plaintiff must allege that the product at issue is not fit for its intended purpose.  *Ackerman*, 2010 WL 2925955, at *25 (citing to cases addressing New York and California law on breach of implied warranty).  Thus, where, as here, "the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."  *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) [New York]; *Mexicali Rose v. Superior Court*, 1 Cal. 4th 617, 622 (1992) (implied warranty of fitness as applied to food "merely requires that food be reasonably fit for human consumption") [California].  Since Plaintiffs have not alleged that Fruit Snacks are unfit for human consumption, their breach of implied warranty claim fails as matter of law.

Plaintiffs' breach of implied warranty claim additionally fails as a matter of law due to the absence of vertical privity between Plaintiffs and Defendants.  Both New York and California law require that in order for a plaintiff to assert a claim for breach of implied warranty, the plaintiff must be in vertical privity with the target of the claim.  *See Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012) (citing *Abraham v.*

-24-

*Volkswagen of Am., Inc.,* 795 F.2d 238, 248 (2d Cir.1986) [New York]; *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1333 n.11 (2014) (*quoting Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)) (citations omitted) [California]. Since Plaintiffs here do not allege that they are in vertical privity with Defendants with respect to their Fruit Snacks purchases, their breach of implied warranty claims fail as a matter of law for this reason as well.

## VIII.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS UNDER BOTH NEW YORK AND CALIFORNIA LAW

To state a claim for unjust enrichment under either New York or California law, a plaintiff must allege that restitution is required because the defendant benefitted unjustly at plaintiff's expense. *Stoltz*, 2015 WL 5579872, at *26 [New York] & *28 [California]. Here, Defendants did not benefit unjustly from Plaintiffs' purchase of Fruit Snacks because, as set forth above, *see supra* § IV, Defendants made no misrepresentations in their labeling and marketing of Fruit Snacks. Accordingly, Plaintiffs' unjust enrichment claims fail as a matter of law on this basis. In addition, Plaintiffs' unjust enrichment claims fail to the extent they are asserted under New York law because they are duplicative of the other asserted claims. *See Silva,* 2015 WL 5360022, at *12 (dismissing unjust enrichment claim because it "merely duplicate[d], or replace[d], a conventional contract or tort claim . . .").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) should be granted. Moreover, in light of the fact that the amendment of the Complaint could not cure the pleading defects identified above, Defendants respectfully request that the instant motion be granted without leave to amend.

Dated:  New York, New York        **VENABLE LLP**
       January 8, 2016

                         By:   /s/Daniel S. Silverman
                             Daniel S. Silverman (admitted *pro hac vice*)
                             Kimberly Culp (admitted *pro hac vice*)
                         2409 Century Park East
                         Suite 2100
                         Los Angeles, CA 90067
                         Telephone: (310) 229-9900
                         Facsimile: (310) 229-9901
                         dssilverman@venable.com
                         kculp@venable.com

                             Chaim Z. Kagedan
                         Rockefeller Center
                         1270 Avenue of the Americas
                         24th Floor
                         New York, NY 10020
                         Telephone: (212) 307-5500
                         Facsimile: (212) 307-5598
                         ckagedan@venable.com

                         *Attorneys for Defendants*