**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ALIZA ATIK and WINNIE LAU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELCH FOODS, INC., A COOPERATIVE, and THE PROMOTION IN MOTION COMPANIES, INC.,<br><br>Defendants. | : : : : : : : : : : : : : : : | Case No. 15 CV 5405 (MKB) (VMS)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

LEGAL STANDARD ............................................................................................................4

ARGUMENT .........................................................................................................................4

I.    Plaintiffs have standing to bring the claims alleged ..................................................5

    A.  Plaintiffs have Article III standing to seek injunctive relief. ...................................4

    B.  Plaintiffs have standing to challenge all varieties of Fruit Snacks. ........................8

        1. Defendants' argument regarding products not purchased by Plaintiffs is premature and should be deferred until the class certification stage ..........8

        2.Plaintiffs have standing to sue for "substantially similar" products ...........9

II.   The primary jurisdiction doctrine does not counsel that the Court should defer Plaintiffs' claims ....................................................................................................11

III.  Plaintiffs' claims are not time-barred ....................................................................16

IV.   The Complaint sufficiently alleges representations that are likely to deceive a reasonable consumer under New York and California consumer protection statutes .16

V.    Plaintiffs properly plead their common-law claims..................................................20

    A.  Plaintiffs have alleged actionable misrepresentations that underlie their warranty claims ..................................................................................................................20

    B.  Plaintiffs have sufficiently alleged a cause of action for breach of implied warranty ...............................................................................................................22

    C.  Plaintiffs have sufficiently alleged that Defendants benefitted from their misrepresentations.................................................................................................23

D.  The unjust enrichment claim is not duplicative, and in any event may be pleaded in the alternative.................................................................................................24

CONCLUSION.............................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Aaronson v. Vital Pharmaceuticals, Inc.*, No. 09-CV-1333, 2010
    WL 625337 (S.D. Cal. Feb. 17, 2010) .................................................................... 22

*Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013
    WL 7044866 (E.D.N.Y. July 18, 2013) .......................................................... passim

*Alligood v. Taurus Int'l Mfg., Inc.*, No. CV 306-003, 2009
    WL 8387645 (S.D. Ga. March 4, 2009) .................................................................... 23

*Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358 (E.D.N.Y. 2012) ................................. 24

*Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012) ........................ 9

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196, 2014
    WL 1024182 (N.D. Cal. Mar. 13, 2014) .......................................................... 9, 10

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001). ...................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 4

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910, 2012
    WL 2990766 (N.D. Cal. July 20, 2012) .................................................................. 10

*Beach v. Touradji Capital Mgt. L.P.*, 85 A.D. 3d 674 (N.Y. 1st Dep't. 2011) ............................ 24

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) ..................... 6, 8, 17, 19

*Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013).......................... 14, 15

*Bronson v. Johnson & Johnson, Inc.*, No. C12-04184, 2013
    WL 1629191 (N.D. Cal. Apr. 16, 2013) .................................................................. 22

*Burr v. Sherwin Williams Co.*, 42 Cal.2d 682 (Cal. 1954) ........................................... 22

*Cabral v. Supple, LLC*, No. EDCV 12–00085, 2012
    WL 4343867 (C.D. Cal. Sept. 19, 2012) ................................................................. 5

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010).................... 14

*Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410, 2015
    WL 1454646 (S.D.N.Y. Mar. 31, 2015) .................................................................. 24

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................ 6

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) ...................................... 13

*Colgan v. Leatherman Tool Group, Inc.*, 135
    Cal. App. 4th 663 (Cal. App. 2006) ..................................................................... 17

*Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907, 2012
    WL 6737800 (N.D. Cal. Dec. 28, 2012) ............................................................ 9, 10

*County of Riverside v. McLaughlin,* 500 U.S. 44 (1991) .............................................. 5

*Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399 (9th Cir. 1993) ........................................... 14

*Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014
    WL 4773991(E.D.N.Y. Sept. 24, 2014) ................................................. 5, 8, 17, 19

*DiMuro v. Clinique Labs, LLC*, 572 F. App'x 27  (2d Cir. 2014) ................................ 11

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) .................................. 9

*Elliott v. Qwest Communications Corp.*, 25 A.D.3d 897 (N.Y. 3d Dep't 2006) .......... 16

*Ellis v. Tribune Television Co.*, 443 F.3d 71 (2d Cir. 2006) ...................................... 14

*Ferdous v. Johnson*, No. 15-cv-0122, 2015
    WL 9581815 (E.D.N.Y. Dec. 30, 2015) ............................................................... 2

*Fink v. Time Warner Cable,* 714 F.3d 739 (2d Cir. 2013) ........................................... 4

*Fortyune v. American Multi–Cinema, Inc.,* No. 10 CV 5551, 2002
    WL 32985838 (C.D. Cal. Oct. 22, 2002) ............................................................. 5

*Friedman v. Medtronic, Inc.*, 42 A.D.2d 185 (N.Y. 2d Dep't 1973) ........................... 21

*Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069 (Cal. App. 1998) ........................... 21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................. 12, 13, 18, 20

*Golden Hill Paugusset Tribe of Indians v. Weicker*, 39 F.3d 51 (2d Cir. 1994) ......... 14

*Golden Pac. Bancorp v. FDIC,* 273 F.3d 509 (2d Cir.2001) ...................................... 16

*Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848 (2d Cir. 1988) .................. 13

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ............................................................................ 8

*Henderson v. Gruma Corp.*, No. 10-04173, 2011
    WL 1362188 (C.D. Cal. Apr. 11, 2011) ................................................... 5, 6, 7, 8

*Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271 (E.D.N.Y. 2009) ............................... 21

*Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013) .................................. 16, 18, 20, 24

*In re Checking Account Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015) ............................ 16

*In re Frito-Lay N. Am. Inc. All Natural Litig.*, No. 12-MD-2413, 2013
    WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...................................................... passim

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ..................................... 20

*Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326 (2d Cir. 1997) ...................... 2

*Johnson v. California*, 543 U.S. 499 (2005) ...................................................................... 9

*Johnson v. Cofer,* 204 Or. 142 (1955) ............................................................................. 17

*Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889 (N.D. Cal. 2012) ........................ 14

*Jovel v. i-Health, Inc.*, No. 12-CV-5614, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ............ 10

*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014) ........................ 12

*Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927, 2010
    WL 94265 (N.D. Cal. Jan. 6, 2010) ..................................................... 9, 11

*Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2012
    WL 5458396 (N.D. Cal. June 14, 2012) ....................................................... 5

*Linear Tech. Corp. v. Applied Mats., Inc.*, 152 Cal. App. 4th 115 (Cal. App. 2007) .................. 17

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ........................ 17, 19

*Mosely v. Vitalize Labs, LLC*, No. 13-cv-2470, 2015
    WL 5022635 (E.D.N.Y. Aug. 24, 2015) ....................................................... 9

*Mullins v. Digital Direct, LLC*, 795 F.3d 654 (7th Cir. 2015) ..................................... 16

