UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

ALIZA ATIK and WINNIE LAU, on behalf of                  :
themselves and others similarly situated,                :
                                                         :
                    Plaintiffs,                          :        **REPORT AND RECOMMENDATIONS**
                                                         :
        -against-                                        :        15 Civ. 5405 (MKB) (VMS)
                                                         :
WELCH FOODS, INC., A COOPERATIVE, and                    :
THE PROMOTION IN MOTION COMPANIES,                       :
INC.,                                                    :
                                                         :
                    Defendants.                          :

--------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Aliza Atik and Winnie Lau (the "Plaintiffs") bring this action against

Defendants Welch Foods and The Promotion in Motion Companies (the "Defendants"), alleging

violations of New York's General Business Law ("GBL") §§ 349, 350 et seq.; California's

Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and California's False

Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; as well as breach of express

and implied warranties and unjust enrichment under New York and California law.[1]  Presently

before the Court, on referral from the Honorable Margo K. Brodie, is Defendants' motion to

dismiss.  For the reasons stated herein, this Court respectfully recommends that the District Court

---

[1] This Court has original subject-matter jurisdiction over this proposed class action pursuant to
the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28
U.S.C. § 1332(d), which provides for the original jurisdiction of the federal courts in any class
action in which at least 100 members are in the proposed plaintiff class, any member of the
plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and
the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Ms.
Atik resides in New York, while Ms. Lau resides in California.  Compl. ECF No. 1 ¶¶ 14 & 18.

grant Defendants' motions to dismiss as to Plaintiff's claims for breach of implied warranty, for unjust enrichment and for injunctive relief, and all of their claims to the degree that they fall outside the relevant statutes of limitation, as described below in more detail.  Infra § II.  This Court respectfully recommends that the District Court deny Defendants' motion to dismiss in all other respects.

## I.      Background[2]

Defendants are manufacturers of pre-packaged gummy Fruit Snacks.  Plaintiffs are consumers who value both healthy, fruit-based snacks and minimizing their sugar intake. Compl. ECF No. 1 ¶ 26.  Plaintiffs claim that Defendants deceptively represent that their Welch's Fruit Snacks ("Fruit Snacks") products are made with substantial fruit content and are healthy when they are not, in order to induce Plaintiffs and other consumers like them into purchasing them for a premium.[3]  Id. ¶ 1.  Plaintiffs note that the packaging for Fruit Snacks emphasizes that the Fruit Snacks contain real fruit, are fat free, and provide a portion of the daily recommended amounts of Vitamins A, C and E.  Id. ¶ 3.  The packaging also includes images of fresh fruit and describes the Fruit Snacks as "wholesome."  Id. ¶ 37.

---

[2] These facts and allegations are drawn from the Complaint, and they are accepted as true solely for the purpose of this motion.  See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc., 712 F.3d 705, 717 (2d Cir. 2013) ("for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true").

[3] Plaintiffs complain about Welch's Mixed Fruit Fruit Snacks, Island Fruits Fruit Snacks, Reduced Sugar Mixed Fruit Fruit Snacks, Berries 'n Cherries Fruit Snacks, Concord Grape Fruit Snacks, White Grape Raspberry Fruit Snacks, Strawberry Fruit Snacks, Tangy Fruits Fruit Snacks, Fruit Punch Fruit Snacks, White Grape Peach Fruit Snacks, Apple Orchard Medley Fruit Snacks, Strawberry Fruit 'n Yogurt Snacks, Blueberry Fruit 'n Yogurt Snacks, Strawberry Creamy PB&J Fruit Snacks, Strawberry Crunchy PB&J Fruit Snacks, Grape Creamy PB&J Fruit Snacks and Grape Crunchy PB&J Fruit Snacks.

2

Below are two images of Fruit Snacks packaging that were included in the

Complaint:





As seen on the label above, the Fruit Snacks packaging itself states:

> The Welch's® name has been built on the highest quality fruit proudly grown on family farms.  In this tradition of wholesome goodness come Welch's® Fruit Snacks, made with real fruit and fruit juices.  Welch's® Fruit Snacks are sure to delight your family.  Please try all of our delicious Welch's® Fruit Snacks varieties, and thank you for the trust you place in Welch's®.

Defendants' website states that Fruit Snacks are "wholesome" and are of a "quality that can only be Welch's."  Id. ¶ 35.

Because of these representations, Plaintiffs purchased Fruit Snacks with the belief that the snacks contained significant amounts of the fruits depicted and were healthful.  Id. ¶¶ 14 & 17.

Plaintiffs allege that contrary to these representations, the Fruit Snacks are "no more healthy than candy" and generally less healthy than the fruit depicted on the packaging.  Id. ¶ 4. The Complaint states that Fruit Snacks are made up of 33-50% sugar, that fruit is not a predominant ingredient relative to unhealthy ingredients such as corn syrup, and that a "large part" of the product's fruit content comes from apple and grape juices that are "similar to empty-calorie sugar syrup."  Id. ¶¶ 4, 42-43.

## II.    ANALYSIS

### A.    Legal Standards On A Motion To Dismiss

Rule 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1959, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The pleading standard of Rule 8 does not

require "detailed factual allegations, but demands "more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan, 712 F.3d at 717.

Prior to filing a responsive pleading, a defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) (quoting Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)). The court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the] plaintiff's favor." In re Thelen LLP, 736 F.3d 213, 218 (2d Cir. 2013). Nonetheless, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)); see Quitoriano v. Raff & Becker, LLP, 675 F. Supp. 2d 444, 448-49 (S.D.N.Y. 2009) ("At the outset of deciding a motion to dismiss, the court may identify unsupported legal conclusions contained in the pleadings that are not entitled to an assumption of truth.").

Defendants move to dismiss Plaintiffs' claims, arguing that (1) Plaintiffs lack Article III standing to seek injunctive relief, Defs.' Mem., ECF No. 19 at 4; (2) Plaintiffs lack standing to assert claims regarding fruit-snack varieties that they have not purchased, id. at 7; (3) the Complaint should be stayed pursuant to the primary jurisdiction doctrine, id. at 9; (4) Plaintiffs' claims should be dismissed to the extent they seek to include purchases made earlier than the

applicable statute of limitations, id. at 12; (5) Plaintiffs' New York and California statutory claims should be dismissed because Plaintiffs fail to allege any representations that would deceive the average consumer, id. at 13; (6) Plaintiffs' breach-of-express-warranty claim fails under both New York and California law, id. at 22; (7) Plaintiffs' breach-of-implied-warranty claim fails under both New York and California law, id. at 24; (8) Plaintiffs' unjust enrichment claim fails under both New York and California law, id. at 25.  Each argument is addressed below.

