UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

ALIZA ATIK and WINNIE LAU, *on behalf of*
*themselves and all others similarly situated*,

        Plaintiffs,

    v.

WELCH FOODS, INC. and THE PROMOTION IN
MOTION COMPANIES, INC.,

        Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
15-CV-5405 (MKB) (VMS)

MARGO K. BRODIE, United States District Judge:

   Plaintiffs Aliza Atik and Winnie Lau commenced the above-captioned putative class

action on behalf of themselves and all others similarly situated against Defendants Welch Foods,

Inc. ("Welch") and The Promotion in Motion Companies, Inc. ("PIM").  (Compl., Docket Entry

No. 1.)  Plaintiffs allege claims of (1) breach of express warranty, (2) breach of implied

warranty, (3) unjust enrichment, (4) deceptive acts or practices in violation of the New York

General Business Law, N.Y. Gen. Bus. Law § 349, (5) false advertising in violation of the New

York General Business Law, N.Y. Gen. Bus. Law § 350, (6) unfair and deceptive acts and

practices in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750

*et seq*., (7) unlawful business acts and practices in violation of the California Unfair Competition

Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, (8) fraudulent business acts and practices in

violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and

(9) misleading and deceptive advertising in violation of the California False Advertising Law,

Cal. Bus. & Prof. Code § 17500 *et seq.*  (*Id.* ¶¶ 69–135.)  Plaintiffs seek money damages,

restitution and injunctive relief.  (*Id.* at 29.)  Defendants move to dismiss or stay the action

pursuant to the primary jurisdiction doctrine. (Defs. Mot. to Dismiss, Docket Entry No. 17; Defs. Mem. of Law in Supp. of Mot. to Dismiss ("Defs. Mem.") 9–12, Docket Entry No. 19.) Defendants also move to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of standing and for failure to state a claim. (Defs. Mem. 4–8, 13–25.)

By report and recommendation dated August 5, 2016 (the "R&R"), Magistrate Judge Vera M. Scanlon recommended that the Court grant Defendants' motion to dismiss Plaintiffs' claims for breach of implied warranty, unjust enrichment, injunctive relief and Plaintiffs' remaining claims to the degree that they fall outside the relevant statutes of limitation, and that the Court otherwise deny Defendants' motion to dismiss. (R&R 29–30, Docket Entry No. 24.) On August 19, 2006, Plaintiffs and Defendants objected to the R&R. (Pls. Obj. to R&R ("Pls. Obj."), Docket Entry No. 26; Defs. Objs. to R&R ("Defs. Objs."), Docket Entry No. 27; Defs. Resp. to Pls. Obj., Docket Entry No. 29.) For the reasons set forth below, the Court adopts the R&R in its entirety.

## I. Background

The facts alleged in the Complaint are assumed to be true for purposes of this motion. Plaintiffs' claims arise from Defendants' product labeling of Welch's Fruit Snacks, which they allege misrepresents the fruit content and nutritional and health qualities of the snacks. (Compl. ¶ 1.) Welch's Fruit Snacks include Fruit Snacks, sold in eleven different flavors,[1] Fruit 'n Yogurt Snacks, sold in strawberry and blueberry flavors, and PB&J Fruit Snacks, sold in strawberry

---

[1] Fruit Snacks are sold in the following flavors: mixed fruit, island fruits, reduced sugar mixed fruit, berries 'n cherries, concord grape, white grape raspberry, strawberry, tangy fruits, fruit punch, white grape peach and apple orchard medley. (Compl. ¶ 1 n.2.)

creamy, strawberry crunchy, grape creamy and grape crunchy flavors (the "Products").[2]  (*Id.* ¶ 1 n.2.)

Welch is a Michigan corporation with its principal place of business in Massachusetts, and PIM is a New Jersey corporation with its principal place of business in New Jersey.  (*Id.* ¶¶ 20–21.)  PIM is a "maker of fruit snacks, fruit rolls, and private label confections and food products."  (*Id.* ¶ 21.)  PIM licenses the trademark "Welch's" from Welch and "produces, markets, and distributes" the Products under Welch's authority.  (*Id.* ¶¶ 21–22.)

Plaintiffs allege that, beginning in 2009 and continuing to the present, "Defendants have engaged in a deceptive marketing campaign to convince consumers that [the Products] contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, were nutritious and healthful to consume, and were more healthful than similar products."  (*Id.* ¶ 2.)  Plaintiffs state as examples of these misrepresentations that Defendants labeled the Products to state that they are "Made With REAL Fruit" and depicted pictures of the fruit advertised as the flavor of the Product, (*id.* ¶¶ 35–38); labeled the Products as containing "100% Vitamin C" and "25% Vitamins A & E," as "FAT FREE," and as containing no gluten or preservatives, (*id.* ¶¶ 3, 35–36, 38); included on the packaging of the Products that "[t]he Welch's name has been built on the highest quality fruit proudly grown on family farms" and that "[i]n this tradition of wholesome goodness come Welch's Fruit Snacks, made with real fruit and fruit juices," (*id.* ¶ 32); and stated on Welch's website that the Products are "wholesome" and of a "quality that can only be Welch's," (*id.* ¶ 34).

---

[2]  Plaintiffs assert claims against Welch as to the Fruit Snacks, Fruit 'n Yogurt Snacks and the PB&J Fruit Snacks, and against PIM only as to the Fruit Snacks.  (*See* Compl. ¶ 1 n.2.)

According to Plaintiffs, these representations are deceptive because they permit Defendants to "create the false impression that the fruit named and depicted on the labeling is present in an amount greater than is actually the case," (*id.* ¶ 6), when, in actuality, the Products "contain only minimal amounts" of the fruits depicted on the label,[3] (*id.* ¶ 4). Plaintiffs also allege that Defendants use these representations to market the Products as "healthful and nutritious" snacks, (*id.* ¶¶ 34, 38–39), but contend that because "two of the first three ingredients in the [Products] are added sweeteners" and because "[o]n average, sugar makes up 40% of each serving of the regular Fruit Snacks, 50% of each serving of the Fruit 'n Yogurt Snacks, and more than half of each serving of the PB & J Snacks," (*id.* ¶ 4), they are not healthy snacks.