*National Commc'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220 (2d Cir. 1995) ..................... 14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
6  93 F.3d 145 (2d Cir. 2012)................................................................................................ 9, 10

*New Earthshell Corp. v. Jobookit Holdings Ltd.*, --- Fed. Appx. ---, 2015
WL 9487876 (2d Cir. 2015)........................................................................................... 4

*Opera v. Hyva, Inc.*, 86 A.D.2d 373 (N.Y. 4th Dep't 1982)........................................................ 21

*Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066 (S.D. Cal. 2011) .................................. 17

*Podobedov v. Living Essentials, LLC*, No. CV 11-6408, 2012 WL 2513458 (C.D. Cal. Mar. 22,
2012) ................................................................................................................................. 20

*Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89 (N.Y. 1st Dep't. 2010) ............................. 24

*Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013)................................................... 9

*Reiter v. Cooper*, 507 U.S. 258 (1993) ..................................................................................... 13

*Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012).......................... 5, 6, 7, 8

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) .................................................................. 5, 6

*Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227, 2013
WL 1749590 (S.D.N.Y. Apr. 23, 2013)........................................................................ 24

*Scott v. Metabolife Int'l, Inc.*, 115 Cal.App.4th 404 (C.D. Cal. 2004)......................................... 20

*Segedie v. Hain Celestial Group, Inc.*, No. 14-cv-5029, 2015
WL 2168374 (S.D.N.Y. May 7, 2015) ...................................................................... 17, 18

*Silva v. Smucker Nat. Foods, Inc.*, 14-CV-6154, 2015
WL 5360022 (E.D.N.Y. Sept. 14, 2015) ................................................................... 13, 20

*Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009)........................................ 4

*Statler v. Dell, Inc.*, 775 F. Supp. 2d 474 (E.D.N.Y. 2011) ........................................................ 4

*Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2015
WL 2359098 (S.D.N.Y. May 18, 2015) ...................................................................... 24

*Tsirelman v. Daines*, 794 F.3d 310 (2d Cir. 2015) ..................................................................... 2

*United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987)................................. 14

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981)...................................................... 4

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) .......................................... 23

*Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213
    (Cal. App. 1st Dist. 2010) ......................................................................... 21, 22

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................ 10

*Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724, 2013
    WL 5487236 (N.D. Cal. Oct. 2, 2013) ..................................................... 10

*Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952 (C.D. Cal. 2001) ............................ 4

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ............................... 4, 16, 17, 18, 19

*Windham at Carmel Mtn. Ranch Ass'n v. Superior Ct.*,
    109 Cal. App. 4th 1162 (Cal. App. 2003) ............................................... 22

*Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir. 1990) ......................................................... 4

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................. 17, 19

*Yuzwak v. Dygert*, 143 A.D. 2d 938 (N.Y. 4th Dep't 1988) ......................................... 21

## Statutes

Cal. Bus. & Prof. Code § 17200 .............................................................................. 17

Cal. Civ. Code § 1770 ........................................................................................... 17

Cal. Com. Code § 2313 ......................................................................................... 21

M.G.L.A. 260 § 2 ................................................................................................ 16

Mich. Comp. Laws § 600.5813 ............................................................................... 16

Minn. § 541.05 ................................................................................................... 16

N.J.S.A. § 2A:14-1 .............................................................................................. 16

N.Y. U.C.C. § 2–313(1)(a) .................................................................................... 21

O.R.C. § 2305.07 ................................................................................................ 16

Wis. Stat. § 893.43 ............................................................................................. 16

**Other Authorities**

FDA Guidance for Industry: Questions and Answers on FDA's Fortification Policy ................ 12

**Regulations**

21 C.F.R. 102.5(b) ........................................................................................................... 12

21 C.F.R. 104.20(a) .......................................................................................................... 12

21 C.F.R. 101.13 .............................................................................................................. 19

21 C.F.R. 101.54 .............................................................................................................. 19

**Rules**

Fed. R. Civ. P. 8(a)(3) ...................................................................................................... 24

**INTRODUCTION**

Defendants Welch Foods, Inc. and The Promotion in Motion Companies, Inc. ("Defendants") have engaged in a widespread and uniform marketing campaign to convince consumers that Welch's Fruit Snacks ("Fruit Snacks" or "Snacks") are nutritious and healthful and contain significant amounts of the prominently named and depicted fruits and are nutritious and healthful to consume.

Defendants have capitalized on the trusted "Welch's" brand, which consumers associate with healthful products such as 100% fruit juice, to market an illegally fortified sugary junk food. When consumers see a trusted brand like Welch's, combined with labels that promote colorful images of whole fruits, vitamins, and other health attributes, it's a recipe for deception.

Defendants' marketing and packaging of the Fruit Snacks takes advantage of the increased consumer demand for healthful foods. Parents are especially seeking more nutritious snacks for their families. It is especially troubling these Snacks are aimed at children, who love anything sweet. Defendants make and market products that contain minimal amounts of fruit-like substances, fortify them with artificial vitamins, and then proclaim the resulting candy to be nutritious. In the process, Defendants exploit the dietary recommendation to eat more fruit by deceiving parents into believing they can feed their children healthy foods through fortification. Real fruit needs neither processing nor the addition of artificial vitamins to be healthful. This is the sort of deception we have laws to protect against.

Contrary to Defendants' marketing and packaging, the Fruit Snacks contain only minimal amounts of the prominently depicted fruits, in processed form. The Fruit Snacks are no more healthful than candy. In fact, three of their first four ingredients are added sweeteners: corn syrup, sugar, and modified corn starch.  On average, sugar makes up *40%* of regular Fruit

Snacks, *50%* of Fruit 'n Yogurt Snacks, and *more than 50%* of PB&J Snacks. The Fruit Snacks contain mostly corn syrup, sugar, modified cornstarch, juice from concentrate, and artificial flavors and dyes. Moreover, the fruits that Defendants depict in the marketing and labeling of the Fruit Snacks are often not even the predominant fruits listed on the ingredient labels.

In their motion to dismiss, Defendants argue that no reasonable consumer could possibly be misled into thinking that Welch's Fruit Snacks are healthful or contain significant amounts of the fruits depicted. However, that is exactly what the Fruit Snacks' packages and marketing are designed to convey. Defendants are also wrong to suggest that the Court is not qualified to make such a determination without help from the federal Food and Drug Administration ("FDA"). And Defendants are incorrect to argue that, because Plaintiffs now realize they were tricked, they no longer have standing to sue for injunctive relief. In other words, Defendants suggest that "plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction"—a position that courts have ridiculed as "a wholly unrealistic result." Defendants remaining arguments are similarly unavailing, and their motion to dismiss should be denied.[1]

## STATEMENT OF FACTS

Plaintiffs allege the following facts, which at this stage are assumed to be true[2]: Defendants sell a line of products called "Welch's Fruit Snacks" (Class Action Complaint, Dkt. #1 (Sept. 18, 2015) ("Complaint"), at ¶ 1 & n.2[3]), which they market and package to create the

---

[1] Defendants neglect to argue Article III standing to pursue prospective injunctive relief and Plaintiffs' ability to sue for Fruit Snacks varieties they have not purchased. To the extent Defendants do not make these arguments as to California law, they have waived them.