### B.    Plaintiffs Lack Article III Standing To Pursue Injunctive Relief

Plaintiffs seek injunctive relief in addition to money damages under the CLRA, UCL and FAL.  See Compl., ECF No. 1 ¶¶ 92, 102, 110, 122, 129, 135.  Because they have not alleged any likelihood of continuing or future harm, Plaintiffs lack standing to seek this form of equitable relief.

"[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of future or continuing harm."  City of Los Angeles v. Lyons, 103 S. Ct. 1660, 1670, 461 U.S. 95, 111 (1983); Shain v. Ellison, 356 F.3d 211, 215 (2d. Cir. 2004) (a plaintiff seeking injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future.").  Plaintiffs have not done so here.  That Plaintiffs have been injured by their prior purchases of the Fruit Snacks is insufficient to support a claim for injunctive relief, as "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  O'Shea v. Littleton, 94 S. Ct. 669, 676, 414 U.S. 488, 495-96, (1974).  Where "[p]laintiffs are now aware of the alleged misrepresentations that they challenge . . . there is no danger that they will again be deceived by them."  Elkind v. Revlon Consumer Products Corp., No. 14 Civ. 2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015)

(citing Tomasino v. Estee Lauder Cos. Inc., 44 F. Supp. 3d 251 (E.D.N.Y. 2014); Nicosia v.

Amazon.com, Inc., 84 F. Supp. 3d 142, 156 (E.D.N.Y. 2015)).

      Plaintiffs rely on a cases from this District and the Northern District of California to

suggest that there is a public-policy exception to the requirement of a future continuing injury in

consumer protection cases.[4]   See, e.g., Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440,

445-46 (E.D.N.Y. 2015) ("Public policy, as well as precedent, supports the rule that Article III

standing exists to seek injunctive relief. . . . To hold otherwise would denigrate the New York

consumer protection statute, designed as a major support of consumers who claim to have been

cheated.); Ackerman v. Coca-Cola Co., No. 09 Civ. 395, 2013 WL 7044866, at *15 n.23

(E.D.N.Y. July 18, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek

injunctive relief based on the allegation that a product's labeling or marketing is misleading to a

reasonable consumer.  To hold otherwise would effectively bar any consumer who avoids the

offending product from seeking injunctive relief."); Ries v. AriZona Beverages USA LLC, 287

F.R.D. 523, 538 (N.D. Cal. 2012); Cabral v. Supple, LLC, No. 12 Civ. 85, 2012 WL 4343867, at

*2 (C.D. Cal. Sept. 19, 2012) ("While Plaintiffs may not purchase the same . . . products as they

purchased during the class period, because they are now aware of the true content of the

products, to prevent them from bringing suit on behalf of a class in federal court would surely

---

[4] Plaintiff also cites Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993), for the proposition that
"[p]laintiffs simply need to allege that [d]efendants were engaging in the unlawful practice at the
time of the [c]omplaint."  Opp. at 5, ECF No 21.  As Defendants point out, Robidoux holds that a
plaintiff must allege "that the defendant was engaging in the unlawful practice against the
plaintiff at the time of the complaint."  Robidoux, 987 F.2d at 938 (emphasis added); see
Nicosia, 84 F.Supp.3d at 157-58 ("Plaintiff lacks standing to seek injunctive relief because . . . .
Plaintiff does not allege that he intends to purchase the 1 Day Diet again in the future, nor is he
suffering any ongoing injury as a result of his past purchases of 1 Day Diet.").  Given that
Plaintiffs were already aware of the alleged misstatements when they filed their Complaint,
Defendants were not at the time engaging in any unlawful practice against them.

thwart the objective of California's consumer protection laws.").

Other cases have refused to recognize this exception, pointing out that it is contrary to

Lyons.  See Nicosia, 84 F. Supp. 3d at 157 n.10 ("Several courts have declined to follow Lyons

in consumer protection cases. . . . This Court declines to follow these cases because Lyons

remains binding precedent."); Nguyen v. Medora Holdings, LLC, No. 14 Civ. 00618, 2015 WL

4932836, at *7 (N.D. Cal. Aug. 18, 2015); Albert v. Blue Diamond Growers, 15 Civ. 4087, 2015

WL 9450579, at *5 (S.D.N.Y. Oct. 21, 2015) ("Although Ackerman and other cases from the

Eastern District of New York may suggest that future injury is not required in the consumer

protection context, this Court declines to follow these cases because binding Supreme Court and

Second Circuit precedent dictates otherwise."); Elkind, 2015 WL 2344134 at *3 n.2 ("Plaintiffs

point to and the Court is aware of a number of cases that suggest that the requirement of a future

or continuing injury is not applicable in those cases where injunctive relief is sought in the

consumer context.  Because Lyons, remains binding precedent, however, the Court remains

bound by its holding.") (internal citations omitted).[5]

The more recent trend of adhering to Lyons and Shain by refusing to recognize a public-

---

[5]  Many of the cases cited by Plaintiffs rely on two opinions from the Northern District of
California: Larsen v. Trader Joe's Co., No. 11 Civ. 05188, 2012 WL 5458396 (N.D. Cal. June
14, 2012), and Koehler v. Litehouse, Inc., No. 12 Civ. 04055, 2012 WL 6217635 (N.D. Cal.
Dec.13, 2012).  See Belfiore, 94 F. Supp. 3d at 445 (quoting and relying on Koehler); Ackerman,
2013 WL 7044866, at *15 n. 23 (quoting and relying on Larsen and Koehler).  The judge who
authored Koehler and Larsen has since repudiated those holdings, stating that "the Court agrees
with defendant that to establish standing, plaintiff must allege that he intends to purchase the
products at issue in the future" and "declin[ing] to follow its prior analysis in Larsen . . . and
Koehler."  Rahman v. Mott's LLP, No. 13 Civ. 3842, 2014 WL 325241, at *10 & n.9 (N.D. Cal.
Jan. 29, 2014).  In the present case, the Plaintiffs allege that they do not intend to purchase
Defendants' Fruit Snack products in the future because Plaintiffs "cannot be confident that the
marketing and labeling of the [p]roducts is, and will be, truthful and non-deceptive."  Compl.,
ECF No. 1 ¶¶ 16 & 19.  Given that Plaintiffs do not allege that they will suffer any future-harm
by Defendants' products, see id., they do not satisfy the future-harm requirement.

policy exception to the requirement of a future continuing injury in consumer-protection cases

has the better argument.  Putting aside the arguments in favor of the exception, it has only been

invoked by courts at the district level and is not binding on this Court.  Lyons and Shain remain

binding Supreme Court and Second Circuit precedent, and this Court is bound by these holdings.