Plaintiffs purchased the Products after being exposed to and relying on Defendants' marketing and labeling of the Products. (*Id.* ¶¶ 14–17.) Plaintiffs believed that the Products "contained significant amounts of the actual fruit Defendants emphasized in the marketing and labeling of the Products, were nutritious and healthful, and were more healthful than similar products." (*Id.* ¶ 15.) Of all the Products, Plaintiffs have purchased the Fruit Snacks in mixed fruit, strawberry, white grape raspberry and concord grape flavors (the "Purchased Products"). (*Id.* ¶¶ 16, 19.) Plaintiffs have not purchased the Fruit Snacks in the island fruits, reduced sugar mixed fruit, berries 'n cherries, tangy fruits, fruit punch, white grape peach or apple orchard medley flavors, nor have they purchased the Fruit 'n Yogurt Snacks or the PB&J Fruit Snacks (the "Non-Purchased Products"). (*See id.*) "[H]ad Defendants not made certain

---

[3] As an example of the minimal amounts of fruit contained in the Products, Plaintiffs allege that the ingredients contained in the strawberry Fruit Snacks are juice from concentrates (pear, peach, and pineapple), corn syrup, sugar, modified corn starch, strawberry puree, gelatin, citric acid, lactic acid, natural and artificial flavors, ascorbic acid (Vitamin C), alpha tocopherol acetate (Vitamin E), Vitamin A palmitate, sodium citrate, coconut oil, carnauba wax and Red 40. (Compl. ¶ 38.)

misrepresentations in the Products' marketing and labeling," Plaintiffs would not have purchased the Purchased Products. (*Id.* ¶¶ 16, 19.) Plaintiffs no longer purchase the Products because they are not "confident that the marketing and labeling of the Products [are], and will be, truthful and non-deceptive," but they would resume purchasing the Products if the marketing and labeling were not deceptive. (*Id.*)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).  The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010).  A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists.  *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### iii.  Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Unopposed recommendations

Plaintiffs do not object to Judge Scanlon's recommendation that the Court dismiss their claims for breach of implied warranty, unjust enrichment "and all of their remaining claims to the degree that they fall outside the relevant statutes of limitation."[4] (Pls. Obj. 1 & n.2.) Defendants do not object to Judge Scanlon's recommendation that the Court deny their motion to stay or dismiss the action pursuant to the primary jurisdiction doctrine. (Defs. Objs. 4 & n.2.)

The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts these recommendations pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court denies Defendants' motion to stay or dismiss the action pursuant to the primary jurisdiction doctrine and grants Defendants' motion to dismiss Plaintiffs' claims for breach of implied warranty, unjust enrichment and any of Plaintiffs' remaining claims to the degree they fall outside the relevant statutes of limitation.

---

[4] Judge Scanlon determined that a three-year statute of limitations governs Plaintiffs' claims for violations of the New York General Business Law, California Consumers Legal Remedies Act and California False Advertising Law, and that a four-year statute of limitations governs Plaintiffs' claims for breach of express warranty and violations of the California Unfair Competition Law. (R&R 15.)

### c. Objections to the R&R

Plaintiffs object to Judge Scanlon's recommendation that the Court find that they lack standing to seek injunctive relief.  (Pls. Obj. 1.)  Defendants object to Judge Scanlon's recommendation that the Court deny their motion to dismiss Plaintiffs' claims for lack of Article III standing, Plaintiffs' consumer claims and Plaintiffs' breach of express warranty claims. (Defs. Objs. 1–2.)  Defendants argue: (1) that Plaintiffs do not have Article III standing to assert claims against Defendants as to the Non-Purchased Products because "Plaintiffs have not suffered injury in a 'personal and individual way' with respect to [the Non-Purchased Products]," (*id.* at 6 (quoting *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *4 (E.D.N.Y. May 14, 2015))); (2) that Plaintiffs' claims for violations of the New York General Business Law, the California Consumers Legal Remedies Act, the California Unfair Competition Law and the California False Advertising Law fail as a matter of law because Defendant's representations regarding the Products would not mislead a reasonable consumer, (*id.* at 10); and (3) that Plaintiffs have not stated a breach of express warranty claim because they have not identified any "affirmative representations or that Defendants' products did not conform to any alleged affirmative representations," (*id.* at 11–12).

### i. Standing to seek injunctive relief

Judge Scanlon recommended that the Court find that Plaintiffs lack standing to seek injunctive relief "because the Complaint fails to establish a likelihood of future or continuing harm to Plaintiffs."  (R&R 9.)  Plaintiffs object to this recommendation and argue that because they allege that "they would resume their purchases if they knew that the [Products'] marketing and packaging were truthful and not deceptive," they have sufficiently alleged future injury and therefore have standing to seek injunctive relief.  (Pls. Obj. 1–2.)

When seeking injunctive relief, "a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "[T]o meet the constitutional minimum of standing" for injunctive relief, a plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)); *see also Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016) ("Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury. (first citing *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm."). The alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. ---, ---, 134 S. Ct. 2334, 2341 (2014)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.'" (alteration in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. ---, --- 133 S. Ct. 1138, 1147 (2013))).

A plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain*, 356 F.3d at 215; *see also Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12 (stating that past injuries do not confer standing to seek injunctive relief); *Pungitore*, 506 F. App'x at 42 (stating that, while past wrongs may be

"evidence bearing on whether there is a real and immediate threat of repeated injury, such evidence does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects" (internal quotation marks omitted) (quoting *Lyons,* 461 U.S. at 102)). "In establishing a certainly impending future injury, . . . the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (collecting cases). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The Second Circuit has not directly addressed whether plaintiffs alleging claims of false or misleading advertising have standing to seek injunctive relief where the action the plaintiffs seek to enjoin is still ongoing.[5]  *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 444 (E.D.N.Y. 2015) ("The Court of Appeals for the Second Circuit has apparently not yet directly addressed the issue of whether a plaintiff, with no claim of probable future injury, may pursue an injunction under state consumer protection statutes."). Nevertheless, some district courts in the Second Circuit have concluded that consumer plaintiffs asserting deceptive advertising claims do not have standing to seek injunctive relief because of insufficient allegations of future injury.[6]

---

[5]  The Second Circuit recently held that a plaintiff alleging false or misleading advertising claims lacks standing to seek injunctive relief where the defendant has stopped selling the product in question.  *Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016).  However, no party has alleged that Defendants no longer sell the Products.

[6]  Other district courts in the Second Circuit have held otherwise and "have declined to follow *Lyons* in consumer protection cases."  *Nicosia*, 84 F. Supp. 3d at 157; *see Belfiore v.*

*See Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that because the plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"), *appeal withdrawn* (Nov. 10, 2015); *Elkind*, 2015 WL 2344134, at *3 (holding that the plaintiffs did not have standing to seek injunctive relief because they were "aware of the alleged misrepresentations that they challenge[d], so there [wa]s no danger that they will again be deceived by them"); *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (holding that the plaintiffs did not have standing to seek

---

*Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (holding that the plaintiff had standing to seek injunctive relief even though the plaintiff alleged that he would not purchase the deceptive product again); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (same); *Ackerman v. Coca-Cola Cos.*, No. 09-CV-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (same). Some of these courts have determined that, because a consumer cannot seek to enjoin deceptive conduct until they become aware of the conduct by suffering an injury, holding that a consumer does not have standing to seek injunctive relief would effectively bar consumers from ever being able to seek injunctions in false advertising cases. *See Belfiore*, 94 F. Supp. 3d at 445 (holding that the plaintiffs had standing to seek injunctive relief based on their false advertising claims "because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'" (quoting *Ackerman*, 2013 WL 7044866, at *15 n.23)); *Ackerman*, 2013 WL 7044866, at *15 (noting that if standing for injunctive relief were denied because a plaintiff had become aware of an allegedly deception, then "injunctive relief would never be available in false advertising cases, a wholly unrealistic result" (citation omitted)). These courts have also held that because the plaintiffs are still exposed to the allegedly deceptive statements, their injury is ongoing. *See Delgado*, 2014 WL 4773991, at *14 (finding that the plaintiffs had standing to seek injunctive relief because the plaintiffs would be "expos[ed]" to the allegedly ongoing and misleading statements in the future); *Ackerman*, 2013 WL 7044866, at *15 n.23 ("Plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful. This is the harm New York's and California's consumer protection statutes are designed to redress.").

injunctive relief because the plaintiffs alleged that the products at issue had been deceptively advertised and that they would not have bought the products "absent the allegedly misleading advertisements").  These courts have held that because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm.  *See Albert*, 151 F. Supp. 3d at 417 ("Plaintiffs have not alleged that they will purchase [the deceptive products] in the future. . . .  Since Plaintiffs have not alleged any future injury, they do not have standing to seek injunctive relief on behalf of themselves or a class."); *Avon*, 2015 WL 5730022, at *8 (explaining that because each plaintiff stated "that, if she had been aware of the alleged truth about Avon's products, she would not have bought class products," and therefore failed to allege a risk of future harm, the plaintiffs "lack[ed] standing to seek a forward-looking injunction"); *Elkind*, 2015 WL 2344134, at *3 ("Plaintiffs are now aware of the alleged misrepresentations . . . , so there is no danger that they will again be deceived by them.").[7]

Despite the absence of Supreme Court or Second Circuit law applying this standard to consumer plaintiffs seeking injunctive relief, the requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy.  *See Lyons*, 461 U.S. at 102 (stating that in order to "satisfy the threshold

---

[7]  Where the named plaintiffs do not have standing to seek an injunction, the putative class also lacks standing to seek injunctive relief.  *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417 (S.D.N.Y. 2015) (noting that "the named plaintiffs must have standing in order to seek injunctive relief on behalf of the class" (citing *Dodge v. Cty. of Orange*, 103 F. App'x. 688, 690 (2d Cir. 2004))); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015) (holding that the named plaintiff lacked standing to pursue injunctive relief on behalf of a putative class because the named plaintiff "must personally have standing to secure prospective relief on behalf of a class" and the named plaintiff lacked personal standing (collecting cases)), *aff'd in relevant part, vacated on other grounds*, --- F. 3d ---, ---, 2016 WL 4473225 (2d Cir. Aug. 25, 2016).

requirement imposed by Article III" a plaintiff seeking injunctive relief must demonstrate a likelihood of future injury); *Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12 (noting that "Article III limits federal judicial power" and that plaintiffs "lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury" (first quoting *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Shain*, 356 F.3d at 215 (noting that "[i]n order to meet the constitutional minimum of standing to seek injunctive relief," a plaintiff must "show a likelihood that he will be injured in the future" (alteration and internal quotation marks omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998))); *Albert*, 151 F. Supp. 3d at 418 (declining to follow *Ackerman* because "binding Supreme Court and Second Circuit precedent" requires that in order "[f]or a plaintiff to have individual standing to seek injunctive relief, he or she must demonstrate a likelihood of future injury" (first citing *Lyons*, 461 U.S. at 102; and then citing *Shain*, 356 F.3d at 215)).