[2] *See Ferdous v. Johnson*, No. 15-cv-0122, 2015 WL 9581815, at *2 (E.D.N.Y. Dec. 30, 2015) (quoting *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).

[3] The Complaint includes a comprehensive list of Fruit Snacks at issue.

impression that the Fruit Snacks contain significant amounts of certain fruits, and that the Snacks are healthy and nutritious. (*Id.* at ¶ 6, 12, 35.) Consumers rely on Defendants' representations and, on that basis, choose to purchase and pay a premium for the Fruit Snacks. (*Id.* at ¶¶ 14-19, 39.) But contrary to the impression that Defendants intentionally create, the Fruit Snacks are no healthier than candy. (*Id.* at ¶ 4.) Instead, the Fruit Snacks contain mostly corn syrup, sugar, artificial flavors, dyes, and some juice from concentrate. (*Id.*) They also contain ingredients, such as artificial food dyes, that may exacerbate ADHD and that other manufacturers have announced they will no longer use. (*Id.* at ¶ 28.)

Through their marketing, Defendants have deceived consumers into buying the Fruit Snacks, and paying a price premium for them. (*Id.* at ¶ 11.) Plaintiff Aliza Atik, a New York resident, wished to purchase healthy snacks for her family. She relied on Defendants' representations and purchased several varieties of Fruit Snacks. (*Id.* at ¶¶ 14-16.) Plaintiff Winnie Lau, a resident of California, also wished to purchase healthy snacks for her family. She also relied on Defendants' representations and purchased several varieties of Fruit Snacks. (*Id.* at ¶¶ 17-19.)

Plaintiffs seek to represent a nationwide class of Fruit Snacks consumers over the last six years. (*Id.* at ¶¶ 2, 58.) On behalf of the entire class, Plaintiffs bring claims for breach of warranty, breach of express warranty, and unjust enrichment. (*Id.* at ¶¶ 13, 69-85.) On behalf of a subclass of New York purchasers (represented by Ms. Atik), Plaintiffs bring additional claims for violation of New York General Business Law §§ 349, 350 (*Id.* at ¶¶ 13, 86-102.) On behalf of a subclass of California purchasers (represented by Ms. Lau), Plaintiffs bring claims for violation of California's Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law. (*Id.* at ¶¶ 13, 103-135.)

**LEGAL STANDARD**

Under Rule 12(b)(6), dismissal is proper only in "extraordinary" cases.[4] On a motion to dismiss, the court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs."[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."[6] Furthermore, "defendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint."[7] As demonstrated below, Defendants have not met their burden.

**ARGUMENT**

**I.     Plaintiffs have standing to bring the claims alleged.**

Defendants begin by asserting that, regardless of whether Plaintiffs (like other consumers) were fooled by Defendants' misrepresentations, they lack standing to assert a claim, either on behalf of themselves or on behalf of their fellow consumers. But the law does not allow for such wholesale denial of a day in court.

**A.     Plaintiffs have Article III standing to seek injunctive relief.**

According to Defendants, because Plaintiffs are now aware of Defendants' misleading

---

[4] *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *see also Williams v. Gerber*, 552 F.3d 934, 939 (9th Cir. 2008).

[5] *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009); *see also New Earthshell Corp. v. Jobookit Holdings Ltd.*, --- Fed. Appx. ---, 2015 WL 9487876, at *2 (2d Cir. 2015); *Fink v. Time Warner Cable,* 714 F.3d 739, 740–41 (2d Cir. 2013); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 481 (E.D.N.Y. 2011).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990); *see also Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 955 (C.D. Cal. 2001) (same).

and deceptive practices, they lack standing to pursue declaratory and injunctive relief. (Defendants' Memorandum in Support of Motion to Dismiss, Dkt. #__ (Jan. 8, 2016) ("Mem.") at 4-7.) This argument has been rejected time and again by New York and California courts. If a consumer's mere recognition of alleged deception defeated standing, then injunctive relief would *never* be available in false advertising cases—"a wholly absurd" result.[8] By outright rejecting this logically fallacious argument, courts have refused to "eviscerate the intent of the . . . legislature in creating consumer protection statutes."[9]

Defendants claim that Plaintiffs are not at risk of suffering continuing, present adverse effects. (Mem. at 5.) However, Defendants' wrongful conduct *is ongoing*. First, the ongoing conduct means that Plaintiffs simply need to allege that Defendants were engaging in the unlawful practice at the time of the Complaint.[10] Plaintiffs do. (*See* Complaint at ¶ 2.) Second,

---

[8] *Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *see also Cabral v. Supple, LLC*, No. EDCV 12–00085, 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012); *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *7-8 (C.D. Cal. Apr. 11, 2011).

[9] *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (quoting *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012); *Henderson*, 2011 WL 1362188, at *7-8); *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief'.") (internal citations omitted); *Fortyune v. American Multi–Cinema, Inc.,* No. 10 CV 5551, 2002 WL 32985838, at *7 (C.D. Cal. Oct. 22, 2002) ("If this Court rules otherwise [and does not find standing], like defendants would always be able to avoid enforcement of the ADA. This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice.") (quotation omitted)).

[10] *See Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (citing *County of Riverside v. McLaughlin,* 500 U.S. 44, 51 (1991)).

Plaintiffs would resume their purchases if they knew that the Fruit Snacks' marketing and packaging were truthful and not deceptive (Mem. at 5; Complaint at ¶¶ 16, 19). This means that the harm to Plaintiffs also is ongoing: "Should plaintiffs encounter the [deceptive claim] . . . today, they could not rely on that representation with any confidence. This is the harm [that] consumer protection statutes are designed to redress."[11] Because Plaintiffs continue to suffer injury, and there is a "substantial likelihood that [they] will again be subjected to the allegedly unlawful policy in the future," they have standing.[12]

The fact that a few Plaintiffs, out of all reasonable consumers, have realized that Defendants' Fruit Snacks are misleading does not make Defendants' ongoing representations to consumers any more accurate or truthful.[13] Courts in this district have considered exactly the cases to which Defendants cite and have determined that a plaintiff's realization of deception is no bar to Article III standing for injunctive relief.[14]

Similarly, in the California case of *Henderson v. Gruma*, the plaintiffs brought a putative class action alleging they paid for a food product that was labeled with false and misleading

---

[11] *Ries*, 287 F.R.D. at 533-34.

[12] *Robidoux*, 987 F.2d at 938 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

[13] *See Ackerman*, 2013 WL 7044866, at *15 (finding that plaintiffs' allegations that they purchased vitaminwater because the product labels and defendants' marketing led them to believe the beverage was healthier for them than it actually was, or than other beverages would have been, was sufficient to confer standing).