Accordingly, because the Complaint fails to establish a likelihood of future or continuing harm

to Plainitffs, the Court respectfully recommends that Plaintiffs' claim for injunctive relief be

dismissed.

> ### C.    Plaintiffs Have Article III Standing To Assert Claims Regarding Snack Varieties They Have Not Purchased

Defendants argue that Plaintiffs do not have standing to bring claims related to the eight

Fruit Snacks varieties that none of the named Plaintiffs purchased.[6]  In opposition, Plaintiffs

argue that under NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., such an

argument is not about individual standing but rather is a challenge to class certification and their

qualifications as representatives of the class.  693 F.3d 145, 158 n.9 (2d Cir. 2012) (noting that

the district court "erred to the extent it based its conclusion on the (mistaken) assumption that"

the named plaintiff need have purchased all of the financial securities purchased by the class he

sought to represent and that "[i]n any event, [plaintiff]'s standing to assert claims on others'

behalf is an inquiry separate from its ability to represent the interests of absent class members");

see In re Frito-Lay North Am., Inc., All Nat. Litig., No. 12 Civ. 2413, 2013 WL 4647512, at *13

(E.D.N.Y. Aug. 29, 2013) (holding "because the plaintiffs have Article III standing, at this stage,

---

[6] The non-purchased varieties of Fruit Snacks are:  Island Fruits, Reduced Sugar Mixed Fruit, Berries 'n Cherries, Tangy Fruits, Fruit Punch, White Grape Peach, Apple Orchard Medley, Strawberry Fruit 'n Yogurt, Blueberry Fruit 'n Yogurt, Strawberry Creamy PB&J, Strawberry Crunchy PB&J, Grape Creamy PB&J, and Grape Crunchy OB&J.  See Compl, ECF No. 1 ¶ 1 n.2.

they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase," and noting that "[w]hether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products . . . is a question the Court will consider on a Rule 23 certification motion").[7]

Indeed, courts in this and other circuits have held that, subject to further inquiry at the class-certification stage, a named plaintiff has Article III standing to bring class-action claims under state consumer-protection laws for products that he or she did not purchase, so long as those products, and the false or deceptive manner in which they allege they were marketed, are "sufficiently similar" to the products that the named plaintiff purchased. See Brady v. Basic Research, L.L.C., No. 13 Civ. 7169, 2015 WL 1542094, at *5 (E.D.N.Y. Mar. 31, 2015). Products have been found to be substantially similar when "[p]laintiffs are challenging the same kind of food products . . . as well as the same labels for all of the products—i.e., 'All Natural Flavors,'" and "[p]laintiffs are challenging the same basic mislabeling practice across different product flavors." Astiana v. Dreyer's Grand Ice Cream, Inc., No. 11 Civ. 2910, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012); see Jovel v. i-Health, Inc., No. 12 Civ. 5614, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013) (different dietary supplements were substantially similar because they had similarities in packaging and labeling and because "[t]he crux of the alleged misrepresentation . . . is the same"); Anderson v. Jamba Juice Co., 888 F. Supp. 2d 1000,

---

[7] Defendants rely on the summary order in DiMuro v. Clinique Labs ., LLC, in which the Second Circuit held that the named plaintiffs could not bring claims relating to beauty products they had not purchased.  572 F. Appx 27, 29 (2d Cir. 2014).  "That case, however, decided the question of class standing, not Article III standing."  Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d. 283, 291 (S.D.N.Y. 2015) (citing Dimuro, 572 F. App'x at 29) (emphasis in original).  "Further, far from changing the law of the Circuit (which it could not do through a summary order . . . ), the panel expressly reiterate[d] the holding of NECA-IBEW."  Id. (internal quotation marks & citations omitted).

1006 (N.D. Cal. 2012) ("There is sufficient similarity between the products purchased . . . and the products not purchased . . . because the same alleged misrepresentation was on all of the [packaging] regardless of flavor; all smoothie kits are labeled "All Natural," and all smoothie kits contain allegedly non-natural ingredients.").

Although the different Fruit Snacks varieties noted in Plaintiffs' Complaint all have different flavors and some different ingredients, they are all the same kind of food product: gummy fruit snacks. Compl., ECF No. 1 ¶1 n.2. The packaging for the products, in particular the aspects that Plaintiffs allege are misleading, are also the same; each Fruit Snack variety includes the "Made With Real Fruit" decal, images of whole fruit on the labels, and references to the product's vitamin content. Id. ¶¶ 3, 35-38. The alleged misrepresentation is also the same across products: that the packaging of the Fruit Snacks misleads consumers into believing that the product contains substantial amounts of real fruit, and that it is as healthy as real fruit. Id. ¶¶ 40, 47, 77. For these reasons, the products are similar enough to warrant Article III standing.

Because Plaintiffs have Article III standing, at this stage, they should be allowed to press claims on behalf of putative class members arising out of products that Plaintiffs did not themselves purchase. Whether Plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products—and whether Plaintiffs will therefore adequately represent the interests of the class—is a question that may be considered on a Rule 23 certification motion. For these reasons, this Court respectfully recommends denying the motion to dismiss for lack of standing as to unpurchased snack varieties.

### D.      Plaintiffs' Suit Should Not Be Stayed Pursuant To The Primary Jurisdiction Doctrine

Defendants next contend that the Court should refrain from entertaining Plaintiffs' claims

as a matter of deference to the Food and Drug Administration ("FDA"), pursuant to the doctrine of primary jurisdiction.