Plaintiffs allege that they were injured in the past when they bought the Products because they based their decisions to purchase the Products on Defendants' alleged misrepresentations and "would not have purchased the [Products] had Defendants not made" the alleged misrepresentations. (Compl. ¶¶ 16, 19.) Plaintiffs also allege that they would resume purchasing the Products in the future but only if the representations on the Products' labels were "truthful and non-deceptive." (*Id.*) These allegations are insufficient to establish a likelihood of future injury because Plaintiffs cannot rely on past injury. *See Tomasino*, 44 F. Supp. 3d at 256 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))). Moreover, in order to be injured by an allegedly deceptive misrepresentation, Plaintiffs must actually be personally deceived by the

misrepresentation.  *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004) (stating that, without reliance, "misrepresentations standing alone have little legal significance"); *LaCourte v. JP Morgan Chase & Co.*, No. 12-CV-9453, 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013) (noting that "numerous courts have held that in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived" (first citing *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (App. Div. 2004); and then citing *Mascoll v. Strumpf*, No. 05-CV-667, 2006 WL 2795175 (E.D.N.Y. Sept. 26, 2006))).  Because Plaintiffs have failed to allege a risk of future injury, the Court adopts Judge Scanlon's recommendation and finds that Plaintiffs lack standing to seek injunctive relief.

### ii.  Standing to bring suit for Non-Purchased Products

Judge Scanlon recommended that the Court find that Plaintiffs have standing to assert claims against Defendants as to the Non-Purchased Products.  (R&R 11.)  Defendants object to this recommendation and assert that Plaintiffs lack Article III standing to assert claims regarding the Non-Purchased Products.  (Defs. Objs. 5–7.)  Defendants specifically argue that Plaintiffs lack Article III standing "to assert claims for products they did not purchase because they have not suffered any injury-in-fact with respect to [the Non-Purchased Products]."  (*Id.* at 6.)  Defendants further argue that, unlike class standing, Article III standing "must be addressed" on a motion to dismiss and cannot be deferred until class certification.  (*Id.* at 7.)

The Second Circuit has clarified that Article III standing and class standing are distinct. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (stating that "the class standing analysis is different" from the Article III standing analysis); *see also Reid v. GMC Skin Care USA Inc.*, No. 15-CV-277, 2016 WL 403497, at *4 (N.D.N.Y. Jan. 15, 2016) ("Article III standing and class standing are different issues that require separate consideration; class standing is often considered at the class certification stage of the

14

litigation." (collecting cases)); *Martinez v. Capital One Bank, N.A.*, No. 10-CV-8028, 2015 WL 4270172, at *3 (S.D.N.Y. July 13, 2015) ("[T]he Second Circuit considers the questions of Article III, statutory, and class standing as distinct." (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 481 (S.D.N.Y. 2014))); *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 420 (S.D.N.Y. 2014) ("Article III standing is distinct from the issue of 'class standing,' *i.e.*, standing to assert claims on behalf of others . . . .").

"[T]o establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *NECA-IBEW*, 693 F.3d at 159 (alteration omitted) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007); *see also Catalano v. BMW of N. Am., LLC*, --- F. Supp. 3d ---, ---, 2016 WL 844832, at *8 (S.D.N.Y. Mar. 1, 2016) ("In the class action context, Article III standing requires that 'for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant.'" (first quoting *Cent. States*, 504 F.3d at 241; and then citing *NECA-IBEW*, 693 F.3d at 159)). In *NECA-IBEW*, the Second Circuit explained that the named plaintiff, NECA-IBEW, had Article III standing because it plausibly alleged an injury against it by the defendant, despite the fact that NECA-IBEW also sought to bring claims on behalf of putative class members that NECA "lack[ed] [Article III] standing to assert on its [own] behalf." *NECA-IBEW*, 693 F.3d at 158.

Here, Defendants do not contest that Plaintiffs have Article III standing to assert claims as to the Purchased Products. (*See* Defs. Mem. 7.) Because the named Plaintiffs have standing to

assert a claim directly against every named Defendant, Plaintiffs have satisfied the Article III

standing requirement for class actions. *See NECA-IBEW*, 693 F.3d at 159 (stating that in order

to establish Article III standing in a class action there must be a named plaintiff who can assert a

claim directly against every named defendant); *Catalano*, --- F. Supp. 3d at ---, 2016 WL

844832, at *8 (same).

Defendants argue that Plaintiffs have an additional burden within the Article III analysis

to establish standing to bring claims as to the Non-Purchased Products, and that this requires

Plaintiffs to allege that they "suffered injury in a 'personal and individual way' with respect to

those products." (Defs. Objs. 6.) However, based on the Second Circuit's clear pronouncement

of Article III standing in *NECA-IBEW*, Plaintiffs have no further burden to demonstrate Article

III standing. Plaintiffs have sufficiently stated a cognizable injury by Defendants and have

therefore established Article III standing.[8]

### iii. New York and California consumer claims

Judge Scanlon recommended that the Court deny Defendants' motion to dismiss

Plaintiffs' state law consumer protection claims.[9] (R&R 26.) Judge Scanlon determined that in

view of Plaintiffs' allegation "that there is not a significant amount of the fruit depicted on the

---

[8] Defendants do not argue that Plaintiffs lack class standing to assert claims as to the Non-Purchased Products, and the Court does not reach this issue. (*See* Defs. Objs. 7 (stating that "[t]he issues of class standing and Article III standing are distinct" and that "[w]hether a plaintiff has class standing to assert claims on behalf of other purchasers is irrelevant if the plaintiff does not have Article III standing to bring the claims")); *see also Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 421 (S.D.N.Y. 2014) ("Because Plaintiff in this case has satisfied the requirements for Article III standing, the issue of whether Plaintiff has standing to represent putative class members . . . is an issue to be decided on a motion for class certification." (citing *In re Frito–Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *12 (E.D.N.Y. Aug. 29, 2013))).

[9] Plaintiffs' state law consumer protection claims assert violations of the New York General Business Law, the California Consumers Legal Remedies Act, the California Unfair Competition Law and the California False Advertising Law.

packaging in the [Products] and that they are unhealthy relative to real, whole fruit[,] it would be premature to hold that no reasonable consumer would be misled by Defendants' representations." (*Id.* at 21.)  Defendants object to this recommendation and argue that the Court should dismiss these claims because Defendant's representations regarding the Products are "not misleading to a reasonable consumer as a matter of law."  (Defs. Objs. 10.)