[14] *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 444-45 (E.D.N.Y. 2015) (rejecting argument that plaintiff lacked standing to seek injunctive relief for deceptive labeling because plaintiff could not show injunctive relief would "redress a real and immediate threat of future injury to him" where plaintiff had become aware of the alleged deception and was unlikely to purchase the products again); *see also Ackerman* at *15 ("Plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful.").

6

statements.[15] The defendant argued that the plaintiffs "do not have standing to seek injunctive relief because there is no threat of future injury, as '[the plaintiffs] are now aware of the FDA requirements for label disclosures and the ingredients in [the defendant's] products and allege they will not purchase the products at issue in the future'."[16] The California district court quickly rejected the argument, on the grounds that it would unjustifiably eviscerate any action brought to remedy false advertising:

> If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.[17]

The Northern District of California, in *Ries v. AriZona Beverages*,[18] elaborated on the *Henderson* court's reasoning. The *Ries* plaintiffs sought to represent a class of consumers who had purchased beverages with false and misleading labels.[19] The defendants argued that the plaintiffs were "not threatened by future harm because they are now aware of the contents of [the] beverages, and can no longer be deceived."[20] The court dispatched with this argument "with relative ease":

> This is best understood as an argument directed to redressability. . . . Plaintiffs request to be relieved from false advertising by defendants in the future, and the fact that they discovered the supposed deception some years ago does not render

---

[15] *Henderson*, 2011 WL 1362188, at *1.

[16] *Id.* at *7.

[17] *Id.* (citation omitted).

[18] *Ries*, 287 F.R.D. at 523.

[19] *Id.* at 527.

[20] *Id.* at 533.

the advertising any more truthful. Should plaintiffs encounter the denomination "All Natural" on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence.  This is the harm California's consumer protection statutes are designed to redress.

As plaintiffs further note, were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result.[21]

Courts in New York concur—and regularly cite *Henderson* and *Ries*.[22] Thus, under both New York and California law (which Defendants fail to even address), Plaintiffs have standing to pursue prospective injunctive relief.

### B.    Plaintiffs have standing to challenge all varieties of Fruit Snacks.

Defendants contend that, despite their uniform marketing campaign for the Fruit Snacks and similarities among all Fruit Snacks (Complaint at ¶¶ 2, 34-40), Plaintiffs may represent a class only as to the specific Fruit Snack varieties that Plaintiffs purchased. Defendants are wrong.

#### 1.    Defendants' argument regarding products not purchased by Plaintiffs is premature and should be deferred until the class certification stage.

The Second Circuit[23] has held that the question of whether plaintiffs can pursue claims "arising from putative class members' purchases of products that plaintiffs themselves did not

---

[21] *Id.* (emphasis added; citations omitted).

[22] *E.g.*, *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014); *Ackerman*, 2013 WL 7044866, at *15; *Belfiore*, 94 F. Supp. 3d at 444-45.

[23] The Supreme Court has not resolved whether this issue is one of standing or adequacy of representation (under Fed. R. Civ. P. 23). *See Gratz v. Bollinger*, 539 U.S. 244, 262-63 & n.15 (2003). That is irrelevant. Either way, Defendants' argument fails.

purchase . . . is one of class standing."[24] California's federal courts agree.[25] When "determining what constitutes the same type of relief or the same kind of injury," courts "must be careful not to employ too narrow or technical an approach . . . [and] must reject the temptation to parse too finely, and consider instead the context of the inquiry."[26] In keeping with this, courts that consider whether products are sufficiently similar end up deciding the question is better determined at class certification than at the pleadings stage.[27] That should also be the result here.

### 2.    Plaintiffs have standing to sue for "substantially similar" products.

In both New York and California, a plaintiff has standing to sue for unpurchased products as long as they are "sufficiently" or "substantially" similar to products the plaintiff did buy.[28] Products are sufficiently similar when the challenged products are of the same kind, when there are similar misrepresentations across product lines, and when the injury to consumers is

---

[24] *In re Frito-Lay N. Am. Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *10 (E.D.N.Y. Aug. 29, 2013) (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)); *see also, e.g.*, *Mosely v. Vitalize Labs, LLC*, No. 13-cv-2470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015) ("defendants assert that [plaintiff] does not have standing to bring claims for certain . . . products that [he] admits he never purchased . . . such an argument is premature and should be address at the class certification stage."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2013).

[25] *See, e.g.*, *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005-06 (N.D. Cal. 2012); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012); *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010).

[26] *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).

[27] *In re Frito-Lay*, 2013 WL 4647512, at *10 (citing *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 162); *see also, e.g.*, *Mosely v. Vitalize Labs, LLC*, No. 13-cv-2470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015).

[28] These terms are used interchangeably. Courts in New York tend to use the term "sufficiently," while courts in California use the term "substantially." *See, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196, 2014 WL 1024182, at *5-6 (N.D. Cal. Mar. 13, 2014); *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907, 2012 WL 6737800, at *4-5 (N.D. Cal. Dec. 28, 2012).

similar.[29] Any "differences between the purchased products and the unpurchased products do not matter [when] the legal claim and injury to the consumer is the same," and "the resolution of the asserted claims will be identical between the purchased and unpurchased products."[30]

No matter how "generous" the coating of peanut butter over two varieties of Fruit Snacks (Mem. at 9), the fact remains that resolution of Plaintiffs' claims will be identical across the Fruit Snacks line. As set forth in the Complaint, Defendants *uniformly* use realistic images of whole fruit, prominently highlight the words "real" and "fruit" (e.g., "Made With REAL Fruit"), and use nutrient content claims to make Fruit Snacks seem healthier than they are (e.g., "100% vitamin C"). Plaintiffs further allege that consumers are misled into believing *all* Fruit Snacks contain significant amounts of real fruit, and are healthy and nutritious, as a result of Defendants' deception. The harm to consumers is the same regardless of the flavor of the Fruit Snack, and the sought-after relief would provide a cure for all deceptive Fruit Snacks.

Defendants provide little support for their contention that the Fruit Snacks varieties are not sufficiently similar. Instead, Defendants quibble about the 13 varieties Plaintiffs include in their Complaint (another court has found 59 ice cream varieties to be sufficiently similar[31]),

---

[29] *See, e.g.*, *Ang*, 2014 WL 1024182, at *8 (focusing "on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products"); *Colucci*, 2012 WL 6737800, at *4-5 (finding standing because Chocolate Peanut Butter Bars and the other nineteen varieties of nutrition bars plaintiff identified in the complaint were sufficiently similar (citing *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012))); *see also, e.g.*, *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 162; *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 291 (S.D.N.Y. 2015); *Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724, 2013 WL 5487236, at *12-13 (N.D. Cal. Oct. 2, 2013); *Jovel v. i-Health, Inc.*, No. 12-CV-5614, 2013 WL 5437065, at *10-11 (E.D.N.Y. Sept. 27, 2013).