Primary jurisdiction is a matter of judicial prudence which provides that the courts should not adjudicate claims where the enforcement "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." United States v. W. Pac. R. Co., 77 S. Ct. 161, 165, 352 U.S. 59, 64 (1956) (citation omitted). Courts considering this principle have stressed its narrow scope.  See Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 851 (2d Cir. 1988); Global Crossing Bandwith, Inc. v. OLS, Inc., No. 5 Civ. 6423, 2009 WL 763483, at *2 (W.D.N.Y. Mar. 19, 2009) ("[T]he case law establishes that it should not be lightly invoked or applied, and that cases in which its application is warranted tend to be the exception, not the norm.").

Although "'[n]o fixed formula exists for applying the doctrine of primary jurisdiction,'" the Second Circuit Court of Appeals has focused on four factors in determining whether to apply the doctrine:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

Ellis v. Tribune Television Co., 443 F.3d 71, 82-83 (2d Cir. 2006) (citing Nat'l Commc'ns Ass'n., Inc. v. AT & T Co., 46 F.3d 220, 222 (2d Cir. 1995)); Schiller v. Tower Semiconductor Ltd., 449 F.3d 286, 295 (2d Cir. 2006).  Courts should also weigh "the advantages of applying the doctrine against the potential costs resulting from complications and delay in the

administrative proceedings."  Ellis, 443 F.3d at 82-83 (quoting Nat'l Commc'ns Ass'n, 46 F.3d at 222).  When considering issues of primary jurisdiction, "[t]here clearly is a public interest in reasonably prompt adjudication"  See Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 60 (2d Cir. 1994).

The gravamen of Plaintiffs' allegations is that the packaging for Defendants' Fruit Snacks products allegedly falsely and misleadingly represented that the products are healthy and contain substantial amounts of real fruit.  See, e.g., Compl., ECF No. 1 ¶¶ 40, 47, 77.  Defendants acknowledge that "determining whether a particular representation made by Defendants is false or misleading . . . is well within the purview of this Court."  Mot. to Dismiss, ECF No. 19 at 22. They argue, however, that Plaintiffs' Complaint should instead be read as claiming that the Fruit Snacks packaging violates rules promulgated by the FDA by, for example, not listing the percentage of fruit contained in the Fruit Snacks.  Determining whether a food product violates FDA regulations, Defendants suggest, is within that agency's "discretion" and "particular field of expertise."  Id.

Defendants' argument is not supported by the Complaint.  Plaintiffs allege repeatedly that they and similar consumers were misled by the Fruit Snacks packaging into purchasing what they believed was a healthy snack that contained significant amounts of the fruit depicted on the packaging, and thus allege statutory consumer-protection claims and common law contractual breach.  See, e.g., Compl. ECF No. 1 ¶¶ 29, 33, 37, 40, 41, 42, 50.  "The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine."  Ackerman, 2010 WL 2925955, at *14.  Indeed, federal courts often adjudicate litigation over allegedly misleading labels on food products.  See,

e.g., Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014); Brazil v. Dole Food Co., Inc., 935 F. Supp. 2d 947, 959 (N.D. Cal. 2013); Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH, No. 14 Civ. 0585, 2014 WL 2526965, at *16 (S.D.N.Y. June 3, 2014); In re Frito-Lay N. Am., Inc. All Natural Litig., 2013 WL 4647512, at *8 ("This case is far less about science than it is about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed.").

As to the other Ellis factors, neither side argues that this Court adjudicating Plaintiffs' claims risks creating inconsistent rulings with the FDA, or that an application has been made to the FDA to resolve these claims.  Deferral to the FDA will not result in a timely resolution of Plaintiffs' claims because the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343 et seq., does not provide a private right of action, and there is no reason to believe that Plaintiffs could obtain any adjudication of their claims from the FDA.  See Golden Hill Paugussett Tribe of Indians, 39 F.3d at 60.

For the foregoing reasons, the Court respectfully recommends denying a stay of Plaintiffs' suit pursuant to the primary jurisdiction doctrine.

### E.    Plaintiffs' Claims Should Be Dismissed To The Extent They Fall Outside The Statutes Of Limitation

Plaintiffs allege their claims regarding Fruit Snack purchases they and others similarly situated have made in the past six years.  Compl. ECF No. 1 ¶ 2.  The claims must be limited in time because all of Plaintiffs' claims are subject to statutes of limitation shorter than six years. The breach-of-express and implied-warranty claims and the two unfair competition law claims are subject to four-year statutes of limitation.  See Woods v. Maytag Co., No. 10 Civ. 0559, 2010 WL 4314313, at *2 (E.D.N.Y. Nov. 2, 2010) ("The applicable statute of limitations for a breach

of warranty, express or implied, on a contract of sale for a good is four years."); Cal. Bus. &
Prof. Code § 17208 (UCL § 17200 & Fraud).  The GBL § 349 claim, GBL § 350 claim, FAL
claim, CLRA claim, and the claim for unjust enrichment are all subject to three-year statutes of
limitation.  See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 364 (E.D.N.Y. 2015)
("Claims for unjust enrichment seeking monetary, as opposed to equitable, relief are governed by
a three-year statute of limitations."); Schneiderman v. Orbital Pub. Grp., Inc., No. 451187/15,
2015 WL 7738630, at *10 (Sup. Ct., N.Y. Cnty. Nov. 30, 2015) (GBL §§ 349 & 350 have three-
year statutes of limitation pursuant to CPLR 214(2)); Cal. Civ. Code § 338(a) (FAL); Cal. Civ.
Code § 1783 (CLRA).

    Plaintiffs' Complaint was filed on September 18, 2015.  Their claims thus cannot
encompass Fruit Snack purchases earlier than either September 18, 2012 or 2011 as set forth
below:

| Claim | Statute of Limitation | Date of Earliest Accrual of Claim | Claims To Be Dismissed on or before |
|---|---|---|---|
| Breach of Express Warranty | Four years | Sept. 18, 2011 | Sept. 17, 2011 |
| Breach of Implied Warranty | Four years | Sept. 18, 2011 | Sept. 17, 2011 |
| Unjust Enrichment | Three years | Sept. 18, 2012 | Sept. 17, 2012 |
| GBL § 349 | Three years | Sept. 18, 2012 | Sept. 17, 2012 |
| GBL § 350 | Three years | Sept. 18, 2012 | Sept. 17, 2012 |
| CLRA | Three years | Sept. 18, 2012 | Sept. 17, 2012 |
| UCL § 17200 | Four years | Sept. 18, 2011 | Sept. 17, 2011 |
| UCL Fraud | Four years | Sept. 18, 2011 | Sept. 17, 2011 |
| FAL | Three years | Sept. 18, 2012 | Sept. 17, 2012 |

    The Court thus respectfully recommends that Plaintiffs' claims be dismissed to the extent
they fall outside the relevant statutes of limitation, pursuant to the above chart.