Plaintiffs contend that they have alleged sufficient facts to show that a reasonable consumer would be misled by Defendants' representations.  (Pls. Opp'n to Defs. Mot. ("Pls. Opp'n") 20, Docket Entry No. 21.)  Plaintiffs argue that a reasonable consumer could be misled into thinking that the Products contain "significant amounts" of the fruit depicted on the Products' labeling because the label is "(1) dominated by images of whole fruit (2) alongside 'Made With REAL Fruit' graphics (3) with the word 'FRUIT' prominently displayed (4) paired with claims that the product will provide significant amounts of nutrients."  (*Id.* at 17–18.)

Under both California and New York law, a plaintiff must establish that a reasonable consumer would likely be misled by the alleged misrepresentation.  *See Ebner v. Fresh, Inc.*, 818 F.3d 799, 806 (9th Cir. 2016) ("California consumer protection statutes are governed by the 'reasonable consumer' test.  Under this standard, Plaintiff must 'show that members of the public are likely to be deceived.'" (internal quotation marks omitted) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008))); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (internal quotation marks omitted) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007))); *Larin v. Bank of Am., NA*, 617 F. App'x 651, 652 (9th Cir. 2015) ("[The plaintiff's] claims under the [California] Consumer

Legal Remedies Act, Unfair Competition Law, and False Advertising Law are evaluated under a 'reasonable consumer standard' by which he must 'show that members of the public are likely to be deceived.'" (quoting *Williams*, 552 F.3d at 938)); *People ex rel. Schneiderman v. One Source Networking, Inc.*, 3 N.Y.S.3d 505, 508 (App. Div. 2015) ("[A]n act or practice that is deceptive or misleading in a material way is defined as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999))).

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *see also Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole. The entire mosaic is viewed rather than each tile separately." (internal quotation marks omitted) (first citing *Delgado*, 2014 WL 4773991, at *8; and then citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007))); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label." (alteration in original) (internal quotation marks omitted) (quoting *Frito-Lay*, 2013 WL 4647512, at *16)); *Ackerman*, 2010 WL 2925955, at *15 (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"). "[T]he reasonable consumer standard . . . raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (second and third alterations in original) (quoting *Williams*, 552 F.3d at 939)); *see also Hidalgo v.*

*Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("[U]sually [the reasonable consumer] determination is a question of fact." (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014))); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 217 (App. Div. 2010) (noting that consumer reasonableness was a question of fact).

In determining whether the Products would deceive a reasonable consumer, the Court finds *Williams*, 552 F.3d 934, and *McKinnis v. Kellogg USA*, No. 07-CV-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007), to be instructive. In *Williams*, the plaintiffs alleged that the defendant's "Fruit Juice Snacks" were misleading because the products' labeling used the words "fruit juice" and depicted pictures of fruit but did not contain "fruit juice from any of the fruits pictured on the packaging." *Williams*, 552 F.3d at 936. The products instead contained only grape juice from concentrate, which was not depicted on the label. *Id.* The plaintiffs in *William*s also alleged that the products' use of the phrase "made with real fruit juice and other all natural ingredients" was deceptive because "the two most prominent ingredients were corn syrup and sugar." *Id.* The plaintiffs argued that these representations misled them into thinking that the fruit juice snacks were healthy. *Id.* The district court granted the defendant's motion to dismiss on the grounds that no reasonable consumer could be misled by these representations. *Id.* at 939. The Ninth Circuit reversed the district court, finding that the products "could likely deceive a reasonable consumer" because:

> The product is called "fruit juice snacks" and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product. Further, the statement that Fruit Juice Snacks was made with "fruit juice and other all natural ingredients" could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false.

*Id.* Thus, because the defendant's representations were actually false, dismissal was inappropriate.[10] *Id.*

In contrast, in *McKinnis*, the plaintiffs claimed that the defendant's "Froot Loops" cereal was likely to mislead consumers into believing the cereal contained actual fruit given: "(1) the use of the word 'Froot' in the name; (2) the depiction of brightly colored rings of cereal that Plaintiffs claim[ed] resemble[d] fruit; and (3) the depiction of illustrate[d] fruit around a banner stating 'NATURAL FRUIT FLAVORS,'" which the plaintiffs claimed was in "disproportionately small type." *McKinnis*, 2007 WL 4766060, at *1. The court dismissed the plaintiffs' claims and found that "[a] reasonable consumer, even on the most cursory review of the Froot Loops box, could not, as a matter of law, be misled into believing that the cereal contain[ed] actual fruit." *Id.* at *4. The court found that the defendant's representations were not deceptive because "the product's name is spelled F-R-O-O-T" and "[n]o reasonable consumer would view the trademark 'FROOT LOOPS' name as describing the ingredients of the cereal." *Id.* Moreover, the plaintiffs' "allegation that the cereal pieces themselves resemble fruit [was] not rational, let alone reasonable" because "[t]he cereal pieces are brightly colored rings, which in no way resemble any currently known fruit." *Id.* In addition, "[t]he front panel of the box clearly and accurately describe[d] the product as a "SWEETENED MULTI-GRAIN CEREAL," not any sort of fruit-

---

[10] Defendants argue that "*Williams* is inapposite where an affirmative misrepresentation is not alleged." (Defs. Objs. 8.) However, nothing in *Williams* suggests that the court's decision hinged on the fact that the defendant made affirmative misrepresentations. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 936 (9th Cir. 2008) (finding that a reasonable consumer could be deceived by a product that did not contain real fruit because the product was called "fruit juice snacks" and its packaging depicted pictures of fruit). The Ninth Circuit did not characterize the depiction of "a number of different fruits" on the product's packaging as an affirmative representation that the product contained real fruit, but rather found that the depictions of fruit could deceive a reasonable consumer because they "potentially suggest[ed]" that the product contained those fruits. *Id.*

based cereal." *Id.*; *see also Sugawara v. Pepsico, Inc.*, No. 08-CV-1335, 2009 WL 1439115, at *3 (E.D. Cal. May 21, 2009) (dismissing the plaintiffs' claims that "Cap'n Crunch with Crunchberries" cereal deceived customers into believing the cereal contained fruit given that the cereal's name included the word "berries" and its packaging displayed "crunchberries," which were pieces of cereal shaped to resemble berries, because a "crunchberry" was not a real fruit and the cereal's label stated that the product was a "sweetened corn & oat cereal").