[30] *Ang*, 2014 WL 1024182, at *8 (citing *Astiana*, 2012 WL 2990766, at *13).

[31] *See Astiana*, 2012 WL 2990766, at *13.

exaggerate minor differences in the Fruit Snacks (another court has found entirely different product lines and types of stain-removing and window-cleaning products to be sufficiently similar[32]), and gloss over the numerous times the Complaint demonstrates that the Fruit Snacks—and Defendants' claims—are sufficiently similar. (Complaint at ¶¶ 4-10, 34-40.) Defendants cite to a single case finding that a defendant's products were not "sufficiently similar." (Mem. at 7-9.) That case, *DiMuro v. Clinique Labs, LLC*, involved disparate products and "35-some advertising statements" that varied by product. For that reason, the *DiMuro* court could not conclude that "claims brought by a purchaser of one product would raise a set of concerns nearly identical to that of a purchaser of another . . . product,"[33] a conclusion hardly applicable here. Plaintiffs may represent a class of Fruit Snack purchasers, notwithstanding Defendants' efforts to tease out minute differences in extremely similar products.

## II.      The primary jurisdiction doctrine does not counsel that the Court should defer Plaintiffs' claims.

This case is about Defendants' "deceptive practices in misrepresenting the fruit content and the nutritional and health qualities of Welch's fruit snacks." (Complaint at ¶¶ 1, 11, 12, 29, 35-57.) Plaintiffs allege that Defendants mislead consumers about the fruit content and healthfulness of the Fruit Snacks by depicting realistic fruit, prominently making "Made With REAL Fruit" claims, and adding synthetic vitamins to make the Snacks seem healthier. (Complaint at ¶¶ 12, 35, 39.) In an effort to invoke the inapplicable primary jurisdiction doctrine, Defendants ignore the actual allegations of the Complaint, ignore numerous cases heard by

---

[32] *See Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010).

[33] *DiMuro v. Clinique Labs, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (internal citations omitted).

courts (not FDA) in similar circumstances, and argue that, Plaintiffs' misrepresentation

allegations notwithstanding, this case is really about FDA label regulations. (Mem. at 10-12.)[34]

Plaintiffs have properly pleaded the Complaint. Thus, *Plaintiffs* have the right to decide which

claims they actually are bringing. Defendants' contortions cannot alter the nature of the case,

however much they would like the Court to believe it lacks the "expertise" to hear a consumer

deception case.

　　　　FDA regulation of food labeling does *not* inevitably implicate the doctrine of primary

jurisdiction—as case after case in the context of mislabeling demonstrates.[35] True, FDA

regulations require disclosure of the percentage of characterizing ingredients[36] and prohibit

fortification of sugary snack foods.[37] True, Defendants fail to meet those regulations.[38] This

---

[34] Likewise, Defendants may not invent claims as they do when asserting "Plaintiffs contend that these terms ['wholesome' and the phrase 'quality that can only be Welch's'] should be governed by the same rules and regulations that the FDA has imposed regarding the use of the word 'healthy' on food packaging." (Mem. at 11-12.) At no point do Plaintiffs make this assertion, and—by neglecting to provide any citation—Defendants fail to show how they arrived at this fiction. Plaintiffs will not address this argument further.

[35] *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *4 (finding plaintiffs' New York state law claims, including that vitaminwater's labeling is misleading in that it uses a product name that includes two of the product's ingredients (vitamins and water) but fails to mention one other notable ingredient (sugar), are not preempted by the FDCA, because they seek to impose requirements on the defendants that are identical to those imposed by the FDCA); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 476-77 (S.D.N.Y. 2014); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 284 (S.D.N.Y. 2014); *In re Frito-Lay*, 2013 WL 4647512, at *9.

[36] 21 C.F.R. 102.5(b).

[37] 21 C.F.R. 104.20(a).

[38] *See* FDA Guidance for Industry: Questions and Answers on FDA's Fortification Policy, *available at* http://www.fda.gov/Food/GuidanceRegulation/Guidance DocumentsRegulatoryInformation/ucm470756.htm ("random fortification of foods could . . . result in *deceptive or misleading claims on certain foods*") (emphasis added); 45 Fed. Reg. 6314, 6315 (Jan. 25, 1980) ("FDA also believes it is inappropriate to fortify snack foods . . . . Their fortification could readily mislead consumers to believe that substitution with fortified snack

shows that FDA would *also* consider Defendants' practices misleading and deceptive. But it does not determine whether Defendants' label misrepresentations violate state consumer protection laws.

The primary jurisdiction doctrine, which is "relatively narrow in scope,"[39] "applies where a claim is originally cognizable in the courts"[40] but "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."[41] It does not apply when "the issue at stake is legal in nature and lies within the traditional realm of judicial competence."[42] The doctrine is discretionary,[43] "to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," and "if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."[44] This is not the case here, not by a long shot.

The Second Circuit considers four factors when determining whether to apply the primary jurisdiction doctrine: (1) whether the question at issue is within the conventional

---

foods would ensure a nutritionally sound diet.").

[39] *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *8 (E.D.N.Y. Sept. 14, 2015) (quoting *Goya Foods, Inc. v. Tropicana Prods.*, *Inc.*, 846 F.2d 848, 851 (2d Cir. 1988)); *see also In re Frito-Lay*, 2013 WL 4647512, at *7.

[40] *Ackerman*, 2010 WL 2925955, at *14.

[41] *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008); *see also Goldemberg*, 8 F. Supp. 3d at 477-78.

[42] *In re Frito-Lay*, 2013 WL 4647512, at *8 (quoting *Goya Foods*, 846 F.2d at 851).

[43] *Silva*, 2015 WL 5360022, at *8 ("since this doctrine is a prudential, rather than jurisdictional limitation, it is within my discretion to retain or relinquish jurisdiction") (citing *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993)).

[44] *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (citations omitted).

13

expertise of judges or involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.[45]

Defendants acknowledge that "determining whether a particular representation made by Defendants is false or misleading . . . is well within the purview of this Court." (Mem. at 10.) This case does *not* involve FDA's technical expertise—this case is "far less about science than it is about whether a label is misleading."[46] Thus, as courts have repeatedly held, the "question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine."[47]

Even on top of thorough case law holding that a federal court is more than able to adjudicate claims of label misrepresentations, Defendants cannot possibly contend that deferral to FDA would result in a timely resolution: The FDCA does not provide a private right of action,

---

[45] *Ackerman*, 2010 WL 2925955, at *14 (citing *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006); *National Commc'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 222 (2d Cir. 1995)). Similarly, the Ninth Circuit has recognized that four factors are "uniformly present" when primary jurisdiction exists: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. *See Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993); *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).

[46] *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013); *see also Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010).