### F.      Plaintiffs' Statutory Claims Should Not Be Dismissed

Plaintiffs allege that Defendants violated several statutes under New York and California law.  Defendants argue that these claims should be dismissed because Defendants' packaging would not mislead the ordinary reasonable consumer.

#### 1.   New York's General Business Law §§ 349 & 350 (Claims 4 & 5)

"In order to show that Plaintiff is entitled to relief for a violation of New York General Business Law ("GBL") § 349, relating to deceptive business practices, or § 350, relating to false advertising, a plaintiff must show:  (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect, and (3) that the plaintiff was thereby injured.  See Stutman v. Chem. Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y. 2000) (§ 349); Horowitz v. Stryker Corp., 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (§ 350) (citation omitted).  The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct.  Marcus v. AT&T, 138 F.3d 46, 64 (2d Cir. 1998); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995); but see Flattau v. John Hancock Mut. Life Ins. Co., No. 85 Civ. 5487, 1986 WL 14977, at *3 (S.D.N.Y. Dec 12, 1986) (suggesting that courts should "not look to the average customer but to the vast multitude which the statutes were enacted to safeguard—including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions") (citation omitted).

#### 2.   California's Consumer Legal Remedies Act § 1750 (Claim 6)

California's CLRA, Cal. Civ. Code § 1750 et seq., prohibits specified "unfair methods of

competition and unfair or deceptive acts or practices" in connection with the sale or lease of

goods or services to a consumer.  See Cal. Civ. Code, § 1770(a).  Among the practices prohibited

by the CLRA is "[r]epresenting that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities which they do not have," and

"[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods

are of a particular style or model, if they are of another."  Cal. Civ. Code, §§ 1770(a)(5) & (a)

(7).  California Civil Code Section 1760 states that the CLRA "shall be liberally construed and

applied to promote its underlying purposes, which are to protect consumers against unfair and

deceptive business practices and to provide efficient and economical procedures to secure such

protection."  Civ. Code, § 1760.

Conduct that is "likely to mislead a reasonable consumer" violates the CLRA.  Colgan v.

Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36, 47 (Cal. Ct. App. 2006)

(quoting Nagel v. Twin Labs., Inc., 109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420, 431 (Cal. Ct.

App. 2003)).  A "reasonable consumer" is "the ordinary consumer acting reasonably under the

circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the

process of its preparation or manufacture . . . ."  Id.

### 3. California's Unfair Competition Law § 17200 & Unfair Competition Law Fraud Claim (Claims 7 & 8)

The UCL provides a cause of action for harms caused by "any unlawful, unfair or

fraudulent business act or practice."  Cal. Bus. & Prof.Code § 17200.  "[T]he primary purpose of

the [UCL] . . . is to protect the public from unscrupulous business practices."  Consumers Union

of U.S., Inc. v. Alta-Dena Certified Dairy, 4 Cal. App. 4th 963, 6 Cal. Rptr. 2d 193, 200 (Cal. Ct.

App. 1992).  A business practice need only meet one of the three criteria ("unlawful," "unfair,"

or "fraudulent") to violate the UCL.  McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 49

Cal. Rptr. 3d 227, 239 (Cal. Ct. App. 2006).

The UCL, like Plaintiffs' other statutory claims, uses an ordinary reasonable consumer standard.  See Ackerman, 2013 WL 7044866, at *19.

### 4.   California's False-Advertising Law (Claim 9)

The FAL prohibits "unfair, deceptive, untrue or misleading advertising."  Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17500, et seq.).  Advertising is defined broadly to include almost any statement made in connection with the sale of goods or services, including statements and pictures on labels.  See id.  Advertising that is likely to deceive the reasonable consumer violates California's false-advertising law, id. at 938, and violations of the FAL constitute "unlawful" conduct for the purposes of the UCL.  See Ackerman v. Coca–Cola, 2010 WL 2925955, at *3.  A FAL-based claim may concern "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  Id. at *18.  A claim under the FAL is governed by the "reasonable consumer" test, meaning the plaintiffs must show that "members of the public are likely to be deceived."  Parino v. BidRack, Inc., 838 F. Supp. 2d 900, 905 (N.D. Cal. 2011) (citation & internal quotation marks omitted)

### 5.   Plaintiffs Sufficiently Plead That Defendants' Representations Could Mislead A Reasonable Consumer

Plaintiffs' statutory claims are all governed by the reasonable-consumer test.  See Marcus, 138 F.3d at 64 (GBL §§ 349 & 350); Williams, 552 F.3d at 938 (UCL & CLRA); Parino, 838 F. Supp. 2d at 905 (FAL).  Given that these statutes rely on a single standard, the claims relying on these statutes can be analyzed together.  See MacDonald v. Ford Motor Company, 37 F. Supp. 3d 1087, 1097-98 (N.D. Cal. 2014).  "Under the reasonable consumer standard, [plaintiffs] must show that 'members of the public are likely to be deceived'" by the

product in question.  <u>Williams</u>, 552 F.3d at 938.  The statutes invoked by Plaintiffs "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  <u>Id.</u> (internal quotation marks removed).  "Primary evidence in a false advertising case is the advertising itself."  <u>Videtto v. Kellogg USA</u>, No. 08 Civ. 01324, 2009 WL 1439086, at *2 (E.D. Cal. May 21, 2009).  Federal courts "have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]."  <u>Williams</u>, 552 F.3d at 938; <u>see</u> <u>In re Frito-Lay N. Am., Inc. All Nat. Litig .</u>, 2013 WL 4647512, at *15 ("Therefore, [whether labeling is deceptive] is generally not resolved on a motion to dismiss.").

<u>Williams</u> is the leading case in the Ninth Circuit to consider whether food-product labeling is deceptive.  The court there refused to dismiss claims that Gerber's Fruit Juice Snacks used misleading packaging.  The court found held that it was not unreasonable as a matter of law to find packaging deceptive when:

> The product is called 'fruit juice snacks' and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product.  Further, the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false.  And finally, the claim that Snacks is 'just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy' adds to the potential deception.

<u>Id.</u> at 939.