The labeling on the Products here depicts pictures of actual fruits and states that the Products are "made with real fruit." (*E.g.*, Compl. ¶ 38.) Because the Products contain some of the fruit depicted on the label, (*see e.g.*, *id.*), Defendants' representations are not literally false like the representations in *Williams*. However, the Products' primary ingredients are juices from concentrate of fruits other than the fruits depicted on the Products' label, in addition to corn syrup, sugar and corn starch. (*E.g.*, *id.*) While Defendants may ultimately prevail on their argument that based on the Products' labeling, a reasonable consumer would not assume that the Products contain significant amounts of the fruit depicted on the label, the allegations in the Complaint "do not present the type of patently implausible claim that warrants dismissal as a matter of law based on the reasonable consumer prong." *See Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015); *see also Goldemberg*, 8 F. Supp. 3d at 479–80 (finding that cosmetics that contained the phrase "Active Naturals" on their label could mislead consumers into believing that the cosmetics contained only natural ingredients, even though the cosmetics did in fact contain active, natural ingredients); *Ackerman*, 2010 WL 2925955, at *16 (finding that a drink marketed as "vitaminwater" could mislead consumers into believing that the drink contained only vitamins and water, even though the drink did in fact contain vitamins and water).

Defendants rely on three unreported California federal district court cases to argue that Defendants' representations regarding the Products would not mislead a reasonable consumer. (Defs. Objs. 8–9 (citing *Red v. Kraft Foods, Inc.*, No. 10-CV-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012); *Manchouck v. Mondelez Int'l Inc.*, No. 13-CV-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015); *Romero v. Flowers Bakeries, LLC*, No. 14-CV-5189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016)).) The Court is not persuaded by these cases. In *Red*, the plaintiffs alleged that crackers labeled as "made with real vegetables" and sold in a box depicting pictures of vegetables would deceive a reasonable consumer into believing that the crackers were "healthful" or contained a significant amount of vegetables. *Red*, 2012 WL 5504011, at *3. The court dismissed the plaintiffs' claim, holding that, because "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables," no reasonable consumer would be deceived by the challenged representations. *Id.* at *3 & n.4 (citing *Webster's Ninth New Collegiate Dictionary* 302 (1990)). Similarly, in *Manchouck*, the plaintiff purchased cookies that were labeled as "made with real fruit" but contained only "mechanically processed fruit purée," which the plaintiff alleged was "not 'real fruit.'" *Manchouck*, 2013 WL 5400285, at *1. The plaintiff claimed that the label "made with real fruit" would deceive a reasonable consumer "because fruit purée is processed, and therefore not equivalent to real fruit." *Id.* at *2. The court dismissed the plaintiff's claim, finding that she did not "plausibly allege[] why the statement 'made with real fruit' would not include mechanically separated fruit purée" because "even the most narrow definition of 'real fruit' does not exclude fruit that has been strained or blended into puréed form" and because the cookies' packaging "prominently display[ed] a depiction of the cookies' puréed fruit filling." *Id.* at *3 (citing *American Heritage Dictionary* (5th ed. 2011)). Finally, in *Romero*, the plaintiff

alleged that bread labeled as "wheat" and sold in packaging depicting pictures of stalks of wheat would deceive a reasonable consumer into believing that the bread was healthier than white bread and contained a significant amount of whole wheat. *Romero*, 2016 WL 469370, at *6. The court dismissed the plaintiffs' claim, finding that the bread was in fact healthier than white bread and that the representations on the bread's labeling and packaging would not lead a reasonable consumer to believe that the bread contained a significant amount of whole wheat. *Id.* at *7.

Unlike the crackers made with real vegetables in *Red*, which no reasonable consumer could conclude were made primarily of vegetables, *Red*, 2012 WL 5504011, at *3, a reasonable consumer could expect a fruit snack to contain a significant amount of fruit, especially where, as here, the packaging and labeling emphasize the presence of fruit in the Products. While the labeling and packaging of the cookies at issue in *Manchouck* may be similar to those of the Products here, the allegations are substantively different. Unlike the plaintiffs in *Manchouck*, Plaintiffs here do not dispute that the Products contain real fruit. *See Manchouck*, 2013 WL 5400285, at *3. Instead, Plaintiffs allege that the Products do not contain *enough* fruit as compared to the amount of fruit a reasonable consumer could expect it to contain based on the Products' labeling. (Compl. ¶¶ 4, 6, 34, 38–39.) Were Plaintiffs alleging that the Products do not contain real fruit, the reasoning of the *Manchouck* court regarding the "definition of 'real fruit'" might apply. *Manchouck*, 2013 WL 5400285, at *3. While the *Manchouck* court held that it was "ridiculous to say that consumers would expect snack food 'made with real fruit' to contain only 'actual strawberries or raspberries,' rather than these fruits in a form amenable to being squeezed inside a Newton," *id.*, here, the Court cannot likewise conclude that it is ridiculous to say that a reasonable consumer would expect the Products to contain significant amounts of fruit or to be

"healthful and nutritious," as Plaintiffs allege the labeling led them to believe, (Compl. ¶¶ 4, 34, 38–39).