[47] *Ackerman*, 2010 WL 2925955, at *14  (citing *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009)).

and there is no reason to believe that Plaintiffs could obtain a determination from FDA concerning the merits of their claims.[48]

Moreover, the very fact upon which Defendants rely—that FDA has established requirements applicable to mislabeling that Plaintiffs assert—counsels *against* application of the primary jurisdiction doctrine.[49] In a similar case involving misleading marketing and packaging of food products, the court, rejecting a primary-jurisdiction stay, gave "substantial weight to the FDA's determination that fortification of a food in a manner that is not consistent with FDA's fortification policy may be misleading." Defendants cite this very case—a case where the court determined that FDA regulations may indeed allow courts to prohibit the use of "Vitamin Phrases"[50]—to argue the opposite of its holding, i.e., that only FDA should handle such decisions. (Mem. at 11.)

This case is about whether Defendants' marketing and packaging is misleading to consumers, an issue "well within the purview of this Court." (Mem. at 10.) The primary jurisdiction doctrine, therefore, is inapplicable.

---

[48] *See Golden Hill Paugusset Tribe of Indians v. Weicker*, 39 F.3d 51, 60 (2d Cir. 1994) (finding deference to primary jurisdiction of Department of the Interior warranted where agency had created structured administrative process to acknowledge "nonrecognized" Indian tribes using uniform criteria, and had experience and expertise in applying those standards); *Brazil*, 935 F. Supp. 2d at 960 (declining to apply primary jurisdiction doctrine where plaintiff's deceptive food labeling claims did not "require[ ] resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency" and could be resolved entirely based on what FDA regulations already required).

[49] *See Brazil*, 935 F. Supp. 2d at 960 (finding that because there was no challenged label element *not* addressed by FDA regulation or policy, there was no risk of undercutting FDA's judgment and authority by making independent determinations on issues upon which there were no FDA rules or regulations).

[50] *See Ackerman*, 2010 WL 2925955, at *14.

15

**III.     Plaintiffs' claims are not time-barred.**

Plaintiffs define the Class Period as "six years prior to the date of this filing to the present" (Complaint at ¶ 2), because that is the longest statute of limitations associated with any claim of the nationwide class.[51] Ignoring the six-year statutes of limitations, and without specificity as to which of the nine causes of action they are implicating, Defendants demand that the Court "dismiss Plaintiffs' claims to the extent that they purport to extend past their respective statutes of limitations." (Mem. at 12.) *Dismissal* of unspecified claims makes no sense; the nationwide class definition, and each subclass definition, can be easily tailored to include only those consumers who purchased Fruit Snacks within the limitations period applicable to any claim decided in Plaintiffs' favor.[52] That is not an issue that needs to be handled by a 12(b)(6) motion.[53]

**IV.     The Complaint sufficiently alleges representations that are likely to deceive a reasonable consumer under New York and California consumer protection statutes.**

California and New York consumer protection laws prohibit "not only advertising which

---

[51] *E.g.*, *Golden Pac. Bancorp v. FDIC,* 273 F.3d 509, 519 (2d Cir.2001) (limitations on New York claim for unjust enrichment seeking restitution is six years and begins to accrue on occurrence of the wrongful act); *Elliott v. Qwest Communications Corp.*, 25 A.D.3d 897, 898 (N.Y. 3d Dep't 2006) (same); *see also, e.g.*, M.G.L.A. 260 § 2 (Massachusetts warranty); Mich. Comp. Laws § 600.5813 (Michigan common law); Minn. § 541.05 (Minnesota unjust enrichment); N.J.S.A. § 2A:14-1 (New Jersey unjust enrichment); O.R.C. § 2305.07 (Ohio unjust enrichment); Wis. Stat. § 893.43 (Wisconsin unjust enrichment).

[52] *See, e.g.*, *Mullins v. Digital Direct, LLC*, 795 F.3d 654, 661 (7th Cir. 2015) (affirming Rule 23(b)(3) certification of class of consumers who "purchased Instaflex within the applicable statute of limitations of the respective Class States for personal use until the date notice is disseminated"); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 666 (S.D. Fla. 2015) ("[C]ourts commonly certify classes with start dates linked to the statute of limitations where, as here, the challenged conduct predates the relevant limitations periods." (collecting cases)).

[53] If the Court prefers, Plaintiffs will amend their Complaint to set the Class Period at "within the applicable limitations period" instead of six years.

is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."[54] "[C]onduct is deceptive or misleading if it is likely to deceive an ordinary consumer,"[55] or a "consumer acting reasonably under the circumstances" who "is not versed in the art of inspecting and judging a product."[56] This is an objective standard,[57] made by examining "the deceptive context of the packaging as a whole."[58] Whether a business practice is deceptive is usually a question of *fact*, and thus it is a "rare situation in which granting a motion to dismiss is appropriate."[59]

    A reasonable consumer—upon seeing labels and marketing materials (1) dominated by images of whole fruit (2) alongside "Made With REAL Fruit" graphics (3) with the word

---

[54] *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal citations omitted); *see also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 466 (E.D.N.Y. 2013); *Ackerman*, 2010 WL 2925955, at *18.

[55] *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1070 (S.D. Cal. 2011); *see also* Cal. Bus. & Prof. Code § 17200; *id.* § 17500; Cal. Civ. Code § 1770; *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014); *Ackerman*, 2010 WL 2925955, at *15-17.

[56] *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (Cal. App. 2006); *see also Johnson v. Cofer*, 204 Or. 142, 151 (1955) (contract rescission: "[I]t is better to encourage negligence in the foolish than fraud in the deceitful.").

[57] *See Delgado*, 2014 WL 4773991, at *8; *Ackerman*, 2010 WL 2925955, at *15-17.

[58] *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1128-29 (C.D. Cal. 2010); *see also Williams*, 552 F.3d at 939; *Belfiore v. Procter & Gamble Co.*, No. 14-cv-1142, 2015 WL 5781541, at *18 (E.D.N.Y. Oct. 5, 2015); *Delgado*, 2014 WL 4773991, at *8; *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012); *Ackerman*, 2010 WL 2925955, at *15-17.

[59] *Williams*, 552 F.3d at 938-39; *see also In re Frito-Lay*, 2013 WL 4647512, at *13 ("[W]hat a reasonable consumer would believe raises a factual dispute that cannot properly be resolved on a motion to dismiss."); *see also, e.g.*, *Segedie v. Hain Celestial Group, Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *10 (S.D.N.Y. May 7, 2015); *Linear Tech. Corp. v. Applied Mats., Inc.*, 152 Cal. App. 4th 115, 134 (Cal. App. 2007).