The court in <u>Albert v. Blue Diamond Growers</u>, No. 15 Civ. 4087, 2015 WL 9450579 (S.D.N.Y. Oct. 21, 2015), reached the same conclusion as the <u>Williams</u> Court.  It found that consumers stated claims against almond-milk manufacturers for violations of the GBL and UCL when they alleged that manufacturers purposefully misrepresented that their products contained a

significant amount of almonds, when they actually contained only two percent of almonds, when the products were certified as a "heart healthy food," and when the misrepresentations regarding the almond content and the health claims appeared on the products' packaging and in online promotional materials.  Albert, 2015 WL 945057, at *5.

Courts have  rejected similar claims alleging misrepresentation if the packaging makes the nature of the product clear.  For example, in Videtto, the court granted a motion to dismiss where the plaintiff complained that the packaging for Froot Loops cereal misled them into believing the product contained fruit and was healthy.  Videtto, 2009 WL 1439086, at *9.  The court found persuasive the facts that the packaging explicitly stated the product was "sweetened multi-grain cereal," used images of the multi-colored ring-shaped cereal "that do not resemble any known fruit," used a "fanciful" spelling of fruit in the product name, and made no representations that the product is nutritious.  Id.

Plaintiffs' main alleged misrepresentations include Defendants' use of pictures of whole fruit on the box, the "Made with REAL Fruit" decal on the box, Defendants' representations that the Fruit Snacks contain certain vitamins,[8] and Defendants' use of the word "wholesome." Plaintiffs argue that the effect of these representations is to mislead potential purchasers into believing there is a significant amount of the fruit depicted on the packaging in the Fruit Snacks when, in fact, there is not,[9] and to mislead consumers into believing the Fruit Snacks are as

---

[8] Plaintiffs allege that Defendants' ability to claim that Fruit Snacks contain vitamins A, E, and C is the result of fortification of the Fruit Snacks in contravention of the FDA's Fortification Policy, which states that the FDA does not "consider it appropriate to fortify . . . sugars; or snack foods such as candies" and that indiscriminate fortification could "result in deceptive or misleading claims for certain foods."  21 C.F.R. § 104.20(a).

[9] Defendants briefly state in the Motion to Dismiss that Fruit Snacks do, in fact, contain significant amounts of fruit.

healthy as fruit when they, in fact, are not.

Taking the facts as alleged by the Plaintiff as true–that there is not a significant amount of the fruit depicted on the packaging in the Fruit Snacks and that they are unhealthy relative to real, whole fruit–it would be premature to hold that no reasonable consumer would be misled by Defendants' representations.  Similar to the products in <u>Williams</u>, Fruit Snacks products are titled simply "fruit snacks" and contain images of real, whole fruit, potentially signaling to consumers that the product primarily consists of those ingredients.[10]  Each variety of the product also is named after particular fruits (<u>e.g.</u>, Berries 'n Cherries, Tropical Fruits), further suggesting that these are the ingredients.  As with the "made with fruit juice and other all natural ingredients" label in <u>Williams</u>, the "Made with REAL Fruit" decal on Fruit Snacks boxes "could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."  <u>Williams</u>, 552 F. 3d at 939.  Based on these allegations, a consumer would not be unreasonable as a matter of law in drawing the conclusion from this advertising that the food inside will contain significant amounts of the fruit pictured, and will be as healthy as the depicted fruit.  <u>See</u> <u>Albert</u>, 2015 WL 9450579, at *3 (finding allegations that manufacturers purposefully misrepresented that their almond milk "contain[ed] a significant amount of almonds, when they actually contained only two percent of almonds" sufficient to

---

[10] Defendants note that, unlike their packaging, the product in <u>Williams</u> used images of fruits that were not contained in the product at all.  Nevertheless, in coming to its conclusion the <u>Williams</u> court did not rely solely on the fact that the packaging at issue used images of fruits not contained in the product.  The court instead focused on the "number of features . . . which could likely deceive a reasonable consumer."  <u>Williams</u>, 552 F. 3d at 939.  Other courts have denied motions to dismiss where the product's packaging suggested it contained a significant amount of an ingredient when it contained very little of the ingredient.  <u>See</u> <u>Albert</u>, 2015 WL 9450579, at *3 (finding allegations that manufacturers purposefully misrepresented that their almond milk "contain[ed] a significant amount of almonds, when they actually contained only two percent of almonds" sufficient to mislead the ordinary, reasonable consumer).

mislead the ordinary, reasonable consumer).  Indeed, the Fruit Snacks packaging is arguably

more deceptive than the packaging in Williams, as that packaging does include images of the

actual gummy product, while Fruit Snacks packages only contain images of fruit.

Defendants' use of the phrase "wholesome" could lead a reasonable consumer to believe

the Fruit Snacks are healthy and contain a significant amount of fruit.  Courts have found that

phrases like "wholesome" and "healthy" can be deceptive to consumers, particularly when they

add "to the deceptive context of the packaging as a whole."  Williams, 552 F.3d at 939 (finding

"just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically

designed to help toddlers grow up strong and healthy" potentially misleading); see Yumul v.

Smart Balance, Inc., 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (finding the word "healthy"

potentially deceptive); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal.

2010) (finding that use of the word "wholesome" was not puffery and "could mislead a

reasonable consumer").

Here, Defendants' label containing the word "wholesome" reads in full:

> The Welch's® name has been built on the highest quality fruit proudly
> grown on family farms.  In this tradition of wholesome goodness come
> Welch's® Fruit Snacks, made with real fruit and fruit juices.  Welch's®
> Fruit Snacks are sure to delight your family.  Please try all of our delicious
> Welch's® Fruit Snacks varieties, and thank you for the trust you place in
> Welch's®.

Compl., ECF No. 1 ¶ 32.

Defendants argue that "'wholesome' is not a description of the Fruit Snacks product, but

rather modifies the phrase "this tradition."  Mot. to Dismiss, ECF No. 18.  They attempt to

contrast their use of the word with the defendant's use of it in Chacanaca, in which it was held to

potentially mislead a reasonable consumer.  There, the offending label read:

> Quaker Chewy Granola Bars with Protein have all the delicious Quaker

> Chewy taste your family loves along with 5 grams of protein to help fuel
> their busy day.  Made with the goodness of whole grain Quaker oats and
> yummy ingredients like peanut butter or chocolate chips, they're a great-
> tasting, wholesome way to help keep your family going.