By contrast, the reasoning of the court in *Romero* was based on facts regarding the labeling at issue that are distinct from the facts before this Court. The plaintiff in *Romero* alleged that the defendant's labeling of its bread as "wheat" and depiction of stalks of wheat on the bread's packaging could lead a reasonable consumer to conclude that the bread contained a significant amount of whole wheat and was "healthier than other white breads." *Romero*, 2016 WL 469370, at *7. The court found that the bread's packaging used the word "wheat" in the context of representations that the bread contained "a blend of wholesome wheat" and "healthy grains," but that the defendant did not market its bread as "whole wheat" bread. The court concluded that, based on the context of the defendant's representations regarding the bread's ingredients, a reasonable consumer could not assume that the bread contained a significant amount of whole wheat, as opposed to what the bread did contain, an enriched wheat and flour combination. *Id.* at *6. Here, Plaintiffs allege that the Products are labeled as "made with real fruit" but do not contain significant amounts of fruit. (Compl. ¶¶ 4, 34, 38–39.) Thus, unlike the plaintiff in *Romero*, who assumed that the defendant's bread contained a particular type of wheat because the defendant used the word "wheat" on the bread's packaging, Plaintiffs do not assume from the Products' labeling and marketing that the Products contain a type of fruit that is not plainly advertised on the packaging; rather, they are relying on Defendants' representation that the Products are made with real fruit to argue that a reasonable consumer could be deceived into thinking that the Products contain significant amounts of real fruit, which, Plaintiffs allege, the Products do not contain. Moreover, the court in *Romero* also found, contrary to the plaintiff's allegations, that despite not containing the presumed amount of "whole wheat," the bread was

still "healthier than other white breads." *Romero*, 2016 WL 469370, at *6. Even if the *Romero* plaintiff was correct that the defendant's bread labeling had impliedly misrepresented that the bread contained a significant amount of whole wheat, the plaintiff was nevertheless not misled, as the bread was healthier than other breads. *Id.* Here, Plaintiffs have alleged — and the Court must accept as true — that the Products are not healthy relative to fruits. (Compl. ¶¶ 4, 34, 38–39.) The Court thus finds *Romero* factually distinguishable.

Accordingly, the Court adopts Judge Scanlon's recommendation, and denies Defendants' motion to dismiss Plaintiffs' consumer protection claims pursuant to New York and California state laws.

### iv. Express warranty claims

Judge Scanlon recommended that the Court deny Defendants' motion to dismiss Plaintiffs' breach of express warranty claims under New York and California law. (R&R 26–27.) Judge Scanlon determined that, based on Plaintiffs' allegations, Defendants have represented that "[the Products] come from 'the highest quality fruit proudly grown on family farms' in a 'tradition of wholesome goodness,'" that "this warranty formed part of the basis of Plaintiffs' decision to purchase" the Products, and that these representations were not true. (*Id.* at 27.) Judge Scanlon found that "[f]or the reasons stated in the discussion of Plaintiffs' statutory claims,"[11] Defendants' representations "regarding [the Products'] wholesome nature is sufficient to constitute an express warranty, and dismissal at this point would be premature." (*Id.*) Defendants argue that their representations regarding the Products were not affirmations of fact

---

[11]  Judge Scanlon recommended that the Court deny Defendants' motion to dismiss Plaintiffs' state law consumer protection claims because Plaintiffs sufficiently alleged that a reasonable consumer could be misled by the representations on the Products' labeling that the Products contain a significant amount of the fruit depicted on the labeling and that the Products are healthy. (R&R 21.)

or descriptions and therefore did not create express warranties, and that Plaintiffs have failed to show that the Products do not conform with Defendant's representations.  (Defs. Objs. 11–12.)

Under New York law, "[t]o prevail on a claim of breach of express warranty, a plaintiff must show 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'"  *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111–12 (2d Cir. 2010) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (App. Div. 1989)); *see also Koenig*, 995 F. Supp. 2d at 289 ("To state a claim for breach of express warranty [under New York law], a plaintiff must allege that 'there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment.'" (quoting *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012))); *Goldemberg*, 8 F. Supp. 3d at 482 ("To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." (citing *Avola v. La.–Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013))).

Under California law, "to prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010) (quoting *Keith v. Buchanan*, 220 Cal. Rptr. 392, 392 (Cal. Ct. App. 1985)); *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) ("To prevail on a breach of express warranty claim under California law, a plaintiff must prove that: '(1) the

seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" (quoting *Allen v. ConAgra Foods, Inc.*, No. 13-CV-1279, 2013 WL 4737421, *11 (N.D. Cal. Sept. 3, 2013))); *Hauter v. Zogarts*, 14 Cal. 3d 104, 115 (1975) (noting that to state a claim for breach of express warranty "the seller's statements — whether fact or opinion — must become 'part of the basis of the bargain'" (citing Cal. Com. Code § 2313)).

"Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  N.Y. U.C.C. Law § 2-313(1)(b); Cal. Com. Code § 2313(1)(b)); *Dagher v. Ford Motor Co.*, 190 Cal. Rptr. 3d 261, 274 n.10 (Cal. Ct. App. 2015); *N.Y.C. Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 809 N.Y.S.2d 70, 73–74 (App. Div. 2006).  Under New York and California law, a product label or advertisement can create an express warranty.  *See Simmons v. Washing Equip. Techs.*, 857 N.Y.S.2d 412, 413 (App. Div. 2008) (stating that the defendant's brochure advertising its product created an express warranty); *Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494, 501 (Cal. Ct. App. 2003) (stating that the defendant's product label created an express warranty); *see also Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (stating that under California law "[a] food label can create an express warranty" (first citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 900 (N.D. Cal. 2012); and then citing *Vicuna v. Alexia Foods, Inc.*, No. 11-CV-6119, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012))); *see also Frito-Lay*, 2013 WL 4647512, at *27 (holding that under New York and California law, a food label could form the basis of an express warranty (citing *Vicuna*, 2012 WL 1497507, at *2)); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) ("Product advertisements, brochures, or packaging can serve to create part of an express warranty." (first

citing Cal. Com. Code § 2313(1)(b); and then citing *Fundin v. Chi. Pneumatic Tool Co.*, 199 Cal. Rptr. 789 (Cal. Ct. App. 1984))).