"FRUIT" prominently displayed (4) paired with claims that the product will provide significant amounts of nutrients—would be misled into thinking Fruit Snacks contained significant amounts of real fruit. (*E.g.*, Complaint at ¶¶ 13, 16, 20.) This sums up Defendants' widespread and uniform marketing campaign emphasizing the healthfulness and fruit content of the Fruit Snacks. (Complaint at ¶¶ 1, 11, 12, 29, 35–57.) Rather than discuss those label misrepresentations at the heart of Plaintiffs' Complaint, Defendants launch a piecemeal attack on four examples Plaintiffs cited from Defendants' marketing campaign (including a marketing phrase that Plaintiffs only mention once in their entire Complaint[60]). The result is that Defendants utterly fail to address the fact inquiry of whether the packaging and marketing of Fruit Snacks is likely to mislead reasonable consumers.[61]

 *Williams v. Gerber*,[62] a Ninth Circuit case regularly cited by courts in this circuit,[63] is directly on point. In *Williams*, the Ninth Circuit found that Gerber's fruit snacks packaging could deceive a reasonable consumer because it "picture[d] a number of different fruits, potentially

---

[60] The phrase "quality that can only be Welch's" appears only in paragraph 34 of Plaintiffs' Complaint ("Defendants market the Fruit Snacks as healthful and nutritious, claiming the Fruit Snacks are 'wholesome,' and are of a 'quality that can only be Welch's."). Defendants inexplicably devote two pages and a separate section to an argument surrounding this phrase. (Mem. at 19-20.)

[61] With prominent fruit plastered all over Defendants' packaging and marketing of its Fruit Snacks, it is hard to imagine that Defendants *could* credibly argue that no reasonable consumer could be misled into thinking that the Fruit Snacks were healthy and contained significant amounts of the fruits depicted.

[62] 552 F.3d 934 (9th Cir. 2008).

[63] *E.g.*, *Segedie*, 2015 WL 2168374, at *10; *Goldemberg*, 8 F. Supp. 3d at 479; *In re Frito-Lay*, 2013 WL 4647512, at *15; *Hughes*, 930 F. Supp. 2d at 464; *Ackerman*, 2010 WL 2925955, at *16-17.

suggesting . . . that those fruits or their juices [were] contained in the product."[64] The court relied on a number of features of Gerber's packaging to find that the label could deceive a reasonable consumer. The court cited the product's name, the pictures on the label of a number of different fruits, and other statements on the label about the nutritional value of the snacks.[65] Each of these factors added to the potential deception.[66]

Defendants, by contrast, isolate four cherry-picked examples of marketing and packaging in order to argue that reasonable consumers are not misled. This approach ignores the mandate to examine "the deceptive context of the packaging as a whole."[67] But even if the Court were to follow Defendants' novel approach of looking at a single statement and ignoring the rest of the packaging, courts that have specifically examined "Made With REAL Fruit" claims have found them likely to mislead reasonable consumers.[68] Other courts have found that statements that could arguably constitute puffery on their own (e.g., "nutritious") nonetheless "certainly contribute[] . . . to the deceptive context of the packaging as a whole" and have declined to dismiss them as puffery.[69] In New York, whether advertising is misleading or mere puffery is a question to be determined by the trier of fact.[70] And finally, the "Vitamin Phrases" employed by

---

[64] *Williams*, 552 F.3d at 939.

[65] *See id.* at 939.

[66] *See id.*

[67] *Yumul*, 733 F. Supp. 2d at 1128-29; *see also Williams*, 552 F.3d at 939; *Belfiore*, 2015 WL 5781541, at *18; *Delgado*, 2014 WL 4773991, at *8; *Miller*, 912 F. Supp. 2d at 874; *Ackerman*, 2010 WL 2925955, at *15-17.

[68] *E.g.*, *Williams* at 939.

[69] *Id.*

[70] *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *15-17.

Defendants (FDA calls these "nutrient content claims"[71]) are the result of illegal fortification, which FDA itself has acknowledged to be misleading to consumers.[72]

Plaintiffs have alleged more than enough facts to show that reasonable consumers are likely to be misled. Further examination of whether Defendants' practices mislead reasonable consumers is a question of fact that requires consideration and weighing of evidence from both sides, which is inappropriate at this stage.

## V.   Plaintiffs properly plead their common-law claims.

Finally, Defendants assemble a collection of reasons why, they contend, the Court should dismiss Plaintiffs' common-law causes of action. Defendants' arguments fall short.

### A.   Plaintiffs have alleged actionable misrepresentations that underlie their warranty claims.[73]

Defendants argue that Plaintiffs have failed to allege any affirmation of fact that is false and therefore cannot assert an express warranty claim under New York or California law. (Mem. at 22-24.) First, Defendants' view is too narrow. "To state a claim for breach of express warranty, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the

---

[71] *See* 21 C.F.R. 101.54; 21 C.F.R. 101.13

[72] *See supra*, note 38; *see also Ackerman*, 2010 WL 2925955, at *15-17.

[73] Defendants also assert this argument as to unjust enrichment, which does not require extensive discussion. As set forth *supra*, Part IV, Plaintiffs have pleaded actionable misrepresentations. "To state a claim for unjust enrichment under New York law, a plaintiff must plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution." *Silva v. Smucker Nat. Foods, Inc.*, 14-CV-6154, 2015 WL 5360022, at *12 (E.D.N.Y. Sept. 14, 2015) (citing *Hughes*, 930 F. Supp. 2d at 471). Given the package mislabeling, it is not clear how Defendants believe these elements have not been pleaded.

immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."[74]

"An express warranty is an 'affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain'."[75] "Whether representations made by a seller are warranties and, therefore, a part of the bargain, or merely expressions of the seller's opinion, or mere 'puffing,' is almost always a *question of fact for a jury's resolution*."[76]

Plaintiffs allege, for example, that Welch's Berries-'N-Cherries Fruit Snacks are packed in pictures of berries and cherries, with a special blueberry-raspberry-strawberry "Made With REAL Fruit" seal. (Complaint at ¶ 36 & Illus. 3.) These are material affirmations and promises about the content of "real fruit" berries and cherries that a consumer should expect to find in the product. Further investigation—beyond that expected of a reasonable consumer—however, reveals that no unqualifiedly "real" fruit is in the Fruit Snacks. There are some (presumably less expensive) non-berry, non-cherry juices (apple, grape, pear, peach, pineapple) from concentrate. No form of berry or cherry makes any appearance until after the ingredients corn syrup, sugar,

---

[74] *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015) (citing *Goldemberg*, 8 F. Supp. 3d at 482); *Podobedov v. Living Essentials, LLC*, No. CV 11-6408, 2012 WL 2513458, at *4 (C.D. Cal. Mar. 22, 2012) ("Under California law, the elements of a breach of warranty cause of action are: (1) a sale of goods from defendant to plaintiff; (2) defendant expressly or impliedly warranted the goods sold; (3) breach of the warranty; (4) breach of the warranty caused plaintiff to suffer injury; and (5) plaintiff gave defendant timely notice of the breach of warranty.") (citing *Scott v. Metabolife Int'l, Inc.*, 115 Cal.App.4th 404, 415–16 (C.D. Cal. 2004)).

[75] *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009) (quoting N.Y. U.C.C. § 2–313(1)(a); *Friedman v. Medtronic, Inc.*, 42 A.D.2d 185, 190 (N.Y. 2d Dep't 1973)); *Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1227 (Cal. App. 1st Dist. 2010) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." (quoting Cal. Com. Code § 2313)).