Mot. to Dismiss, ECF No. 19.[11]  Defendants say that "it was certainly reasonable for the court in

Chacanaca to find that the use of the word 'wholesome' constituted a potentially-actionable

representation" but that finding so here would be "inappropriate" where "no reasonable

consumer could understand the word 'wholesome' to describe the Fruit Snacks product."  Id.

The Court disagrees, and indeed finds the two types of labels more similar than different.

It would not be unreasonable as a matter of law for an ordinary consumer to believe that "the

highest quality fruit proudly grown on family farms" is what is being referred to as "wholesome

goodness" or the "tradition of wholesome goodness" that lead to "Welch's® Fruit Snacks."  It

would thus not be unreasonable for an ordinary consumer to believe that Fruit Snacks contain a

significant amount of fruit, as well as bring about the health benefits of that fruit.  Indeed, that

interpretation is identical to the Chacanaca court's interpretation, where granola bars "[m]ade

with the goodness of whole grain Quaker oats" were described as "wholesome."

Defendants argue that their packaging is most comparable to the packaging in Red v.

Kraft Foods, Inc., No. 10 Civ. 1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012).  In Red, the

plaintiffs challenged the phrase "Made with Real Vegetables" on cracker packaging.  Red, 2012

---

[11] The Chacanaca label is contained in the Amended Consolidated Complaint from that action.
This Court may take judicial notice of the contents of the Chacanaca Complaint for purposes of
evaluating the instant motion.  See Global Network Commc'ns, Inc. v. City of New York, 458
F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another
court not for the truth of the matters asserted in the other litigation but rather to establish the fact
of such litigation and related filings.") (citation omitted).  The Chacanaca Complaint is not being
offered here to prove the truth of its allegations but to provide context necessary to understand
the relevance of Chacanaca to the instant case.

WL 5504011, at *2.  The court concluded that no reasonable consumer would read "packaging [that] boasts that the crackers are made with real vegetables and depicts vegetables" to mean that the crackers are "<u>healthy</u> and contain[ ] a <u>significant amount of vegetables</u>."  <u>Id.</u> at *3 (emphasis in original).  The <u>Red</u> Court explained, "the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables."  <u>Id.</u>

<u>Red</u> dealt with a product that made clear it was one food item, crackers, while advertising that it included another type of food item, vegetables.  The packaging at issue made it clear to the consumer that they were purchasing a box of crackers, which the ordinary person would know are not generally made of vegetables.  This is similar to the box of Froot Loops in <u>Videtto v. Kellogg USA</u>, No. 08 Civ. 01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009), which, despite the name "Froot Loops", noted on the box that the product was a sweetened cereal, and included images of the cereal.  The Fruit Snacks packaging, on the other hand, states that the product is called "Fruit Snacks", that it is made with real fruit, and that it is "high[] quality fruit proudly grown on family farms."  The only ingredient images on the packaging are of fruit.  Although the product in <u>Red</u> advertised itself as a cracker that contains vegetables, Fruit Snacks are advertised as primarily fruit.  The Fruit Snacks packaging might be comparable to the packaging in <u>Red</u> if it included a picture of the actual fruit gummies, a statement that it is a gummy candy that includes real fruit or if the name were, for example, "Fruit Gummies."  Alternatively, if the packaging in <u>Red</u> gave no indication that the product within was a vegetable-flavored cracker, but instead only showed images of vegetables, had a "Made With Real Vegetables" label, and was called "Vegetable Snacks", it would be more comparable to Defendants' product, and might have been found to be unlawfully deceptive.

The same is true of <u>Romero v. Flowers Bakeries, LLC</u>, No. 14 Civ. 05189, 2016 WL 469370 (N.D. Cal. Feb. 2,  2016), also relied on by Defendants.  There, the court dismissed a claim that the packaging of white bread misled consumers into believing that the product contained a significant amount of whole wheat and was thus healthier than other white breads because it used pictures of wheat and stated the bread was wheat-flavored.  <u>Id.</u> at *7.  As with <u>Red</u>, the packaging in Romero made it clear that the product is pre-sliced white bread. According to the court, a reasonable consumer should know that white bread is not significantly made of whole wheat, unlike whole wheat bread.

Fruit Snacks, however, advertises itself primarily as real fruit.  Its packaging is similar to the packaging in <u>Albert v. Blue Diamond Growers</u>, No. 15 Civ. 4087, 2015 WL 9450579 (S.D.N.Y. Oct. 21, 2015).  The court ruled in that case that the plaintiffs stated a consumer-protection claim against manufacturers of almond-milk packaging that included images of almonds and said it was made with real almonds but only was made up of two percent almond. <u>Id.</u> at *3.  The product was almond milk and advertised itself as such, and so it was reasonable for consumers to expect it to contain a significant amount of almonds.  Plaintiffs allege the same is true of Fruit Snacks.

Plaintiffs also argue that the phrases on the Fruit Snacks touting their vitamins A, C and E content could plausibly be misleading to a reasonable consumer.  Plaintiffs allege that Defendants' ability to claim that Fruit Snacks contain vitamins A, E, and C is the result of fortification of the Fruit Snacks and is in contravention of the FDA's Fortification Policy, which states that the FDA does not "consider it appropriate to fortify . . . sugars; or snack foods such as candies" and that indiscriminate fortification could "result in deceptive or misleading claims for certain foods."  21 C.F.R. § 104.20(a); <u>see also</u> 60 Fed. Reg. 66206, 66212 (noting that claims of

healthfulness on products that violate the FDA's fortification policy "would be misleading because consumers would be purchasing the food, in part, to achieve a more healthful diet, when, in fact, such foods are inconsistent with dietary guidelines.  Further, such claims could be damaging if consumers are encouraged to replace wholesome and nutritious foods that are recommended in dietary guidelines with these foods.").  In evaluating whether something is deceptive to the reasonable consumer, courts have given "substantial weight to the FDA's determination that fortification of a food in a manner that is not consistent with FDA's fortification policy may be misleading because it may lead consumers to consume foods that contain sugar or other sources of calories, but lack any inherent nutrients other than those that have been added through fortification." Ackerman, 2010 WL 2925955, at *17.  This allegation fortifies the plausibility of Plaintiffs' argument that Defendants' packaging is misleading and violates state laws.

For the foregoing reasons, the Court believes that this is not one of the "rare situation[s] in which granting a motion to dismiss is appropriate" on consumer deception claims, Williams, 552 F.3d at 939, and respectfully recommends denying Defendants' motion to dismiss the statutory claims.