However, a representation on a product label does not create an express warranty if it "is of such a general nature that a reasonable consumer would not rely on it as a statement of fact regarding" the product. *Simmons v. Washing Equip. Techs.*, 912 N.Y.S.2d 360, 361 (App. Div. 2010) (first citing *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999); and then citing *Serbalik v. Gen. Motors Corp.*, 667 N.Y.S.2d 503, 504 (App. Div. 1998)); *see also Forouzesh v. Starbucks Corp.*, No. 16-CV-3830, 2016 WL 4443203, at *4 (C.D. Cal. Aug. 19, 2016) (finding that the defendant's representations that its beverages were sold "in cups of various sizes . . . could [not] support a breach of express warranty claim" under California law because a reasonable consumer would not have interpreted the defendant's representation to be an affirmation of fact or description regarding the "specific amount of liquid" in the defendant's beverages); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016) (stating that whether the plaintiff's "interpretation of the label was erroneous or reflected a promise made by [the] [d]efendant necessarily depends on what a reasonable consumer would believe" (citing *Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014))); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("Generalized statements by a defendant, however, do not support an express warranty claim if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.'" (quoting *Hubbard v. Gen. Motors Corp.*, No. 95-CV-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996))); *Paulino v. Conopco, Inc.*, No. 14-CV-5145, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015) (same); *ConAgra Foods*, 90 F. Supp. 3d at 985 (stating that "[a]s with

California's consumer protection statutes," a claim of breach of express warranty requires the plaintiff to "demonstrate that the alleged misrepresentation would have been material to a reasonable consumer" (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493, 509 (S.D. Cal. 2013))). "What a reasonable consumer's interpretation of a seller's claim might be is generally an issue of fact which is not appropriate for decision on a motion to dismiss." *Paulino*, 2015 WL 4895234, at *2 (citing *Ault*, 2014 WL 1998235, at *6); *Silva*, 2015 WL 5360022, at *10 (same); *see also Boswell v. Costco Wholesale Corp.*, No. 16-CV-0278, 2016 WL 3360701, at *10 (C.D. Cal. June 6, 2016) (stating that "whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made" (citing *Keith v. Buchanan*, 220 Cal. Rptr. 392, 396 (Cal. Ct. App. 1985))).

As discussed above with regard to Plaintiffs' state law consumer protection claims, because the Court cannot conclude that the Products' labeling would not mislead a reasonable consumer, the Court cannot conclude as a matter of law that a reasonable consumer would not rely on the Products' labeling as a statement of fact or description of the Products. *See Singleton*, 2016 WL 406295, at *11 (finding that because the plaintiff had stated a New York consumer protection claim that the defendant's vodka bottle labels could mislead a reasonable consumer, the plaintiff had plausibly stated a claim for breach of express warranties for the same reasons); *Tsan v. Seventh Generation, Inc.*, No. 15-CV-205, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (finding that because the plaintiffs had satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty" (citing *Garrison v. Whole Foods Market Grp., Inc.*, No. 13-CV-5222, 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014))); *Ham*, 70 F. Supp. 3d

at 1195 (finding that the plaintiff had stated California consumer protection claims because the defendant's waffle labels could deceive a reasonable consumer and denying a motion to dismiss the plaintiff's breach of express warranty claim "for the same reasons as the consumer protection . . . claims); *Goldemberg*, 8 F. Supp. 3d at 483 ("Defendant reiterates its GBL § 349 argument that none of the above statements are false and misleading as a matter of law. However, as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the [express] warranty claim.").

Defendants argue that Judge Scanlon improperly analyzed Plaintiffs' breach of express warranty claims under the reasonable consumer standard, which Defendants argue is applicable only to Plaintiffs' state law consumer protection claims. (Defs. Objs. 12.) However, Judge Scanlon did not apply the reasonable consumer standard to Plaintiffs' breach of express warranty claims, but instead applied the reasoning from her analysis of Plaintiffs' state law consumer protection claims to conclude that Defendants' representations "regarding [the Products'] wholesome nature is sufficient to constitute an express warranty." (R&R 27.) As Defendants acknowledge in their objections, courts determine whether a defendant's representation can support a breach of express warranty claim by considering whether "a reasonable person would [] rely" on the statement as an affirmation of fact or whether the representation would be interpreted as a "generalized" opinion. (*Id.* at 11 (quoting *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 324 (E.D.N.Y. 2001))). Thus, although an express warranty claim is not analyzed under the reasonable consumer standard, it is analyzed by reference to a reasonable consumer's interpretation of, and reliance on, a defendant's representation. *See Singleton*, 2016 WL 406295, at *11 (stating that whether the plaintiff's "interpretation of the label was erroneous

or reflected a promise made by [the] [d]efendant necessarily depends on what a reasonable

consumer would believe" (citing *Ault*, 2014 WL 1998235, at *6)).  In discussing the law

applicable to an express warranty claim, Judge Scanlon merely indicated that both claims require

the court to consider the reasonableness of a consumer's interpretation of Defendants' label, and

therefore the conclusions are analogous.  *See Goldemberg*, 8 F. Supp. 3d at 483 ("[A]s the

[c]ourt is unable to determine as a matter of law that the statements are not misleading under

GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty

claim.").

      Accordingly, the Court adopts Judge Scanlon's recommendation and denies Defendants'

motion to dismiss Plaintiffs' breach of express warranty claims under New York and California

law.

### III. Conclusion

      For the foregoing reasons, the Court adopts the R&R in its entirety.

SO ORDERED:

                                                  _____s/ MKB_____

                                                  MARGO K. BRODIE

                                                  United States District Judge

Dated: September 30, 2016
       Brooklyn, New York