[76] *Yuzwak v. Dygert*, 143 A.D. 2d 938, 939 (N.Y. 4th Dep't 1988) (citing *Opera v. Hyva, Inc.*, 86 A.D.2d 373, 379 (N.Y. 4th Dep't 1982)) (emphasis added); *see also Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1081 (Cal. App. 1998) ("Whether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury.").

and modified corn starch, and then only in a processed "puree" form. Tellingly, *even in their letter request to file the instant motion*, Defendants' counsel felt the need to put quotation marks around, and then qualify with a parenthetical, "real fruit."[77] No such quotes or parenthetical appears on the Fruit Snacks marketing or packaging for consumers.

It strains credulity that a jury could not find material affirmations in this context.

**B.    Plaintiffs have sufficiently alleged a cause of action for breach of implied warranty.**

Plaintiffs allege, "As the manufacturers, marketers, distributors, or sellers of the Fruit Snacks, Defendants impliedly warrant that the Fruit Snacks are merchantable and fit for their intended purpose and conform to the promises or affirmations of fact made." (Complaint at ¶ 76.) Defendants, focusing not on the failure to conform to promises, but only on the fitness for intended purpose, argue that the claim for breach of implied warranty should be dismissed because Plaintiffs fail to allege that Fruit Snacks are not "reasonably fit for human consumption." Defendants' view is again too narrow: "Where plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims."[78]

Defendants also argue that the implied warranty claims, which are asserted on behalf of a nationwide class, must be dismissed because Plaintiffs lack vertical privity with Defendants. (Mem. at 24-25.) The cases that Defendants cite are not in the food context, and their view again is too narrow: California "has a general rule that actions for breach of implied warranty require

---

[77] Defendants' Nov. 30, 2015 Pre-Motion Letter, Dkt. #11, at 3 ("'real fruit' (in the form of fruit purees and juices) is a significant component of Fruit Snacks").

[78] *Bronson v. Johnson & Johnson, Inc.*, No. C12-04184, 2013 WL 1629191, at *12 (N.D. Cal. Apr. 16, 2013).

privity of contract . . . . However, in transactions involving the sale of foods, drugs, and pesticides, there is a recognized exception which allows an implied warranty to run from the manufacturer to the ultimate consumer."[79] Several jurisdictions recognize such exceptions to privity requirements to assert implied warranty claims, and numerous other jurisdictions do not require privity at all.[80] Dismissal of the implied warranty claim for lack of privity, therefore, is inappropriate.

### C.   Plaintiffs have sufficiently alleged that Defendants benefitted from their misrepresentations.

This argument is particularly weak. Defendants contend that they "did not benefit unjustly from Plaintiffs' purchase of Fruit Snacks because, as set forth above . . . Defendants made no misrepresentations." (Mem. at 25.) Without a doubt, Plaintiffs have alleged that Defendants made misrepresentations and were "unjustly enriched in retaining the revenues derived from Plaintiffs' and Class and Subclass members' purchases of the Fruit Snacks." (Complaint at ¶ 83; *see also id.* ¶¶ 49, 82-85.)[81] As set forth *supra*, Part IV, whether Defendants made misrepresentations is for the jury to determine. Accordingly, that fact argument cannot support a motion on the pleadings.

---

[79] *Aaronson v. Vital Pharmaceuticals, Inc.*, No. 09-CV-1333, 2010 WL 625337, at *5 (S.D. Cal. Feb. 17, 2010) (citing *Windham at Carmel Mtn. Ranch Ass'n v. Superior Ct.*, 109 Cal. App. 4th 1162, 1169 (Cal. App. 2003); *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695 (Cal. 1954)); *see also Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015).

[80] *See, e.g., Alligood v. Taurus Int'l Mfg., Inc.*, No. CV 306-003, 2009 WL 8387645, at *10 (S.D. Ga. March 4, 2009) (noting that 39 jurisdictions do not require privity, and that at least three more recognize exceptions).

[81] *See, e.g., Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010) ("Under New York law, it is 'contrary to equity and good conscience' to enable a party to benefit from misleading representations.").

**D.**     **The unjust enrichment claim is not duplicative, and in any event may be pleaded in the alternative.**

Defendants argue that the unjust enrichment claims "fail to the extent they are asserted under New York law because they are duplicative of the other asserted claims." (Mem. at 25.) Defendants provide no insight as to *which* claim(s) unjust enrichment duplicates, and their vague argument cannot succeed on that basis alone. Indeed, Defendants appear to contradict themselves. They previously argued that an implied warranty claim under New York law requires vertical privity. (Mem. at 24-25.) An unjust enrichment claim, decidedly, does *not*,[82] and therefore cannot be considered "duplicative." In any event, settled law allows unjust enrichment to be pleaded in the alternative[83] where, as here, entry into the contract may have been induced through misrepresentation,[84] or where the complained-of conduct may fall outside the contract.[85]

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that Defendants' motion be denied. In the alternative, Plaintiffs request leave to amend the Complaint pursuant to Federal

---

[82] *See, e.g.*, *Hughes*, 930 F. Supp. 2d at 471 ("Under New York law, unjust enrichment does not require a direct relationship between the parties.").

[83] *Cf. Beach v. Touradji Capital Mgt. L.P.*, 85 A.D. 3d 674 (N.Y. 1st Dep't. 2011) ("Plaintiffs should have been permitted to plead both contract and quasi-contract claims in the alternative. The court erred in dismissing plaintiff's unjust enrichment claim . . . .") (internal citations omitted); Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief.").

[84] *See, e.g.*, *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2015 WL 2359098, at *7 (S.D.N.Y. May 18, 2015) (citing *Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410, 2015 WL 1454646, at *18 (S.D.N.Y. Mar. 31, 2015); *Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227, 2013 WL 1749590, at *5 (S.D.N.Y. Apr. 23, 2013); *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100 (N.Y. 1st Dep't. 2010)).

[85] *See, e.g.*, *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012) (allowing unjust enrichment claims because they were "predicated on conduct not covered by the contract" and "stem[med] from defendants' misrepresentations").

Rule of Civil Procedure 15.

Dated: February 5, 2016                Respectfully submitted,

                                       **THE RICHMAN LAW GROUP**

                                       _____\s\ Kim E. Richman_____
                                       Kim E. Richman
                                       *krichman@richmanlawgroup.com*
                                       81 Prospect Street
                                       Brooklyn, NY 11201
                                       (212) 687-8291 (t)
                                       (212) 687-8292 (f)

                                       **STANLEY LAW GROUP**
                                       Stephen Gardner
                                       Amanda Howell
                                       *steve@consumerhelper.com*
                                       *ahowell@stanleylawgroup.com*
                                       6116 N. Central Expressway
                                       Suite 1500
                                       Dallas, TX 75206
                                       (214) 443-4300 (t)
                                       (214) 443-0358 (f)

                                       *Attorneys for Plaintiffs and the Proposed Class*