## G.    Plaintiffs' Breach-Of-Express-Warranty Claims Should Not Be Dismissed

Plaintiffs allege Defendants breached their express warranty by representing that the Fruit Snacks are healthy and contain a significant amount of the fruit depicted, when in fact that is not true.

"To state a claim for breach of express warranty, plaintiff must allege that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." DiBartolo

v. Abbott Laboratories, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (internal quotation marks omitted); Weiner v. Snapple Beverage Corp., No. 07 Civ. 8742, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011) (quoting Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010)).  "Under California law, the elements of a breach of warranty cause of action are:  (1) a sale of goods from defendant to plaintiff; (2) defendant expressly . . . warranted the goods sold; (3) breach of the warranty; (4) breach of the warranty caused plaintiff to suffer injury; and (5) plaintiff gave defendant timely notice of the breach of warranty."  Podobedov v. Living Essentials, LLC, No. 11 Civ. 6408, 2012 WL 2513458, at *4 (C.D. Cal. Mar. 22, 2012).

Plaintiffs allege that the Fruit Snacks represent, among other things, that they come from "the highest quality fruit proudly grown on family farms" in a "tradition of wholesome goodness," Compl., ECF No. ¶ 32, and that this warranty formed part of the basis of Plaintiffs' decision to purchase the Fruit Snacks, id. ¶ 12.  According to the Complaint, the Fruit Snacks are not healthy.  Id. ¶¶ 40 & 77.  For the reasons stated in the discussion of Plaintiffs' statutory claims, supra section F.5, this statement of fact regarding Fruit Snack's wholesome nature is sufficient to constitute an express warranty, and dismissal at this point would be premature.  See Avola v. Louisiana-Pac. Corp., 991 F. Supp. 2d 381, 396 (E.D.N.Y. 2013) (claims that synthetic siding product would behave "just like wood" sufficient to allege claim); Ackerman, 2010 WL 2925955, at *17 ("vitamins + water = all you need" held actionable); see also Goldemberg, 8 F. Supp. 3d at 483 ("[A]s the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty claim.").

Thus, the Court respectfully recommends denying Defendants' motion to dismiss the

breach-of-express-warranty claims.

###### H.    Plaintiffs' Breach-Of-Implied-Warranty Claims Should Be Dismissed

Plaintiffs also claim that Defendants violated both New York and California's implied

warranties of merchantability.  Both New York and California base this claim on the Uniform

Commercial Code.  See Cal. Com. Code § 2314; N.Y. U.C.C. § 2-314.  Under the UCC, if a

seller is a merchant, there is an implied contract that the goods will be of merchantable quality.

See Denny v. Ford Motor Co., 87 N.Y.2d 248, 258 (1995) (citing section 2-314(2)(c) of the

UCC.  "Where the sale of a food or beverage is concerned, courts have ruled that the product

need only be fit for human consumption to be of merchantable quality."  Silva v. Smucker

Natural Foods, Inc., No. 14 Civ. 6154, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015); see

Mexicali Rose v. Superior Court, 1 Cal. 4th 617, 622 (Cal. 1992) (implied warranty of fitness

"merely requires that food be reasonably fit for human consumption.").

Plaintiffs allege that the Fruit Snacks packaging misstates how healthful the product is,

Compl., ECF No. 1 ¶¶ 40 & 77, but they do not allege that the Fruit Snacks are unfit for human

consumption.  Therefore, the Court respectfully recommends that the breach-of-implied-

warranty claims be dismissed.

###### I.    Plaintiffs' Unjust Enrichment Claims Should Be Dismissed

Defendants move the Court to dismiss Plaintiffs' unjust enrichment claims as they are

duplicative of Plaintiffs' other causes of action.  "To prevail on a claim for unjust enrichment in

New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's

expense; and (3) that equity and good conscience require restitution."  Stoltz v. Fage Dairy

Processing Industry, S.A., No. 14 Civ. 3826, 2015 WL 5579872, at *26 (E.D.N.Y. Sept. 22,

2015).  "The elements of an unjust enrichment claim under California law are receipt of a benefit

and unjust retention of the benefit at the expense of another." Id. at *28 (internal quotation marks omitted).

The New York Court of Appeals has held that an unjust enrichment claim is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012). It is not a "catchall cause of action to be used when others fail" and is typically limited to instances where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Id. An unjust enrichment claim that merely "duplicates, or replaces, a conventional contract or tort claim" is insufficient. Id. at 790-91.

Post-Corsello decisions involving the deceptive labeling of consumer goods have dismissed unjust enrichment claims as duplicative or otherwise unavailable at the motion to dismiss stage. See Silva, 2015 WL 5360022, at *12 (listing cases). California courts have come to similar conclusions with regards to that state's unjust-enrichment cause of action. See Ivie v. Kraft Foods Global, Inc., No. 12 Civ. 02554, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015) (dismissing California unjust enrichment claim as duplicative because it shared a remedy with the UCL, FAL and CLRA claims also asserted in the action).

Plaintiffs' claims for unjust enrichment duplicate their statutory and common law claims. For that reason, the Court respectfully recommends that the claims be dismissed.

## III.    CONCLUSION

For the reasons stated above, this Court respectfully recommends that the District Court grant Defendants' motion to dismiss Plaintiff's claims for breach of implied warranty, unjust enrichment and injunctive relief, and all of their remaining claims to the degree that they fall

outside the relevant statutes of limitation as follows:  claims for breach-of-express-warranty, for breach-of-implied-warranty, under UCL § 17200 and for UCL fraud arising on or before September 17, 2011 should be dismissed, and claims for unjust enrichment, under GBL §§ 349 and 350, under the CLRA and under the FAL arising on or before September 17, 2012 should be dimissed.  This Court respectfully recommends that the rest of Defendants' motion to dimiss be denied.

## IV.    OBJECTIONS

This report and recommendation will be filed electronically.

Written objections to this report and recommendation must be filed within fourteen days of service and in accordance with the Individual Rules of the Honorable Margo K. Brodie.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Chambers will mail a copy of this Report & Recommendation to Defendants at the address noted in the docket for counsel.  Failure to file objections within the specified time waives the right to appeal.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  Brooklyn, New York
           August 5, 2016

_Vera M. Scanlon_
_____
VERA M. SCANLON
United States Magistrate Judge